Internal CM/ECF Live Database - Docket Report

| | | |
|---|---|---|
| | | of Coram Healthcare# 2 Attachment Payment Schedule of Coram, Inc.# 3 Certificate of Service # 4 Service List) (Aaron, Kenneth) Modified text on 8/25/2005 (BAM, ). (Entered: 08/24/2005) |
| 08/25/2005 | 4569 | Order Approving Stipulation Among the Office of the United States Trustee, the Chapter 11 Trustee and Jenner & Block LLP Resolving the Objection of the United States Trustee to the Final Fee Application of Jenner & Block, LLP for Compensation for Services Rendered and Reimbursement of Expenses as Counsel to the Equity Committee. (related document(s)4392, 4375 ) Order Signed on 8/25/2005. (Attachments: # 1 Exhibit A) (LCN, ) (Entered: 08/25/2005) |
| 08/31/2005 | 4570 | Motion to Extend Agreed Pretrial Discovery Schedule and to Adjourn October 28, 2005 Trial Date (Related to Docket Nos. 4253, 4340, 4352) Filed by Daniel Crowley Hearing scheduled for 9/21/2005 at 11:30 AM (check with court for location). Objections due by 9/14/2005.. (Attachments: # 1 Notice # 2 Proposed Form of Order # 3 Certificate of Service) (Thompson, Christina) Modified text on 9/1/2005 (BAM, ). (Entered: 08/31/2005) |
| 09/12/2005 | 4571 | Motion to Appear pro hac vice of Edward D. Shapiro. Receipt Number 140573, Fee Amount $25. Filed by Daniel Crowley. (Thompson, Christina) (Entered: 09/12/2005) |
| 09/14/2005 | 4572 | Order Granting Motion for Admission pro hac vice of Edward D. Shapiro. (Related Doc # 4571) Order Signed on 9/13/2005. (LCN, ) (Entered: 09/14/2005) |
| 09/14/2005 | 4573 | Objection of Chapter 11 Trustee to Daniel D. Crowley's Motion to Extend Agreed Pretrial Discovery Schedule and to Adjourn October 28, 2005 Trial Date (related document(s)4570 ) Filed by Arlin M. Adams (Attachments: # 1 Certificate of Service # 2 Service List) (Aaron, Kenneth) Modified text on 9/15/2005 (BAM, ). (Entered: 09/14/2005) |
| 09/14/2005 | 4574 | Response Of Equity Security Holders To Objections To Their Application Pursuant To Section 503(b)(3)(D) For Final Allowance Of Administrative Expense In Making Substantial Contribution (related document(s)4393, 4401, 4223 ) Filed by EQUITY SECURITY HOLDERS (Attachments: # 1 Exhibit A# 2 Certificate of Service) (Minuti, Mark) Modified text on 9/15/2005 (BAM, ). (Entered: 09/14/2005) |
| 09/14/2005 | 4575 | Objection Of Motion To Extend Discovery Schedule And Adjourn Trial Date (related document(s)4352, 4253, 4573, 4570, 4340 ) Filed by Will Weinstein (Attachments: # 1 Certificate of Service) (Minuti, Mark). Modified text on 9/15/2005 (BAM, ). (Entered: 09/14/2005) |

A-646

Internal CM/ECF Live Database - Docket Report

| 09/19/2005 | 4576 | Notice of Agenda of Matters Scheduled for Hearing *on September 21, 2005* Filed by Arlin M. Adams. Hearing scheduled for 9/21/2005 at 11:30 AM at U.S. Bankruptcy Court, District of Delaware, 824 Market Street, 3rd Floor, Wilmington, DE 19801. (Attachments: # 1 Certificate of Service # 2 Service List) (Aaron, Kenneth) (Entered: 09/19/2005) |
|---|---|---|
| 09/20/2005 | 4577 | Notice of Service *Second Stipulation by and Between the Chapter 11 Trustee and Oxford Health Plans, Inc. Regarding Pretrial Schedule for Allowance and Payment of Administrative Expense Claim and Objection Thereto* Filed by Arlin M. Adams. (Aaron, Kenneth) Modified text on 9/22/2005 (BAM, ). (Entered: 09/20/2005) |
| 09/21/2005 | 4578 | Hearing Held/Court Sign-In Sheet (related document(s)4576 ) (LCN, ) (Entered: 09/23/2005) |
| 09/27/2005 | 4579 | Certification of Counsel (related document(s)4223 ) Filed by Saul Ewing LLP (Attachments: # 1 Exhibit A# 2 Certificate of Service) (Minuti, Mark) (Entered: 09/27/2005) |
| 09/30/2005 | 4580 | Order Granting, in Part, Application For Final Allowance And Payment of Administrative Expense In Making Substantial Contribution (related document(s)4223 ) Order Signed on 9/28/2005. (DKP, ) (Entered: 09/30/2005) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/10/2005 14:33:43 | | |
| **PACER Login:** | hd0005 | **Client Code:** | 700253.00054 |
| **Description:** | Docket Report | **Search Criteria:** | 00-03299-MFW Fil or Ent: Fil From: 8/8/2000 To: 10/11/2005 Doc From: 0 Doc To: 99999999 Term: y Links: n Format: HTMLfmt |
| **Billable Pages:** | 377 | **Cost:** | 30.16 |

# ⚜ UBS Warburg

UBS Warburg LLC
299 Park Avenue
New York, NY 10171-0026
Telephone 212 821-4000
www.ubswarburg.com

November 21, 2000

Official Committee of Unsecured Creditors of Coram Healthcare, Inc.
c/o Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019

Attention: Chaim Fortgang, Esq.

Ladies and Gentlemen:

　　　This letter confirms the agreement of the Official Committee of Unsecured Creditors of Coram Healthcare, Inc. (the "Committee") to engage UBS Warburg LLC ("UBSW") as the Committee's financial advisor in connection with the chapter 11 case of Coram Healthcare, Inc. and its affiliates (collectively, the "Company") now pending in the United States Bankruptcy Court for The District of Delaware (the "Bankruptcy Court") from the date hereof until the completion of the financial restructuring or the earlier termination of the engagement entered into under this Agreement (the "Term"). It is understood that the retention of UBSW and the effectiveness of this Agreement are subject to the approval of the terms hereof by the Bankruptcy Court pursuant to sections 327(a) and 328(a) of the federal Bankruptcy Code.

　　　1.　　　As the Committee's financial advisor, UBSW agrees to perform the following services as necessary and appropriate: (i) performing in connection with the chapter 11 case of the Company a valuation of the Company; (ii) communicating the results of the same in writing and/or orally to the Committee; and (iii) providing expert testimony, if necessary, in any proceedings before the Bankruptcy Court regarding the valuation.

　　　2.　　　As soon as is reasonably practicable after the Execution of this Agreement, the Committee shall obtain an Order of the Bankruptcy Court authorizing the Committee's retention of UBSW upon the terms and conditions set forth herein (the "Retention Order"). The Retention Order shall require the Company's entry into the Indemnification Agreement attached hereto as Exhibit A (the "Indemnification Agreement"). The Indemnification Agreement shall be attached as an exhibit to the Retention Order.

　　　3.a)　　　Fees:　　For UBSW's services hereunder, the Committee, subject to the approval of the Bankruptcy Court pursuant to the Retention Order or otherwise, shall cause the Company to pay to UBSW on the effective date of the Company's plan of reorganization seven hundred thousand dollars ($700,000.00). ("the Valuation Fee"). The Company's obligation to pay the Valuation Fee shall arise upon execution of this Agreement, and shall survive the termination of this Agreement by the Committee.

　　　(b)　　　Monthly Fee:　　In the event that UBSW is required to perform services hereunder beyond the date which is four (4) months from the date hereof, the Committee shall cause the Company to pay UBSW a fee (each, a "Monthly Fee") of fifty thousand dollars ($50,000) per month for each month subsequent to such fourth month. Each such Monthly Fee shall be payable in advance on the 21st day of each month for which a Monthly Fee is payable, or, if such day is not a business day, on the business day immediately preceding such date.

A-648

UBS Warburg LLC is a subsidiary of UBS AG.
UBS Warburg is a financial services group of UBS AG.

Member SIPC

Member New York Stock Exchange
and other Principal Exchanges

※ **UBS Warburg**

UBS Warburg LLC
299 Park Avenue
New York, NY 10171-0026
Telephone 212 821-4000
www.ubswarburg.com

4.    The Committee, subject to the approval of the Bankruptcy Court, shall cause the Company to reimburse UBSW, upon UBSW's request from time to time, for the documented out of pocket expenses reasonably incurred by UBSW in performing services pursuant to this Agreement (including the reasonable fees and disbursement of UBSW's counsel, if any, and provided that retention of counsel by UBSW and the scope of work of such counsel are approved in advance by the Bankruptcy Court).

5.    It is understood and agreed that the services to be provided by UBSW hereunder are in connection with UBSW's valuation of the Company in the context of the Company's chapter 11 case and that any financial advisory or investment banking services requested to be provided by UBSW in respect of the structuring or execution of any other specific transaction or proposed transaction (including asset appraisals, fairness opinions and discrete transactions related to Company's overall financial restructuring, such as divestitures of business lines or assets, refinancings and investments involving new money, and the like) or which require significant additional time and effort on the part of UBSW, will be the subject of a separate engagement letter or letters, to be entered into at the time UBSW is requested to perform such services, pursuant to which UBSW will be retained on terms to be agreed with respect to each such transaction or proposed transaction.

6.    To the extent feasible and appropriate, the Committee will furnish or cause the Company to furnish to UBSW all such information as is available and appropriate to enable UBSW to render the services hereunder. To the extent feasible and appropriate, the Committee will arrange access for UBSW to the management of the Company and to the Company's advisors. The Committee understands that in rendering services hereunder UBSW will be relying, without independent verification, on the accuracy and completeness of all information that is or will be furnished to UBSW by or on behalf of the Committee, the Company, their advisors or any other party or potential party to any transaction, or which is obtained from generally recognized public sources, and UBSW will not in any respect be responsible for the accuracy, completeness or reasonableness thereof.

7.    The Committee agrees not to assert any claim for losses, damages, liabilities or expenses of any kind against UBSW in connection with any matter in any way relating to or referred to in this Agreement or arising out of the matters contemplated by this Agreement and to refrain from encouraging or cooperating with any third party seeking to assert such a claim against UBSW except to the extent otherwise required by law and except to the extent any claim for losses, damages, liabilities or expenses are finally judicially determined to have resulted primarily from UBSW's gross negligence or, willful misconduct. The Committee agrees that UBSW shall not have any liability (whether direct or indirect, in contract, tort or otherwise) to the Committee or any of its members for or in connection with advice or services rendered or to be rendered by UBSW pursuant to this Agreement, any transactions contemplated hereby or any financial restructurings or any of UBSW's actions or inactions in connection with any such advice, services, transactions or restructurings, except for liabilities in connection with any such advice, actions, inactions or services (including any related expenses) which are finally judicially determined to have resulted primarily from UBSW's gross negligence, willful misconduct or bad faith. In no event shall UBSW have any liability under or in connection with this Agreement for any punitive, consequential or exemplary damages.

8.    UBSW's services hereunder may be terminated by the Committee or UBSW upon 30 days prior written notice without liability or continuing obligation of the Company, the Committee or UBSW, except that UBSW shall be entitled to payment in full of the Valuation Fee, and shall be entitled to receive from the Company any fees payable pursuant to Section 3b hereof to the date of termination and except that expenses incurred by UBSW as a result of services

UBS Warburg LLC is a subsidiary of UBS AG.
UBS Warburg is a financial services group of UBS AG.

Member SIPC
Member New York Stock Exchange
and other Principal Exchanges

A-649

# ✳ UBS Warburg

rendered prior to the date of the termination shall become immediately payable in full by the Company, and provided that Section 7 hereof and the indemnification agreement substantially in the Form of Exhibit A hereof shall remain operative and in full force and effect regardless of any termination. Failure to receive fees and expenses on a timely basis pursuant to Sections 3a and b and 4, above, or failure of the Committee to obtain entry of the Retention Order, shall be deemed to constitute cause for UBSW to terminate the Agreement. No interpretation of this letter should be made to infer that the mention of one particular cause for termination herein implies that other causes may not also exist.

9.    UBSW hereby discloses that in the ordinary course of its business, UBSW may trade the securities of the Company and/or potential purchasers or joint venture partners for its own account and for the accounts of customers, and it may at any time hold a long or short position in such securities. UBSW agrees that, except as otherwise required by law, judicial or administrative process or regulatory request or demand or other body having jurisdiction over UBSW, or as contemplated by its engagement hereunder, the non-public information obtained by UBSW in connection with this engagement shall be held by UBSW as confidential and shall be used by UBSW only in connection with the performance of its services for the Committee under this engagement except to the extent (a) such information is disclosed by UBSW to its counsel or to its employees or agents on a need-to-know basis and such persons are advised of the confidential nature thereof, or (b) such information is otherwise publicly available or becomes publicly available through no fault of UBSW. It is contemplated by the engagement hereunder that UBSW, in the course of the performance of its services for the Committee, will disclose confidential information to members of the Committee and to other creditors and potentially other stakeholders or constituents of the Company.

10.    The Committee acknowledges that all advice given pursuant to this Agreement by UBSW in connection with its engagement hereunder is intended solely for the benefit and use of the Committee in considering the matters to which such advice relates and, except as may be required by applicable law, the Committee agrees that except as set forth in this Agreement no such advice shall be used for any purpose or be disclosed, reproduced, disseminated, quoted, or referred to at any time or in any manner or for any purpose, nor shall any public references to UBSW be made by or on behalf of the Committee, in each case without UBSW's prior written consent, which shall not be unreasonably withheld. UBSW shall be given prompt notice of any disclosure of its advice by the Committee required by applicable law, unless the Committee is legally prohibited from providing such notice to UBSW.

11.    The Committee acknowledges and agrees that UBSW has been retained solely to perform a valuation of the Company, and not to act as an advisor to or agent of the Company or any other person, and that the Committee's engagement of UBSW is not intended to confer rights upon any person not a party hereto (including the Company, its shareholders, employees and Directors) as against UBSW or its affiliates, or their respective directors, officers, employees or agents. UBSW shall act as an independent contractor under this Agreement, and any duties arising out of its engagement shall be owed solely to the Committee.

12.    UBSW understands and agrees that, notwithstanding anything which may be contained in this Agreement to the contrary or in any other previous agreement (express or implied) between UBSW and any of the members of the Committee and /or the Company, neither the Committee nor any member thereof (present or future) shall have any liability or responsibility whatsoever for any fees, expenses or other compensation payable to UBSW under this Agreement, and UBSW shall not seek at any time to impose any such liability or responsibility on the Committee or any member thereof.

3

A-650

INNFAX SERVICE                                                        P. 5

# ❉ UBS Warburg

13.   This Agreement and any claim, counterclaim or dispute of any kind or nature whatsoever arising out of or in any way relating to this Agreement, directly or indirectly, shall be governed by and construed in accordance with the laws of the State of New York. Each of UBSW and the Committee waives all rights to trial by jury in any proceeding (whether based upon contract, tort or otherwise) in any way arising out of or relating to this Agreement.

14.   UBS Warburg may, at its own expense, place customary tombstone announcements or advertisements in financial newspapers and journals describing its services hereunder.

15.   Without limiting UBSW's rights under Section 8 hereof (which provides among other things, for UBSW's right to fees beyond the Term of this Agreement) and without affecting the timing of payments provided for hereunder, UBSW shall file appropriate applications for allowance of interim and final compensation and reimbursement of expenses in accordance with section 330 and 331 of the United States Bankruptcy Code at such times as directed by the Bankruptcy Court or established by local rules or administrative order; provided however, that UBSW shall seek permission to maintain time records in one hour increments.

16.   This Agreement shall be binding upon UBSW and the Committee. This Agreement may not be waived, amended, modified or assigned, in any way in whole or in part, including by operation of law, without the prior written consent of the parties hereto.

If the foregoing correctly sets forth our understanding, please indicate your acceptance thereof in the space provided below, whereupon this letter and your acceptance shall constitute a binding agreement between us.

Very truly yours,

UBS WARBURG LLC

William C. McGahan
Managing Director

L. Thomas Sperry
Managing Director

Accepted and agreed to as of the date first above written:

Name: Edward Stearns
Title: Chairman of the Official Committee of Unsecured Creditors

4

A-651

# ❋ UBS Warburg

UBS Warburg LLC
299 Park Avenue
New York, NY 10171-0026
Telephone: 212 821-4000
www.ubswarburg.com
**EXHIBIT A**

November 21, 2000

Coram Healthcare, Inc.
1125 Seventeenth Street
Suite 2100
Denver, CO 80202

Ladies and Gentlemen:

In connection with the chapter 11 case of Coram Healthcare, Inc. (the "Company") now pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") the United States Trustee has appointed an unsecured creditors' committee known as the Official Committee of Unsecured Creditors of Coram Healthcare, Inc. (the "Committee"). In connection with UBS Warburg LLC ("UBSW") having been named as financial advisor to the Committee, the Company agrees that Sections 3, 4, 6 and 7 of the engagement letter dated November 21, 2000 (the "Retention Agreement") by and among the Committee and UBSW (a copy of which is attached hereto) are incorporated by means of reference herein and binding on the Company. It is further agreed that the Company shall:

(a) indemnify, defend and hold harmless UBS Warburg LLC ("UBSW") and its affiliates, the respective present and former directors, officers, employees and agents of UBSW and its affiliates, and each other person, if any, controlling UBSW or any of its affiliates (UBSW and each of the aforementioned parties being an "Indemnified Party"), to the fullest extent permitted by law, from and against, and (b) that no Indemnified Party shall have any liability (whether direct or indirect, in contract, tort or otherwise) to you, your creditors or any other person or entity for, in each case, any losses, claims, damages, liabilities (joint or several) and expenses of any kind or nature whatsoever (and any action or proceeding in respect thereof, including without limitation any shareholder or derivative action or arbitration proceeding) to which such Indemnified Party may become subject to under any applicable foreign, federal or state law or otherwise, and in any way related to or arising out of any transaction or matter contemplated by this letter agreement or the Agreement or the engagement of UBSW pursuant to, and the performance by UBSW of the services contemplated by, this letter agreement or the Agreement, except to the extent that it shall be determined by a court of competent jurisdiction in a judgment that has become final in that it is no longer subject to appeal or other review, that such losses, claims, damages, liabilities or expenses resulted solely out of such Indemnified Party's gross negligence or willful misconduct.

In addition, in the event that UBSW or any other Indemnified Party becomes involved in any capacity (whether or not as a party) in any action, proceeding or investigation or any kind or nature whatsoever (including without limitation any shareholder or derivative action or arbitration proceeding) in any way related to or arising out of any transaction or matter contemplated by this letter agreement or the Agreement or the engagement of UBSW pursuant to and the performance by UBSW of the services contemplated by, this letter agreement or the Agreement the Company will promptly reimburse each such Indemnified Party for all reasonable fees and expenses (including reasonable counsel fees and expenses, and including the reasonable costs of any investigation and preparation conducted by or on behalf of such Indemnified Party) as and when they are incurred in connection therewith, except to the extent that it shall be determined by a court of competent jurisdiction in a judgment that has become final in that it is no

UBS Warburg LLC is a subsidiary of UBS AG.
UBS Warburg is a financial services group of UBS AG.

Member SIPC

Member New York Stock Exchange
and other Principal Exchanges

A-652

# ⚘ UBS Warburg

longer subject to appeal or other review, that any such action, proceeding or investigation resulted solely out of such Indemnified Party's gross negligence or willful misconduct. The Company will also promptly reimburse each Indemnified Party for any legal and other expenses incurred in enforcing this letter agreement, except to the extent that it shall be determined by a court of competent jurisdiction in a judgment that has become final in that it is no longer subject to appeal or other review, that the liability for which indemnification is sought hereunder resulted solely out of such Indemnified Party's gross negligence or willful misconduct.

If for any reason the indemnification provided for in this letter agreement is unavailable to any Indemnified Party or insufficient to hold such Indemnified Party harmless, the Company shall contribute to the losses, damages, liabilities, expenses and claims for which such indemnification is unavailable (i) in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by the Company, on the one hand, and the party entitled to contribution, on the other hand, in the matters contemplated by the Agreement or (ii) if (but only if and to the extent) that the allocation provided for in clause (i) is for any reason held unenforceable, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of the Company, on the one hand, and the party entitled to contribution, on the other hand, as well as any other relevant equitable considerations. The Company agrees that for the purposes of this paragraph the relative benefits received, or sought to be received, by the Company, on the one hand, and the party entitled to contribution, on the other hand, in connection with the matters contemplated by the Agreement shall be deemed to be in the same proportion that the total amount of liabilities of the Company bears to the fees paid or to be paid to UBSW under the Agreement; provided, however, that, to the extent permitted by applicable law, in no event shall the Indemnified Parties (or any one or more thereof) be required to contribute an aggregate amount in excess of the aggregate fees actually paid to UBSW under the Agreement. Relative fault shall be determined by reference to, among other things, whether any allegedly untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or its employees or agents), on the one hand, or by UBSW on the other. The Company and UBSW also agree that it would not be just and equitable if contributions were determined by pro rata allocation or any other method which does not take into account the equitable considerations referred to above.

If multiple claims are brought against an Indemnified Party in any action or proceeding (including any arbitration proceeding), with respect to at least one of which indemnification is permitted under applicable law and provided for in this letter agreement, the Company agrees that the full amount of any judgment, order, or award against such Indemnified party shall be conclusively deemed to be based upon claims as to which indemnification is so permitted and provided for, except to the extent that such judgment, order, or award expressly states that it, or any portion or it, is based solely on a claim as to which indemnification is not so permitted and provided for.

Upon receipt of actual notice of a claim, action, proceeding or investigation against any Indemnified Party with respect to which indemnity may be sought hereunder, such Indemnified Party will promptly notify the Company in writing, provided that the failure to so notify the Company will not relieve the Company from any liability that the Company may have on account of this indemnity or otherwise, except to the extent that the Company shall have been materially prejudiced by such failure. The Company shall, if requested by UBSW, assume the defense of any such claim, action, proceeding or investigation, including the employment of counsel reasonably satisfactory to UBSW. Any Indemnified Party shall have the right to employ separate counsel in any such claim, action, proceeding or investigation and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party, unless (i) the Company shall have failed promptly to assume the defense thereof and employ counsel as provided

A-653

# ❄️ UBS Warburg

above or (ii) such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it that are different from or in addition to those available to the Company, provided that the Company shall not in any event be responsible hereunder for the fees and expenses of more than one firm of separate counsel in connection with any claim, action, proceeding or investigation in the same jurisdiction, in addition to any local counsel.

The Company agrees that, without UBSW's prior written consent, it will not settle, compromise or consent to the entry or any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification could be sought under the indemnification provisions of this letter agreement (whether or not UBSW or any other Indemnified Party is an actual or potential party to such claim, action, proceeding or investigation), in whole or in part, unless such settlement, compromise or consent (i) includes an unconditional release of each Indemnified Party from all liability in any way related to or arising out of such claim or action, proceeding or investigation and (ii) does not impose any potential liability upon any Indemnified Party and does not contain any factual or legal admission by or with respect to any Indemnified Party or any adverse statement with respect to the character, professionalism, due care, loyalty, expertise, or reputation of any Indemnified Party or any action or inaction by any Indemnified Party.

In the event that an Indemnified Party is requested to appear as a witness in any claim, action, proceeding or investigation brought by or against the Company in which an Indemnified Party is not named as a defendant, the Company agrees to reimburse such Indemnified party for all reasonable expenses incurred by it in connection with its appearing and preparing to appear as such a witness, including, without limitation, the reasonable fees and disbursements of its legal counsel, as and when incurred.

The Company's indemnity and contribution obligations under this letter agreement shall be in addition to any liability which the Company may otherwise have, and shall be in addition to any rights UBSW or any other Indemnified Party may have at common law or otherwise. This letter agreement may not be waived, amended, modified, or assigned without the prior written consent of both parties hereto.

This letter agreement and any claim or dispute of any kind or nature whatsoever arising out of or in any way relating to this letter agreement, directly or indirectly (including any claim concerning advice provided pursuant to the Agreement), shall be governed by and construed in accordance with the laws of the State of New York. Except as set forth below, no such claim or dispute may be commenced, prosecuted or continued in any court other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, which courts shall have exclusive jurisdiction over the adjudication of such matters, and the Company and UBSW consent to the jurisdiction of such courts and personal service with respect thereto. The Company hereby consents to personal jurisdiction, service and venue in any court in which any Claim arising out of or in any way relating to this letter agreement is brought by any third party against UBSW or any Indemnified Party. Each of UBSW and the Company (on its behalf and, to the extent permitted by applicable law, on behalf of its stockholders and affiliates) waives all right to trial by jury in any proceeding or counterclaim (whether based upon contract, tort or otherwise) in any way arising out of or relating to the engagement of UBSW pursuant to, or the performance by UBSW of the services contemplated by, the Agreement, or otherwise in any way related to or arising out of this letter agreement. The Company agrees that a final judgment in any such proceeding brought in any such court shall be conclusive and binding upon the Company and may be enforced in any other courts to the jurisdiction of which the Company is or may be subject, by suit upon such judgment.

A-654

# �֍ UBS Warburg

This agreement shall survive the completion of or termination of our engagement, and shall remain in effect indefinitely and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representative of the Company, UBSW and any other Indemnified Party, including by operation of law.

Very truly yours,

UBS WARBURG LLC

By: _____
L. Thomas Sperry
Managing Director

By: _____
William C. McGahan
Managing Director

Accepted and agreed to as of the date first above written:

Coram Healthcare, Inc.

By: _____

A-655

Received 10/09/2001 02:49PM in 00:50 on line [7] for CRTG * Pg 1/1

Oct-09-2001  02:54PM  From-UBS WARBURG FINANCIAL SPONSORS GROUP    212-821-8449    T-826  P.001/001  F-562

## UBS Warburg

UBS Warburg
299 Park Avenue
New York, NY 10171
Tel. 1-212-821-3000

J. Soren Reynertson
Director
299 Park Avenue
New York, NY 10171
Tel. 1-212-821-3467
Fax 1-212-821-3008
soren.reynertson@ubsw.com

www.ubsw.com

## Fax

9 October 2001

**Strictly Private & Confidential**

to Ted Gewertz, Wachtell Lipton                    Fax. 212.403.2236

pages 1 (including this page)

re Coram Healthcare

Further to our conversation of earlier today regarding UBSW's engagement with the Unsecured Creditors Committee of Coram Healthcare, please confirm the following by initialing below and returning this letter to me:

1. Our current fee payable is $700,000 as a result of the services performed for the Committee last November
2. You interpret our engagement letter to reflect an additional fee payable for services to be rendered in connection with the update of our valuation materials to be a minimum of 8 months at $50,000 per month. For example, the additional fee payable will be $400,000 if the current services are completed by November 21, 2001 (for a total fee of $1.1 million). Additional months beyond November 2001 will continue to accrue at $50,000 per month as per the engagement letter
3. Your clients agree with the description of our fee arrangement in 1 and 2
4. You and your clients agree to support our application for allowance of the fees in this case in accordance with 1 and 2

Thank you,

J. Soren Reynertson

Confirmed:  -- SUBJECT TO TESTIMONY BY WILLIAM C. McGAHAN

WACHTELL, LIPTON, ROSEN & KATZ
COUNSEL FOR CHAIRMAN ___ COMMITTEE
OF UNSECURED CREDITORS

The information contained in this facsimile message is confidential information intended only for the individual or entity named herewith. If the reader of this information is not the named recipient, you are hereby notified that any dissemination, distribution or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately contact us by telephone and return the original message to us at the above address.

UBS Warburg is the Investment Banking Division of UBS AG

Yummy\037\groups\RESTRUCTUREyastCoram\fee payments letter.Doc

A-656

**EXHIBIT B**

<u>**AFFIDAVIT OF J. SOREN REYNERTSON**</u>

STATE OF NEW YORK    )
                         )     ss:
COUNTY OF NEW YORK )

        J. Soren Reynertson, after being duly sworn according to law, deposes and says:

    1.     I am an Executive Director of the applicant firm, UBS Securities LLC ("UBS").

    2.     I have personally performed many of the valuation services rendered by UBS on behalf of the Committee and am thoroughly familiar with the other work performed on behalf of the Committee by UBS.

    3.     I have worked in the financial advisory and investment banking field for 10 years, and have been personally involved in numerous engagements involving the valuation of companies, in both the bankruptcy and the nonbankruptcy context. I have never encountered a payment arrangement that made the payment of a valuation fee contingent upon the achievement of a particular result in a case. To my knowledge and belief, neither UBS nor any of its peer firms have ever agreed to such a "contingent valuation fee" arrangement.

    4.     Indeed, a valuation fee is typically paid upon delivery of the valuation to the client. In this case, UBS agreed as an accommodation to the Debtors to postpone payment of its Valuation Fee until the Company's emergence from bankruptcy. In agreeing to make this accommodation, UBS did not agree to make the payment of its Valuation Fee contingent upon the effectiveness of any particular plan of reorganization.

    5.     To my knowledge and belief, the amount of the Valuation Fee is comparable to similar fees charged by UBS in similar cases and is comparable to the fees charged by

comparable firms for similar services in other cases.  In fact, the amount of the Valuation Fee is lower than the amount that UBS has often charged in similar circumstances.

6.    To my knowledge and belief, the amount of the Monthly Fee is lower than the fees charged by UBS in similar cases, and is comparable to or lower than the fees charged by comparable firms for similar services in other cases.

_____
J. Soren Reynertson

STATE OF NEW YORK    }
                                           }
COUNTY OF NEW YORK  }

I HEREBY CERTIFY, that on this 13th day of October, 2004, before me the undersigned, a Notary Public of the State of New York, personally appeared J. Soren Reynertson who acknowledged himself to be an Executive Director of UBS Securities LLC, a Delaware limited liability company, known to be the person whose name is subscribed to the instrument, and acknowledged that he executed the same for the purposes herein contained as a duly authorized Executive Director of UBS Securities LLC.

AS WITNESS my hand and Notarial Seal.

My Commission Expires:

_____
Notary Public

JORGE PEDRERA
NOTARY PUBLIC, State of New York
No. 00PE6000061
Qualified in Westchester County
Cert. Filed in New York County
Commission Expires July 5, 2006

2

## CERTIFICATE OF SERVICE

I, Kimberly D. Newmarch, do hereby certify that on October 13, 2004, a copy of the foregoing **Reply of UBS Securities LLC to Objections to Its Application, as Financial Advisor to the Official Unsecured Creditors' Committee, for Final Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred for the Period November 21, 2000 Through August 31, 2003** was served on the parties on the attached list and in the manner indicated thereon.

Kimberly D. Newmarch (No. 4340)

## CORAM HEALTHCARE CORP. and CORAM, INC.
### SERVICE LIST

**Via Hand Delivery**

Don A. Beskrone, Esquire
Office of the U.S. Trustee
J. Caleb Boggs Federal Building
844 King Street, Lockbox 35
Wilmington, DE 19801

*(Counsel to the Debtors)*
Pachulski Stang Ziehl Young & Jones
Laura Davis Jones, Esquire
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

*(Counsel to Coram Resources Network, Inc., Coram Independent Practice Association, Inc.)*
Richard H. Morse, Esquire
Edwin J. Harron, Esquire
Edmon L. Morton, Esquire
Pauline K. Morgan, Esquire
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

*(Counsel to Official Committee of Equity Security Holders)*
Mark Minuti, Esquire
Saul, Ewing, Remick & Saul, LLP
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899

**Via First Class Mail:**

*(Debtor)*
Allen Marabito
Coram Healthcare, Inc.
1125 Seventeenth Street Suite 2100
Denver, CO. 80202

*(Counsel to Debtors)*
David M. Friedman, Esquire
Athena Foley, Esquire
Adam L. Shiff, Esquire
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway, 22nd Floor
New York, NY 10019

*(Counsel to Senior Noteholders)*
Alan B. Miller, Esquire
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

*(DIP Lender)*
Carol Morrison, Esquire
Schulte Roth & Zabel, LLP
900 Third Avenue
New York, NY 10022

*(Counsel to Equity Committee)*
Richard F. Levy, Esquire
Theodore J. Low, Esquire
Benjamin D. Schwartz, Esquire
Brandy A. Sargent, Esquire
Altheimer & Gray
10 South Wacker Drive, Suite 4000
Chicago, IL 60606

A-660

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

-----------------------------------------------x
In re                                          :    Chapter 11
                                               :
CORAM HEALTHCARE CORP.                         :    Case Nos. 00-3299  through
and CORAM, INC.,                               :    00-3300 (MFW)
                                               :
                                               :    (Jointly Administered)
                                               :
        Debtors.                               :    Docket Ref. Nos. 3249, 3321, 3328
                                               :
-----------------------------------------------x

### REPLY OF UBS SECURITIES LLC TO OBJECTIONS TO ITS APPLICATION, AS FINANCIAL ADVISOR TO THE OFFICIAL UNSECURED CREDITORS' COMMITTEE, FOR FINAL ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE PERIOD NOVEMBER 21, 2000 THROUGH AUGUST 31, 2003

        UBS Securities LLC ("UBS"), through its counsel, submits this reply to (i) the objection

of Arlin M. Adams, the Chapter 11 Trustee (the "Trustee") of the bankruptcy estates of Coram

Healthcare Corp. and Coram, Inc. (collectively, the "Debtors") (the "Trustee's Objection"), and

(ii) the objection of the Official Committee of Equity Security Holders of Coram Healthcare

Corp. (the "Equity Committee")[1] (the "Equity Committee's Objection", and together with the

Trustee's Objection, the "Objections") to the First and Final Fee Application of UBS, as

Financial Advisors to the Official Unsecured Creditors' Committee, For Final Allowance of

Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary

---

[1] The Equity Committee's Objection was filed and served on November 25, 2003.  See Certificate of Service filed by Mark Minuti, Docket No. 3328.  The objection deadline was November 24, 2003. Because the Equity Committee's Objection was filed after the objection deadline, UBS respectfully requests that the Equity Committee's Objection be denied in its entirety.

Expenses Incurred for the Period November 21, 2000 through October 27, 2003 (the "Fee Application").[2] For the reasons set forth below, the Court should overrule the objections and grant the Fee Application.

      1.    The Trustee raises several objections to the Fee Application:  (a) he contends that UBS' Valuation Fee is in the nature of a contingent success fee, to which UBS is entitled only if a plan of reorganization proposed by the Debtor (as opposed to the Trustee of the Debtors estates) is confirmed; (b) he contends that the amount of the Valuation Fee is unreasonable; and (c) he contends that UBS has not earned the Monthly Fees.  None of these objections are well-founded.

**A.    The Court Should Allow the Valuation Fee**

      2.    Pursuant to the Letter Agreement, UBS is entitled to receive payment of a Valuation Fee in the amount of $700,000 upon the effective date of the Debtors' plan of reorganization.  When UBS and the Creditors' Committee entered into the Letter Agreement, both parties intended that UBS would receive its Valuation Fee regardless of whether the plan then proposed by the Debtors was confirmed.  By providing for payment on the effective date of the Debtors' plan of reorganization, the parties intended to allow the Debtors to preserve their cash during their bankruptcy. This did not mean that payment of UBS's Valuation Fee is contingent upon the achievement of any particular result or the confirmation of a plan proposed by the Debtors, as opposed to one proposed by the Trustee for the Debtors' estates.

      3.    The Trustee urges an alternative reading of the Letter Agreement, arguing that payment of the Valuation Fee is "contingent upon confirmation of a plan of reorganization

---

[2] Capitalized terms not otherwise defined shall have the meaning given to them in the Fee Application.

A-662

proposed by the debtors." Because the Trustee and not the Debtors proposed the plan which was ultimately confirmed, UBS has not, according to the Trustee's strained logic, "earned" the Valuation Fee. The Trustee has misread the Letter Agreement and apparently has an imperfect understanding of the nature of the services provided by UBS.

4.     Neither the Retention Order nor the Letter Agreement it approved provides that UBS should receive the Valuation Fee only upon the confirmation of a plan of reorganization proposed by the Debtors as opposed to any other possible plan proponent. The Retention Order provides that "in accordance with the Letter Agreement, the valuation fee of $700,000 is to be paid to UBS at the time of the effective date [of] the Debtors' plan of reorganization." The Letter Agreement, in turn, provides:

> Fees:  For [UBS's] services hereunder, the Committee subject to the approval of the Bankruptcy Court pursuant to the Retention Order or otherwise, shall cause the Company[3] to pay to [UBS] on the effective date of the Company's plan of reorganization seven hundred thousand dollars ($700,000) (the "Valuation Fee"). The Company's obligation to pay the Valuation Fee shall arise upon execution of this Agreement, and shall survive the termination of this Agreement by the Committee.

5.     The Trustee's tortured interpretation of the phrase "to pay to [UBS] on the effective date of the Company's plan of reorganization," to mean "the effective date of a plan of reorganization proposed by the Debtors." does not comport with the plain meaning of the Letter Agreement, nor is it consistent with the overall purpose of UBS' retention by the Creditors' Committee. Read plainly and fairly, the phrase, "the Company's plan of reorganization" means "a plan of reorganization for the Company [or Debtors.]" The use of the possessive form does

---

[3] The "Company" is defined in the Letter Agreement to include Coram Healthcare, Inc., and its affiliates. The term is thus used interchangeably with the term "the Debtors" in this Reply.

3

not limit the reference to a plan proposed by the Debtors. It merely indicates *any* plan which reorganizes the Debtors' assets, regardless of the identity of the plan proponent.

6.　　Furthermore, the Creditors' Committee retained UBS under the Letter Agreement to provide valuation services and expert testimony generally for use in the Debtors' chapter 11 cases. The purpose of UBS' retention was thus not narrowly limited to providing support for the confirmation of a single plan of reorganization proposed by the Debtors, but was more generally related to the provision of valuation services to the Creditors' Committee throughout the bankruptcy cases. Therefore, it makes no sense, in the context of the overall purpose of UBS' retention under the Letter Agreement, to condition UBS' compensation for the valuation services it provided "in connection with the chapter 11 case" on the confirmation of a plan of reorganization proposed by the Debtors. It simply was not the business understanding between UBS and the Creditors' Committee, as evidenced by the Letter Agreement, that UBS' compensation was to be limited in this way.

7.　　Moreover, UBS's right to payment of the Valuation Fee is not "contingent." Indeed, UBS' right to payment of the Valuation Fee arose upon execution of the Letter Agreement by the Committee and UBS (and the Letter Agreement's approval by the Court). The only "contingency" which existed was UBS' performance of the services requested - delivery of the valuation and testimony if requested. After UBS' delivery of the valuation and testimony in support thereof, no "contingency" with respect to the payment of the Valuation Fee remained. The last sentence in the excerpt quoted above (a sentence which the Trustee chose to omit when quoting the Letter Agreement in his Objection) demonstrates that the parties to the Letter Agreement understood and agreed that the Debtors were absolutely obligated to pay the Valuation Fee on November 21, 2000, the date that the Letter Agreement was executed. Indeed,

A-664

the Creditors' Committee has previously acknowledged to UBS that the $700,000 Valuation Fee became payable in November 2000. See Letter Reiterating Business Understanding from J. Soren Reynertson to Ted Gewertz, dated 9 October 2001, ¶ 2 (the "October 2001 Letter," a copy of which is attached as Exhibit A).

8.    The Trustee's contention that UBS has not "earned" the Valuation Fee is equally frivolous. UBS diligently and expertly provided the valuation services contemplated by the Letter Agreement under stringent time constraints and enormous pressure. The Creditors' Committee and the estates received the benefit of such services by, among other things, being able to rely on UBS's valuations and testimony during two contentious confirmation trials. The Creditors' Committee has acknowledged the benefit provided by UBS and UBS's right to payment with its unequivocal support of the Fee Application and in its Response to the Objections.

9.    The Trustee argues that the Letter Agreement creates a "contingent valuation fee." So far as UBS is aware, however, there is no such thing as a "contingent valuation fee." UBS has never agreed to such an arrangement; nor does it have knowledge of any of its peer firms agreeing to such an arrangement. See Affidavit of J. Soren Reynertson, dated October 13, 2004, ¶ 2 (the "Reynertson Affidavit," a copy of which is attached as Exhibit B). Certainly when a firm provides transactional investment banking services to a debtor--e.g., soliciting bids for assets, preparing offering memoranda, or providing general restructuring advice--it is a common and accepted practice to include an incentive-based component to the firm's compensation, which is in some sense "contingent." (For example, the compensation of an investment bank hired by a debtor will often include a "transaction fee" or "restructuring fee" that represents a percentage of any eventual sale or reorganization of the company.) But when a firm provides an

objective and analytical service, such as the valuation services UBS provided to the Committee in this case, the fee does not usually include a payment component that is tied to the eventual outcome of the case. Indeed, it would be inappropriate to make payment for a disinterested analysis, such as a valuation, contingent upon the success of a particular plan of reorganization. Such a fee structure would give the firm providing the valuation an inappropriate incentive to produce a valuation which supported the plan to which compensation is linked rather than an alternative plan. No such incentive would exist if payment of the valuation fee occurred upon the effectiveness of *any* plan of reorganization, as was the agreement in this case. The Trustee's proposed reading of the Letter Agreement, which would have this Court find that UBS and the Creditors' Committee entered into (and the Court approved) an inappropriate and entirely novel payment arrangement for the Valuation Fee, should thus be rejected. The Court should instead adopt the interpretation proffered by UBS and the Creditors' Committee, which (i) makes more grammatical sense than the Trustee's reading, (ii) better comports with the expressed intentions of the parties, and (iii) better comports with industry practices regarding valuation fees.

10.     The Trustee has also alleged, in passing, that the Valuation Fee is unreasonable. On the contrary, the amount of the Valuation Fee is entirely reasonable when compared with the fees charged by UBS in similar cases and with the fees charged by comparable firms for similar services in other cases. In fact, the amount of the Valuation Fee is lower than the amount of the fees that UBS has often charged in out of court circumstances. (Reynertson Affidavit ¶ 4).

11.     Finally, this Court has already approved the amount of the Valuation Fee in the Retention Order. The Retention Order provided that UBS was to provide a valuation of the Debtors and in return for that valuation was entitled to be paid, upon the effectiveness of the Debtors' plan of reorganization, a Valuation Fee of $700,000.00. As set forth above, this

6

Valuation Fee was earned in full when UBS performed the valuation. Where, as here, an engagement agreement provides for a payment of a flat fee in return for services rendered, the appropriate time to raise objections to the appropriateness of such a fee is at the time the engagement agreement is approved. At the time of the fee application, the only appropriate inquiry is whether or not the previously agreed upon services have been performed. Here, there is no dispute that UBS performed the valuation services agreed upon in the Letter Agreement and its entitlement to the Valuation Fee is law of the case. Accordingly, the Valuation Fee should be allowed in full.

**B.    The Court Should Allow the Monthly Fees**

12.    Contrary to the Trustee's assertion, the compensation of UBS for the entire nine months of additional Monthly Fees is both reasonable and required under the terms of the Retention Order and the Letter Agreement.

13.    The Retention Order specifically provides that "in the event that [UBS] is required to perform services hereunder beyond the date which is four (4) months from November 21, 2000, [the Debtors] shall pay [UBS] a fee (each, a "Monthly Fee") of fifty thousand dollars ($50,000) per month for each month subsequent to such fourth month." This provision in the Retention Order reflects the parties' understanding regarding Monthly Fees, as set forth in paragraph 3(b) of the Letter Agreement.[4]

---

[4] Paragraph 3(b) of the Letter Agreement provides:

> <u>Monthly Fee</u>:    In the event that [UBS] is required to perform services hereunder beyond the date which is four (4) months from the date hereof, the Committee shall cause the Company to pay [UBS] a fee (each, a "Monthly Fee") of fifty thousand dollars ($50,000) per month for each month subsequent to such fourth month. Each such Monthly Fee shall be payable in advance on the 21st day of each month for which a Monthly Fee is payable, or, if such day is not a business day, on the business day immediately preceding such date.

7

A-667

14.     In October 2001, the Creditors' Committee confirmed and acknowledged to UBS that it interpreted the Letter Agreement "to reflect an additional fee payable for services to be rendered in connection with the update of [UBS'] valuation materials to be a minimum of 8 months at $50,000 per month." The Creditors' Committee also agreed that "[a]dditional months beyond November 2001 will continue to accrue at $50,000 per month as per the [Letter Agreement]." (October 2001 Letter, ¶ 2). As set forth in the Fee Application, UBS provided nine months of additional services under the Letter Agreement, and accrued total Monthly Fees of $450,000, which is payable now.

15.     The Trustee's contention that UBS "did not perform any services for the Creditors' Committee" during six of the nine months for which Monthly Fees accrued is contradicted by the October 2001 Letter. The Creditor's Committee clearly regarded the continued retention of UBS during the entire nine-month period as a service that benefited the Creditor's Committee and the estate, and it regarded the compensation of UBS for such services as appropriate under the terms of the Letter Agreement. Moreover, the Court has already approved UBS' compensation according to the terms of the Letter Agreement, including implicitly the parties' intentions regarding the requirements of the Letter Agreement. The Trustee's assertion that compensation for the entire amount of Monthly Fees is unreasonable does not reflect the understanding of the parties to the Letter Agreement regarding Monthly Fees, nor does it acknowledge the Court's approval of such compensation pursuant to the Retention Order. Thus, compensation of UBS for the full amount of Monthly Fees requested in the Fee Application is both reasonable and required under the terms of the Retention Order and the Letter Agreement.

A-668

16.    In addition, the amount of the Monthly Fees is reasonable when compared with similar fees charged by UBS in similar cases, and is reasonable when compared with the fees charged by comparable firms for similar services in other cases.  In fact, the amount of the Monthly Fees is lower than the amount that UBS has often charged in similar circumstances. (Reynertson Affidavit ¶ 4).  Accordingly, the Monthly Fees should be allowed in full.

9

For the reasons set forth above and in the Fee Application, UBS respectfully requests that the Court overrule the Objections and grant the relief requested in the Fee Application.

Dated: October 13, 2004

COVINGTON & BURLING
David W. Haller
Susan Power Johnston
Charles H. Jeanfreau
1330 Avenue of the Americas
New York, New York 10019
212-841-1000

Attorneys for UBS Securities LLC

A-670

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

----------------------------------------------------x
In re                                    :    Chapter 11
                                         :
CORAM HEALTHCARE CORP.                   :    Case Nos. 00-3299 through
and CORAM, INC.,                         :    00-3300 (MFW)
                                         :
                                         :    (Jointly Administered)
         Debtors.                        :
                                         :    Docket Ref. Nos. 3249, 3321, 3328
----------------------------------------------------x

**RESPONSE OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN
SUPPORT OF APPLICATION OF UBS SECURITIES LLC, AS FINANCIAL ADVISOR
TO THE OFFICIAL UNSECURED CREDITORS' COMMITTEE, FOR FINAL
ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED
AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED
FOR THE PERIOD NOVEMBER 21, 2000 THROUGH AUGUST 31, 2003**

The Official Committee of Unsecured Creditors of Coram Healthcare and Coram, Inc.

(the "Creditors' Committee") by and through its undersigned counsel, hereby for its response to

(i) the objection of Arlin M. Adams, the Chapter 11 Trustee (the "Trustee") of the bankruptcy

estates of Coram Healthcare Corp. and Coram, Inc. (collectively, the "Debtors") (the "Trustee's

Objection"), and (ii) the objection of the Official Committee of Equity Security Holders of

Coram Healthcare Corp. (the "Equity Committee") (the "Equity Committee's Objection", and

together with the Trustee's Objection, the "Objections") to the First and Final Fee Application of

UBS, as Financial Advisors to the Official Unsecured Creditors' Committee, For Final

Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual

A-671

and Necessary Expenses Incurred for the Period November 21, 2000 through October 27, 2003 (the "Fee Application")[1], respectfully states as follows:

## A. The Court Should Allow the Valuation Fee

1.    When UBS and the Creditors' Committee entered into the Letter Agreement, the Creditors' Committee had no intention of making payment of UBS' Valuation Fee contingent upon confirmation of the plan of reorganization then under consideration by the Court. Rather, the Creditors' Committee intended that UBS would receive its Valuation Fee regardless of whether the plan then proposed by the Debtors or another plan was confirmed. The reference to the effective date of the Debtors' plan of reorganization in the Letter Agreement was intended by the parties to be a means to allow the Debtors to preserve their cash during their bankruptcy, but was not intended to make payment of UBS's Valuation Fee contingent upon the achievement of any particular result in the Debtors' bankruptcy cases - in other words, the parties intended merely to preserve the Debtors' cash flow by deferring the payment of UBS' Valuation Fee until the Debtors' emergence from bankruptcy.

2.    The Trustee's alternative reading of the Letter Agreement, which suggests that the parties to the Letter Agreement intended to make UBS' Valuation Fee contingent upon the success of the plan of reorganization then proposed by the Debtors thus contradicts the intent of both parties to the Letter Agreement. The Trustee's view regarding the conditions to the payment of the Valuation Fee is based on a strained and illogical misreading of the language of the Letter Agreement, an imperfect understanding of the nature of the services provided by UBS and a misunderstanding of the intentions of the parties to the Letter Agreement.

---

[1] Capitalized terms not otherwise defined shall have the meaning given to them in the Fee Application.

2

A-672

3.    The Letter Agreement does not provide that payment of the Valuation Fee is dependent on the confirmation of a plan of reorganization proposed by the Debtors because the service the Creditors' Committee sought (and received) from UBS was a disinterested, objective analysis of the value of the Debtors and expert testimony in support of that valuation.  To have conditioned the payment of UBS' Valuation Fee upon the achievement of a particular result would have given UBS a financial stake in the result of their analysis and thus would have undermined the very thing the Creditors' Committee sought when retaining UBS - an objective and disinterested valuation of the Debtors.

4.    The Creditors' Committee has previously confirmed to UBS that it believes that the Valuation Fee became payable pursuant to the terms of the Letter Agreement in November 2000, when the valuation was performed.  See Letter from J. Soren Reynertson to Ted Gewertz, dated October 9, 2001 (the "October 2001 Letter ,a copy of which is attached as Exhibit A).  Upon execution of the Letter Agreement, UBS earned the Valuation Fee, even if the parties agreed that, in order to preserve the cash flow of the Debtors, the fee would not be payable until the Debtors' emergence from bankruptcy.

5.    Accordingly, (a) because the intent of the parties to the Letter Agreement was that UBS would earn its Valuation Fee upon rendering its valuation and related testimony but would receive its Valuation Fee in full upon confirmation of any plan of reorganization with respect to the Company, and (b) because the Trustee's reading of the Letter Agreement would lead to an absurd result - that the Creditors' Committee and UBS agreed to a compensation arrangement that would raise a claim

3                                A-673

of self-interest on the part of UBS and thereby diminish the value of its services, the Court should allow the Valuation Fee in full.

**B.    The Court Should Allow the Monthly Fees**

6.    The compensation of UBS for the entire nine months of additional Monthly Fees is both reasonable and required under the terms of the Retention Order and the Letter Agreement.

7.    The Retention Order specifically provides that "in the event that [UBS] is required to perform services hereunder beyond the date which is four (4) months from November 21, 2000[2], [the Debtors] shall pay [UBS] a fee (each, a "Monthly Fee") of fifty thousand dollars ($50,000) per month for each month subsequent to such fourth month." This provision in the Retention Order reflects the parties' understanding regarding Monthly Fees, as set forth in paragraph 3(b) of the Letter Agreement.[3]

8.    When it became clear that UBS' valuation services and testimony would be required in connection with the Debtors' second confirmation hearing, the Creditors' Committee sought to ensure UBS' availability.  Accordingly, in October 2001, the Creditors' Committee confirmed and acknowledged to UBS that it interpreted the Letter Agreement "to reflect an additional fee payable for services to be rendered in connection with the update of [UBS'] valuation materials to be a minimum of 8 months at $50,000 per month."  The Creditors'

_____

[2] I.e., beyond March 21, 2001.

[3] Paragraph 3(b) of the Letter Agreement provides:

>    Monthly Fee:    In the event that [UBS] is required to perform services hereunder beyond the date which is four (4) months from the date hereof, the Committee shall cause the Company to pay [UBS] a fee (each, a "Monthly Fee") of fifty thousand dollars ($50,000) per month for each month subsequent to such fourth month.  Each such Monthly Fee shall be payable in advance on the 21st day of each month for which a Monthly Fee is payable, or, if such day is not a business day, on the business day immediately preceding such date.

Committee also agreed that "[a]dditional months beyond November 2001 will continue to accrue at $50,000 per month as per the [Letter Agreement]." (October 2001 Letter, ¶ 2). As set forth in the Fee Application, UBS provided nine months of additional services under the Letter Agreement, and accrued total Monthly Fees of $450,000.

9.      The Creditors' Committee regarded the continued retention of UBS during the entire nine-month period as a service that benefited the Creditors' Committee and the estate, and it regarded the compensation of UBS for such services as appropriate under the terms of the Letter Agreement. These services included updating UBS' initial valuation and testifying in support of that updated valuation at the Debtors' second confirmation hearing. Such services, which UBS was not required to perform under the terms of the Letter Agreement, were of value to the Creditors' Committee and the estates. The Trustee's assertion that compensation for the entire amount of Monthly Fees is unreasonable does not reflect the understanding of the parties to the Letter Agreement regarding Monthly Fees or the value to the Creditors' Committee and the estates of UBS' services, nor does it take into account the Court's approval of such compensation pursuant to the Retention Order. The Creditors' Committee believes that compensation of UBS for the full amount of Monthly Fees requested in the Fee Application is both reasonable and required under the terms of the Retention Order and the Letter Agreement. Accordingly, the Monthly Fees should be allowed in full.

**[Remainder of Page Intentionally Left Blank]**

A-675

WHEREFORE, the Creditors' Committee respectfully requests that the Court overrule the Objections and grant the relief requested in the Fee Application.

Dated: October 13, 2004

_Kimberly D. Newmarch_
Mark D. Collins (DE 2981)
Kimberly Newmarch (DE 4340)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899

Theodore Gewertz
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
212-403-1000

Attorneys for Official Committee of Unsecured Creditors

A-676

6

# EXHIBIT A

RLF1-2709498-1

Received 10/09/2001 02:49PM in 00:50 on line [7] for CRTG * Pg 1/1

Oct-09-2001 02:54pm    From-UBS WARBURG FINANCIAL SPONSORS GROUP    212-821-6440    T-826    P.001/001    F-563

# ✿ UBS Warburg

UBS Warburg
299 Park Avenue
New York, NY 10171
Tel. 1-212-821-3000

J. Soren Reynertson
Director
299 Park Avenue
New York, NY 10171
Tel. 1-212-821-3467
Fax 1-212-821-3008
soren.reynertson@ubsw.com

www.ubsw.com

## Fax

9 October 2001

**Strictly Private & Confidential**

to Ted Gewertz, Wachtell Lipton                    Fax. 212.403.2236

pages 1 (Including this page)

re Coram Healthcare

Further to our conversation of earlier today regarding UBSW's engagement with the Unsecured Creditors Committee of Coram Healthcare, please confirm the following by initialing below and returning this letter to me:

1. Our current fee payable is $700,000 as a result of the services performed for the Committee last November

2. You interpret our engagement letter to reflect an additional fee payable for services to be rendered in connection with the update of our valuation materials to be a minimum of 8 months at $50,000 per month. For example, the additional fee payable will be $400,000 if the current services are completed by November 21, 2001 (for a total fee of $1.1 million). Additional months beyond November 2001 will continue to accrue at $50,000 per month as per the engagement letter

3. Your clients agree with the description of our fee arrangement in 1 and 2

4. You and your clients agree to support our application for allowance of the fees in this case in accordance with 1 and 2

Thank you,

J. Soren Reynertson

Confirmed: — — SUBJECT TO TESTIMONY BY WILLIAM C. McGAHAN

WACHTELL, LIPTON, ROSEN & KATZ
COUNSEL FOR OFFICIAL COMMITTEE
OF UNSECURED CREDITORS

The information contained in this facsimile message is confidential information intended only for the individual or entity named herewith. If the reader of this information is not the named recipient, you are hereby notified that any dissemination, distribution or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately contact us by telephone and return the original message to us at the above address.

UBS Warburg is the Investment Banking Division of UBS AG

N:\my\057\groupdirs\INFRASTRUCTURE\KIN\Coram\Mod Reworks letter.doc

A-678

## CERTIFICATE OF SERVICE

I, Kimberly D. Newmarch, do hereby certify that on October 13, 2004, a copy of

the foregoing **Response of Official Committee of Unsecured Creditors In Support of**

**Application of UBS Securities LLC, as Financial Advisor to the Official Unsecured**

**Creditors' Committee, for Final Allowance of Compensation for Professional Services**

**Rendered and Reimbursement of Actual and Necessary Expenses Incurred for Period**

**November 21, 2000 Through August 31, 2003** was served on the parties on the attached list

and in the manner indicated thereon.

Kimberly D. Newmarch (No. 4340)

A-679

## CORAM HEALTHCARE CORP. and CORAM, INC.
## SERVICE LIST

<u>**Via Hand Delivery**</u>

Don A. Beskrone, Esquire
Office of the U.S. Trustee
J. Caleb Boggs Federal Building
844 King Street, Lockbox 35
Wilmington, DE 19801

*(Counsel to the Debtors)*
Pachulski Stang Ziehl Young & Jones
Laura Davis Jones, Esquire
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

*(Counsel to Coram Resources Network, Inc., Coram Independent Practice Association, Inc.)*
Richard H. Morse, Esquire
Edwin J. Harron, Esquire
Edmon L. Morton, Esquire
Pauline K. Morgan, Esquire
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

*(Counsel to Official Committee of Equity Security Holders)*
Mark Minuti, Esquire
Saul, Ewing, Remick & Saul, LLP
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899

<u>**Via First Class Mail:**</u>

*(Debtor)*
Allen Marabito
Coram Healthcare, Inc.
1125 Seventeenth Street  Suite 2100
Denver, CO. 80202

*(Counsel to Debtors)*
David M. Friedman, Esquire
Athena Foley, Esquire
Adam L. Shiff, Esquire
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway, 22nd Floor
New York, NY 10019

*(Counsel to Senior Noteholders)*
Alan B. Miller, Esquire
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

*(DIP Lender)*
Carol Morrison, Esquire
Schulte Roth & Zabel, LLP
900 Third Avenue
New York, NY 10022

*(Counsel to Equity Committee)*
Richard F. Levy, Esquire
Theodore J. Low, Esquire
Benjamin D. Schwartz, Esquire
Brandy A. Sargent, Esquire
Altheimer & Gray
10 South Wacker Drive, Suite 4000
Chicago, IL 60606

Rcvd 12/06 02:42PM (06:56) on RightFax line 01 for CRTG    WORKSRV1 printed TC03A2E521B308A on 12/06/2000 02:52PM * Pg 2/24

FROM RICHARDS, LAYTON &    FINGER #10    (WED)12. 6'00 14:44/ST. 14:38/NO. 4864083265 P  2

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ─────────────────────────x | : | Chapter 11 Case Nos. |
| In re | : |  |
|  | : | 00-3299 (MFW) through |
| **CORAM HEALTHCARE CORP.** | : | 00-3300 (MFW) |
| and CORAM, INC., et al., | : | (jointly administered) |
|  | : |  |
| Debtors. | : |  |
|  | : |  |
| ─────────────────────────x |  |  |

### ORDER AUTHORIZING THE RETENTION OF UBS WARBURG LLC TO SERVE AS FINANCIAL ADVISOR TO THE OFFICIAL UNSECURED CREDITORS' COMMITTEE

Upon consideration of the application (the "Application") by the Official Committee of Unsecured Creditors (the "Committee"), seeking an order pursuant to section 1103 of title 11 of the United States Code (the "Bankruptcy Code") authorizing and approving the employment and retention of UBS Warburg LLC ("UBSW") as its financial advisor as is more fully set forth in the Application; and upon the affidavit of Robert D. Dishner in support of the Application (the "Dishner Affidavit"); and the Court being satisfied, based upon the representations made in the Application and the Dishner Affidavit, that UBSW represents or holds no interest adverse to the Debtors or the Committee with respect to the matters upon which it is to be engaged and is disinterested as that term is defined under section 101(14) of the Bankruptcy Code, and that the employment of UBSW is necessary and would be in the best interests of the Committee; and it appearing that due notice of the Application has been given to the Office of the United States Trustee for the District of Delaware, and those persons who have filed notices of appearance in these cases, and that no other or further notice need be given; and sufficient cause appearing therefor, it is hereby

ORDERED that, in accordance with section 1103 of the Bankruptcy Code, the Committee is hereby authorized to employ and retain UBSW as its financial advisor for the

RLF1-2234579-2

A-681

Rcvd 12/06 02:42PM (06:56) on RightFax Line 01 for CRTG          WORKSRV1 printed TC03A2E521B308A on 12/06/2000 02:52PM * Pg 3/24

FROM RICHARDS, LAYTON &    FINGER #10          (WED) 12. 6' 00 14:45/ST. 14:38/NO. 4864083265 P    3

purpose of providing valuation services to the Committee in accordance with, and upon the terms and conditions contained in, the letter agreement between UBSW and the Committee, dated November 21, 2000 (the "Letter Agreement"), a copy of which is attached to the Application as Exhibit "A", effective as of November 21, 2000.

ORDERED that, in accordance with the Letter Agreement, the valuation fee of $700,000 is to be paid to UBSW at the time of the effective date the Debtors' plan of reorganization (the "Valuation Fee"). In addition, in the event that UBSW is required to perform services hereunder beyond the date which is four (4) months from November 21, 2000, the above-captioned debtors (the "Debtors") shall pay UBSW a fee (each, a "Monthly Fee") of fifty thousand dollars ($50,000) per month for each month subsequent to such fourth month. Each such Monthly Fee shall be payable in advance on the 21st day of each month for which a Monthly Fee is payable, or, if such day is not a business day, on the business day immediately preceding such date.

ORDERED that, in accordance with Exhibit A to the Letter Agreement, the Debtors shall indemnify UBSW and certain related parties from and against any losses, claims, damages, expenses and liabilities related to or arising out of or in connection with its activities as financial advisor to the Committee, other than losses, damages, claims, expenses and liabilities that are the result of UBSW's or such related party's gross negligence or willful misconduct.

Dated: December ___, 2000
       Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

Movant to send copies to all
parties and file certificate
of service with the court.
RLF1-2334579-2

2

12/4/00

A-682

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .  Chapter 11
                                    .
CORAM HEALTHCARE CORP., and         .  Case Nos. 00-3299 and
CORAM, INC.,                        .  00-3300(MFW)
                                    .
          Debtors.                  .  Oct. 18, 2004 (11:30 a.m.)
                                    .  (Wilmington)


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY COURT JUDGE


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.


A-683

2

THE CLERK:  All rise.  Please be seated.

THE COURT:  Good morning.

MR. HALLER:  Judge Walrath, it's David Haller for Covington & Burling.  We represent UBS Securities, and we're here on our application for our fees.

THE COURT:  All right.

MR. HALLER:  I don't know if Your Honor's had a chance to look at our papers, but I think they are pretty clearly what we think the basis for the recovery is.  UBS performed substantial valuation work about four years ago, and the fee agreement provided that that work was done for a fee of $700,000.  Thereafter, about a year passed and UBS's services were sought once again.  There was a discussion had at that point.  It was UBS's position that the existing fee agreement covered that additional work which was sought and a letter was -- a letter agreement was signed between the Creditors Committee and UBS confirming that the monthly fee that was provided for in the initial engagement would sufficiently cover that additional work.  And as it turned out, it actually worked reasonably fairly.  The total of the monthly fees came to about $450,000 which was significantly less than the $700,000 for which the first valuation was done.  The second valuation required about the same amount of work so there's perhaps a bit of a discount for that second valuation, but the work done by UBS was substantial, done

A-684

under a lot of time pressure.  It was at fair and reasonable
rates agreed to and so ordered by this Court, and we think,
you know, the application is well-taken.

THE COURT:  All right.  I'll hear from the Trustee.

MR. BARKASY:  Your Honor, Richard Barkasy from
Schnader Harrison, Segal & Lewis representing the Chapter 11
Trustee.  Your Honor, I may be working my way backward, the
application includes approximately $30,000 in fees for UBS's
counsel in preparing the application.  The letter agreement
provides that to the extent that UBS would seek recovery of
such counsel fees, counsel had to be appointed by the Court.
Covington & Burling has not been appointed by the Court, and
as a result, that approximately $30,000 fee should be denied.
As to the monthly fees, there was a charge of $50,000 per
month for the months from March '01 through December '01.  As
the time records that are annexed to the application show no
work was performed in March, April, May, June, July, August,
or September '01.  Work was performed during only three of
the nine months under the reading of the Committee and UBS as
to the order and agreement.  To the extent that an hour's
worth of work was performed after March 1, they would be
entitled to $450,000 in nine months of monthly fees of
$50,000 a month, and we think that such a reading is not
correct and that monthly fees should not be awarded for the
months during which no work was performed.  As to the

A-685