2.102 "Series B Notes" means Series B Subordinated Convertible Notes issued by Coram and guaranteed by CHC pursuant to, among other documents, the Securities Exchange Agreement in the aggregate original principal amount of $87,922,213 and subject to redemption.

2.103 "Service" means the Internal Revenue Service.

2.104 "Shareholder Agreement" means the Shareholder Agreement to be executed by the recipients of the New Coram Stock on the Effective Date, which shall limit transferring such stock in a manner that it would become held, directly or indirectly, by a physician or family member of a physician unless indirectly owned by a physician through a publicly traded company with stockholder equity in excess of $75 million, which shall be in the form set forth in the Plan Supplement.

2.105 "Sub-Class" means a category of holders of Claims that is a subset of a Class, as established pursuant to Sections III and IV of the Plan.

2.106 "Subsequent Distribution Date" means the dates beginning six (6) months after the Effective Date and on the same date (or if such date is not a Business Day, then the subsequent Business Day) of each month thereafter.

2.107 "Tax Code" means the Internal Revenue Code of 1986, as amended.

2.108 "Tax Note" means a promissory note delivered to a holder of an Allowed Tax Claim providing for equal cash payments, made semi-annually, commencing on the first anniversary of the date of the assessment of such a Tax Claim over a period not exceeding six (6) years after the date of assessment of such Tax Claim which is the subject of the relevant Allowed Priority Tax Claim. Each Tax Note shall include simple interest at the rate of 9 % per annum from the Effective Date.

2.109 "34 Act" means the Securities Exchange Act of 1934, as amended.

2.110 "Unsecured Claims Reserve" means a reserve established to hold, in one or more segregated accounts to be established by the Debtors or the Plan Administrator the CHC General Unsecured Consideration, which will be maintained in trust for holders of Allowed CHC General Unsecured Claims in Class CHC 2, plus, in the event Class CHC 2 votes to accept this Plan by the requisite majorities applicable, the CHC Noteholder Consideration (in such event creating an aggregate Unsecured Claims Reserve in the amount of $3 million), plus in the event the Debtors are unsuccessful in the Absolute Priority Litigation, the Equity Interest Consideration (in such event creating an aggregate Unsecured Claims Reserve in the amount of $12 million).

# ARTICLE III

## RULES OF CLASSIFICATION

3.1     General Rules of Classification

      3.1.1    All Claims and Equity Interests, other than Administrative Claims and Priority Tax Claims, if any, have been classified in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Tax Priority Claims are not impaired under the Plan, and therefore, in accordance with section 1123(a)(3) of the Bankruptcy Code, have not been classified and thus are excluded from the Classes set forth below.

      3.1.2.    A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Class(es) to the extent that any remainder of the Claim or Equity Interest falls within the description of such other Class(es). Unless otherwise provided, to the extent a Claim or Equity Interest qualifies for inclusion in a more specifically defined class and a more generally defined class, it shall be included in the more specifically defined class.

      3.1.3    A Claim or Equity Interest is also classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim, or Equity Interest: (a) is an Allowed Claim or an Allowed Equity Interest, as the case may be, in that Class and (b) such Claim or Equity Interest, as the case may be, has not been paid, released, or otherwise settled prior to the Effective Date.

3.2     Undersecured Claims Against Any Debtor     To the extent that the amount of an Allowed Claim is greater than the value of the collateral securing such Claim as of the applicable valuation date, subject to section 1111 (b) of the Bankruptcy Code, such Claim is classified in both a Secured Claim Class for the secured portion of such Claim and a General Unsecured Claim Class for the excess of such Claim over the value of the collateral.

B-35

      3.3    <u>Separate Classifications</u>  The Claims and Equity Interests against each Debtor are separately classified.

# ARTICLE IV

## CLASSIFICATION OF CLAIMS AND ALLOWED EQUITY INTERESTS

B-35

4.1  All Claims and Allowed Interests, other than Administrative Claims and Priority Tax Claims, are classified into the following Classes pursuant to section 1123(a) of the Bankruptcy Code:

4.2  **CHC**

<u>Class CHC P</u>:  Class CHC P consists of all Allowed CHC Priority Non-Tax Claims

<u>Class CHC 1</u>:  Class CHC 1 consists of all Allowed CHC Secured Claims.

<u>Class CHC 2</u>:  Class CHC 2 consists of all Allowed CHC General Unsecured Claims.

<u>Class CHC 3</u>:  Class CHC 3 consists of all Allowed CHC Notes Claims.

<u>Class CHC 4</u>:  Class CHC 4 consists of all Allowed CHC Equity Interests.

4.3  **Coram**

<u>Class Coram P</u>:  Class Coram P consists of all Allowed Coram Priority Non-Tax Claims.

<u>Class Coram 1</u>:  Class Coram 1 consists of all Allowed Coram Secured Claims.

<u>Class Coram 2</u>:  Class Coram 2 consists of all Allowed Coram General Unsecured Claims

<u>Class Coram 3</u>:  Class Coram 3 consists of all Allowed Coram Note/Preferred Stock Claims.

<u>Sub-class Coram 3A</u>:  Sub-class Coram 3A is a subset of Class Coram 3 and consists of all Allowed Coram Notes Claims.

<u>Sub-class Coram 3B</u>:  Sub-class Coram 3B is a subset of Class Coram 3 and consists of all Allowed Coram Preferred Stock Interests.

<u>Class Coram 4</u>:  Class Coram 4 consists of all Allowed Coram Equity Interests.

## ARTICLE V

### IMPAIRMENT OF CLAIMS OR ALLOWED EQUITY INTERESTS

5.1     The Classes of Claims and Interests that are impaired under the provisions of this Plan are Classes CHC 2, CHC 3, CHC 4, Coram 3, and Coram 4. The Debtors are soliciting acceptances to the Plan from the holders of Claims and Equity Interests in Classes CHC 2, CHC 3, CHC 4, and Coram 3.

The Debtors are not soliciting acceptances from the holders of Equity Interests in Class Coram 4 because that Class will receive no distribution of property under the Plan and is deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

The Debtors are not soliciting acceptances from the holders of Claims in Classes CHC P, CHC1, Coram P, Coram 1 and Coram 2 because those classes are unimpaired and are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.

## ARTICLE VI

### TREATMENT OF UNCLASSIFIED CLAIMS

6.1     Administrative Claims.

Administrative Claims are not classified under the Plan. In accordance with section 1129(a)(9) of the Bankruptcy Code, each holder of an Allowed Administrative Claim shall receive the full amount of its unpaid Allowed Administrative Claim (i) in cash on the Effective Date or (ii) on such other terms as mutually agreed to by the holder of an Allowed Administrative Claim and the Debtors; provided, however, that Allowed Administrative Claims representing (a) post-Petition Date liabilities incurred in the ordinary course of business, or (b) post-Petition Date liabilities arising under loans or advances to any Debtor(s), whether or not incurred in the ordinary course of business, shall be paid in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto; provided, further, however, that administrative claims of the United States Trustee pursuant to 29 U.S.C. § 1930(a)(6) shall be paid in accordance with the applicable schedule for payment of such fees, provided, further, however, that interim and/or final payment of Allowed Administrative Claims approved by the Bankruptcy Court shall be paid in accordance with such Bankruptcy Court approval; provided, further, however, that notwithstanding any other provision contained in this section, DIP Claims shall be paid in accordance with the terms of the DIP Facility, the DIP Order, and section 6.1.1 of the Plan, and; provided, further, however, that compensation and reimbursement claims shall be paid in accordance with section 6.1.2 of the Plan.

17

6.1.1    DIP Claims

DIP Claims shall be paid in accordance with the terms of the DIP Facility and the DIP Order, giving due regard and fully enforcing all priorities, "superpriorities," and liens granted in favor of the DIP Lenders. Upon payment in full of the DIP Claims, the DIP Lenders shall release any and all liens against and security interests in the Debtors' and the Estates' property, the DIP Facility shall be deemed terminated, and the obligations of the Debtors and Reorganized Coram thereunder shall be canceled.

6.1.2    Compensation and Reimbursement Claims

All persons or entities that are awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with section 330 or 331 of the Bankruptcy Code, or entitled to the priorities established pursuant to section 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court (a) on or as soon as practicable following the later to occur of (i) the Effective Date and (ii) the date upon which the Bankruptcy Court order allowing such Claim becomes a Final Order or (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Administrative Expense Claim and the Debtors or Reorganized Coram.

6.2    Priority Tax Claims

Priority Tax Claims are not classified under the Plan. In full satisfaction, payment and discharge of its Priority Tax Claim, and in accordance with section 1129(c)(9)(C) of the Bankruptcy Code, each holder of an Allowed Priority Tax Claim shall receive (i) payment, in Cash, of the full amount of such holder's Priority Tax Claim, (ii) a Tax Note equal to the full amount of such holder's Priority Tax Claim, (iii) a combination of Cash and a Tax Note, or (iv) on such other terms as mutually agreed to by the holder of an Allowed Priority Tax Claim and the Debtors or Reorganized Coram. Any claim or demand for fines or penalties relating to a Priority Tax Claim shall be disallowed, and the holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtors or the Reorganized Coram.

6.2.1    Pass-through of Internal Revenue Service Claims

Notwithstanding any other provision in the Plan, or Confirmation Order, any rights and claims (whether liquidated, or contingent) of the United States Internal Revenue Service shall not be discharged, impaired, or adversely affected by the Plan or Confirmation Order in these cases (except as set forth in this paragraph). Instead, except as otherwise agreed to by the Internal Revenue Service (the "Service") and Reorganized Coram, the Debtors' liabilities due the Service, (i) shall be determined and resolved in the same manner and by the same administrative process or judicial tribunals in which such rights or claims would have been determined, resolved or adjudicated had the Cases not been

18

commenced and (ii) shall be paid as if the Cases had not been commenced, other than with respect to any liabilities owing to the Service which would otherwise be classified as Priority Tax Claims under this Plan pursuant to 11 U.S.C. § 507(a)(8), which claims shall be paid in full over a period of six years from the date of assessment in equal quarterly installments for quarters ending (3/30, 6/30, 9/30, 12/31) at the rate of interest provided under 26 U.S.C. § 6621 (a), without regard to 26 U.S.C. § 6621(c). The first such quarterly installments shall be paid so as to be received on or before September 30, 2002, or at the close of the first quarter following assessment (whichever is later) and each installment thereafter shall be paid so as to be received at the close of each subsequent quarter. In the event the Debtors or any successor in interest fails to make a timely installment payment, the Service shall make a written demand for such payment. If the payment has not been received within 14 days from the date such demand is mailed (other than as a result of a good faith dispute as to liability), then the Debtors or the successors in interest shall be in default. In the event of default, the entire deferred liability shall become due and payable immediately and the Service may make a written demand for payment and collect any such unpaid liabilities through the administrative collection provisions of the Tax Code.

## ARTICLE VII

### TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

7.1    Treatment of Class CHC P
       (Allowed CHC Priority Non-Tax Claims)

In full satisfaction, payment and discharge of its Priority Non-Tax Claim, and in accordance with section 1129(a)(9) of the Bankruptcy Code, each holder of an Allowed CHC Priority Non-Tax Claim shall receive payment in full, at the option of the Debtors, (i) in Cash on the Effective Date, or (ii) such other treatment as will render such Allowed CHC Priority Non-Tax Claim unimpaired.

Class CHC P is unimpaired under the provisions of the Plan.

The Debtors are not soliciting acceptances from the holders of Claims in Class CHC P.

7.2    Treatment of Class CHC 1
       (Allowed CHC Secured Claims)

In full satisfaction, payment and discharge of its Allowed CHC Secured Claims, each holder of an Allowed CHC Secured Claim, if any, shall receive, at the option of the Debtors, (i) payment in full in Cash on the later of the Effective Date or the date such Claim becomes an Allowed Claim, or (ii) such other treatment as will render such Allowed CHC Secured Claim unimpaired.

Class CHC 1 is unimpaired under the provisions of the Plan.

The Debtors are not soliciting acceptances from the holders of Claims in Class CHC 1.

7.3     Treatment of Class CHC 2
        (Allowed CHC General Unsecured Claims)

(a)     If Class CHC 2 votes to accept the Plan by the majorities required by section 1126(c) of the Bankruptcy Code, each holder of an Allowed CHC General Unsecured Claim, in full satisfaction, payment and discharge of its Allowed CHC General Unsecured Claim, shall receive its Pro Rata Share of (i) the CHC General Unsecured Consideration and (ii) the CHC Noteholder Consideration.

(b)     If Class CHC 2 fails to accept the Plan by the majorities set forth in section 1126(c) of the Bankruptcy Code, each holder of an Allowed CHC General Unsecured Claim shall receive, in full satisfaction, payment and discharge of its Allowed CHC General Unsecured Claim, its Pro Rata share of the CHC General Unsecured Consideration, provided however, if the Absolute Priority Litigation is commenced and the Court is unwilling to confirm the Plan unless the CHC Equity Interest Consideration is first made available to Class CHC 2, then each holder of an Allowed Claim in Class CHC 2 shall receive the lesser of (i) its Pro Rata share of $12 million in cash (the CHC General Unsecured Consideration plus the CHC Equity Interest Consideration), and (ii) an amount necessary to cause such holder to be paid in full.

(c)     In order to provide the distribution of the CHC General Unsecured Consideration and the CHC Noteholder Consideration afforded by subsections (a) and (b) above, (as applicable), the holders of Coram Notes/Preferred Stock Claims (Class Coram 3) and CHC Notes Claims (Class CHC 3) agree and shall be deemed to have authorized the Debtors to transfer and distribute the CHC Unsecured Consideration and/or the CHC Noteholder Consideration, to which the holders of Coram Notes/Preferred Stock Claims would have been legally entitled, to the Unsecured Claims Reserve for the benefit of Class CHC 2.

Class CHC 2 is impaired under the provisions of the Plan.

The Debtors are soliciting acceptances from the holders of Claims in Class CHC 2.


7.4     Treatment of Class CHC 3
        (Allowed CHC Notes Claims)

Each holder of an Allowed CHC Notes Claim, in full satisfaction, payment and discharge of its Allowed CHC Notes Claim, shall receive its Pro Rata share of the CHC Noteholder Consideration; provided, however, that if Class CHC 2 votes to accept the Plan by the majorities required by section 1126(c) of the Bankruptcy Code, then the holders of Allowed CHC Notes Claims shall be deemed to

have waived the right to receive the CHC Noteholder Consideration, and shall have authorized the Debtors to transfer and to distribute the CHC Noteholder Consideration to the holders of Class CHC 2 Claims in accordance with section 7.3(c) of the Plan, and the holders of Allowed CHC Notes Claims shall receive no distribution from CHC under the Plan.

Class CHC 3 is <u>impaired</u> under the provisions of the Plan.

The Debtors are soliciting acceptances from the holders of Claims in Class CHC 3.

7.5    <u>Treatment of Class CHC 4</u>
       (Allowed CHC Equity Interests)

(a)    If Class CHC 4 votes to accept the Plan by the majorities required by section 1126(d) of the Bankruptcy Code, each holder of an Allowed CHC Equity Interest, in full and complete satisfaction, redemption, and discharge of its Allowed CHC Equity Interest, which shall be deemed canceled and extinguished, shall receive its Pro Rata Share of the CHC Equity Interest Consideration, <u>provided, however</u>, if the Absolute Priority Litigation is commenced and the Bankruptcy Court rules with respect to the Absolute Priority Litigation that the proposed distribution of the CHC Equity Interest Consideration to Class CHC 4 otherwise would render the Plan unconfirmable, the CHC Equity Interest Consideration (and the CHC General Unsecured Consideration) shall be used to satisfy Allowed CHC General Unsecured Claims in accordance with section 7.3(b) of the Plan, with the balance, if any, used for distribution to the Allowed CHC Equity Interests.

(b)    In order to provide the distribution of the CHC Equity Interest Consideration afforded by subsection (a) above, if it should become applicable, the holders of the Coram Notes/Preferred Stock Claims (Class Coram 3) agree and shall be deemed to have authorized the Debtors to transfer and distribute the CHC Equity Interest Consideration, to which the holders of Coram Notes/Preferred Stock Claims would have been legally entitled to the holders of Allowed CHC Equity Interests, for the benefit of Class CHC 4.

(c)    If Class CHC 4 fails to accept the Plan by the majorities set forth in section 1126(d) of the Bankruptcy Code, holders of Allowed CHC Equity Interests shall receive no distribution nor retain any legal, equitable, or contractual rights in respect of their CHC Equity Interests, which shall be deemed canceled and extinguished.

*Pursuant to the foregoing, holders of Allowed CHC Equity Interests will not receive a distribution in respect of their interests if Class CHC 4 does not vote to accept the Plan.*

Class CHC 4 is <u>impaired</u> under the provisions of the Plan.

The Debtors are soliciting acceptances from the holders of Equity Interests in Class CHC 4.

7.6 Treatment of Class Coram P
(Allowed Coram Priority Non-Tax Claims)

In full satisfaction, payment and discharge of its Priority Claim, and in accordance with section 1129(a)(9) of the Bankruptcy Code, each holder of an Allowed Coram Priority Non-Tax Claim shall receive payment in full, at the option of the Debtors, (i) in cash on the Effective Date, or (ii) such other treatment as will render such Allowed Coram Priority Non-Tax Claim unimpaired.

Class Coram P is <u>unimpaired</u> under the provisions of the Plan.

The Debtors are not soliciting acceptances from the holders of Claims in Class CHC P.

7.7 Treatment of Class Coram 1
(Allowed Coram Secured Claims)

In full satisfaction, payment and discharge of its Allowed Coram Secured Claim, each holder of an Allowed Coram Secured Claim, if any, shall receive, at the option of the Debtors, (i) payment in full in Cash on the later of the Effective Date or the date such Claim becomes an Allowed Claim, (ii) Reinstatement, or (iii) such other treatment as will render such Allowed Coram Secured Claim unimpaired.

Class Coram 1 is <u>unimpaired</u> under the provisions of the Plan.

The Debtors are not soliciting acceptances from the holders of Claims in Class Coram 1.

7.8 Treatment of Class Coram 2
(Allowed Coram General Unsecured Claims)

In full satisfaction, payment and discharge of its Allowed Coram General Unsecured Claim, each holder of an Allowed Coram General Unsecured Claim not otherwise paid prior to the Effective Date shall receive, at the option of Coram or Reorganized Coram, (i) payment in full in Cash on the later of the Effective Date or the date such Claim becomes an Allowed Claim, (ii) Reinstatement, or (iii) such other treatment to render such Allowed Coram General Unsecured Claim unimpaired.

Class Coram 2 is <u>unimpaired</u> under the provisions of the Plan.

The Debtors are not soliciting acceptances from the holders of Claims in Class Coram 2.

7.9     Treatment of Class Coram 3
        (Allowed Coram Notes/Preferred Stock Claims)

In full satisfaction, payment and discharge of its Allowed Coram Notes/Preferred Stock Claims, each holder of an Allowed Coram Notes/Preferred Stock Claim shall receive its Pro Rata share of the New Coram Stock and/or the New Secured Notes, in accordance with its Sub-Class, as set forth below.

Sub-Class Coram 3A:   In full satisfaction, payment and discharge of its Allowed Coram Notes Claim, each holder of an Allowed Coram Notes Claim shall receive its Pro Rata share of New Secured Notes in an amount equal to the full amount of the Allowed Coram Notes Claim.

Sub-Class Coram 3B:   In full satisfaction, payment and discharge of its Allowed Coram Preferred Stock Interests, each holder of an Allowed Coram Preferred Stock Interest shall receive its Pro Rata share of (i) all New Secured Notes remaining after the distribution to Sub-Class Coram 3A, and (ii) the New Coram Stock.

Class Coram 3 is _impaired_ under the provisions of the Plan

The Debtors are soliciting acceptances from the holders of Allowed Coram Notes/Preferred Stock Claims in Class Coram 3.

Class Coram 3 will be treated as a single Class for voting purposes, and the Debtors reserve the right to reallocate the treatment of the Sub-Classes within Class Coram 3.


7.10    Treatment of Class Coram 4
        (Allowed Coram Equity Interests)

The holder of the Allowed Coram Equity Interests shall receive no distribution nor retain any of its legal, equitable, or contractual rights in respect of its Coram Equity Interests, which shall be deemed contributed to, and vest in, Reorganized Coram.

Class Coram 4 is _impaired_ under the provisions of the Plan, which Class is deemed to have rejected the Plan.

The Debtors are not soliciting acceptances from the holders of Claims in Class Coram 4.

23

B-43

# ARTICLE VIII
## ACCEPTANCE OR REJECTION OF THE PLAN

8.1   Voting. Acceptance of the Plan by a Claimant shall be deemed to be a consent to all provisions of the Plan and to the treatment thereunder for such holder and for all other Claimants.

8.2   Classes Entitled to Vote. Only holders of Allowed Claims and Equity Interests as of the Record Date, in impaired Classes receiving distributions under the Plan, are entitled to vote on the Plan. Accordingly, each Claimant holding an Allowed Claim in Classes CHC 2, CHC 3, CHC 4, and Coram 3 and Coram 4 shall be entitled to vote to accept or to reject the Plan. All Claimants entitled to vote to accept or to reject the Plan shall vote by properly executing and timely returning a Ballot, in accordance with the order of the Bankruptcy Court approving the solicitation materials and the balloting procedures approved by the Bankruptcy Court.

8.3   Acceptance by Impaired Classes. Consistent with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, a class of Claims shall have accepted this Plan if this Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of holders of the Allowed Claims of such class that have timely and properly voted to accept or to reject this Plan. Consistent with section 1126(d) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, a class of Equity Interests shall have accepted this Plan if this Plan is accepted by at least two-thirds (2/3) in amount of the Allowed Equity Interests of such class that have timely and properly voted to accept or to reject this Plan.

8.4   Reservation of Right to Withdraw Plan. The Debtors reserve the right to modify or revoke and withdraw the Plan at any time before the Confirmation Date or, if the Debtors are for any reason unable to consummate the Plan after the Confirmation Date, at any time until the Effective Date. Each of the Debtors reserves the right to proceed to seek confirmation of the Plan with respect to it, notwithstanding that Confirmation is not sought nor granted with respect to the other Debtor.

8.5   Nonconsensual Confirmation. The Debtors request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding the deemed rejection of the Plan by Class Coram 4. In the event that any other impaired class(es) of Claims or Equity Interests shall fail to accept this Plan in accordance with section 1126(a) of the Bankruptcy Code, the Debtors shall request that the Bankruptcy Court confirm this Plan in accordance with the "cram down" provisions of section 1129(b) of the Bankruptcy Code with respect to such rejecting impaired Class(es).

8.6   Elimination of Classes. Any Class in which there are not any allowed Claims or Claims temporarily Allowed for voting purposes as of the date of the commencement of the Confirmation Hearing shall be deemed deleted from the Plan for purpose of considering the acceptance or rejection of the Plan under section 1129(a)(8) of the Bankruptcy Code.

# ARTICLE IX

## DISTRIBUTIONS UNDER THE PLAN

9.1     Distributions.  Except as otherwise provided in the Plan, all Distributions under the Plan shall be made by the Debtors or a Disbursing Agent, if any, to holders of Allowed Claims and Allowed CHC Equity Interests, or their designees, at their Most Recent Addresses. The Debtors shall make an initial distribution on the Effective Date or as soon thereafter as is reasonably practicable to all holders of Allowed Claims as of the Effective Date. Thereafter, Distributions on account of Allowed Claims shall be made on the first Subsequent Distribution Date that is at least ten (10) Business Days after a Claim that was not an Allowed Claim becomes an Allowed Claim.

9.2     Disbursing Agent.  Subject to approval by the Bankruptcy Court, an entity, if any, designated by the Debtors 10 days prior to the Confirmation Hearing, shall serve as Disbursing Agent and shall distribute to the holders of Allowed Claims and Allowed CHC Equity Interests property to be distributed under the Plan, in accordance with the provisions of the Plan, applicable Bankruptcy Rules and such other terms mutually agreed to by the Disbursing Agent and Reorganized Coram.

9.3     Distribution of Cash.  Distributions and transfers of Cash called for under this Plan shall be made on the Effective Date, except that with respect to Claims that are Disputed Claims on the Effective Date, distributions shall be made on Subsequent Distribution Dates until there are no longer any Disputed Claims as to which Cash payments are required under the Plan. All distributions of Cash under the Plan may be made either by check or by wire transfer, at the option of the Debtors, Reorganized Coram, or the Plan Administrator.

9.4     Distributions of New Coram Stock and New Coram Secured Notes.  Distributions and transfers of New Coram Stock and New Coram Secured Notes under this Plan shall be made on the Effective Date. Coram and Reorganized Coram reserve the right to delay any distribution of New Coram Stock or New Secured Notes to any holder of Allowed Coram Notes/Preferred Stock Claims until it is reasonably satisfied that such distribution will not result in a violation of any statute or regulation applicable to Reorganized Coram's business.

9.5     Setoffs.  The Debtors and Reorganized Coram may, but shall not be required to, set off against any Claim or Equity Interest and the payments or distributions to be made pursuant to the Plan in respect of such Claim or Equity Interest, any claims of any nature whatsoever the Debtors or the Reorganized Coram may have against the holder thereof, but neither the failure to do so nor the allowance of any Claim hereunder, for voting purposes or otherwise, shall constitute a waiver or release by the Debtors or the Reorganized Coram of any such claim.

9.6     Distribution of Unclaimed Property.  Any distribution of property (cash or otherwise) under the Plan which is unclaimed after two (2) years following the Effective Date shall be forfeited to,

and vest in Reorganized Coram. Any holder of an Allowed Claim and Allowed Equity Interest that does not assert a claim pursuant to the Plan for an undelivered or undeliverable distribution to be made by a Disbursing Agent with this two (2) year period will be forever barred from asserting any such claim against the Debtors, Reorganized Coram or their respective property.

    9.7    Compliance With Tax Requirements.

    9.7.1 In connection with the Plan, to the extent applicable, each Disbursing Agent will comply with all Tax Code reporting requirements imposed upon it by any governmental unit with respect to any and all distributions pursuant the Plan, and will be authorized to take any actions that may be necessary or appropriate to comply with such reporting requirements.

    9.7.2 Notwithstanding any other provision of the Plan, each entity receiving a distribution of cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any Tax Code obligations imposed upon it by any governmental unit on account of such distribution.

    9.7.3 To the extent (and only to the extent) required by applicable law, any applicable federal, state or local withholding taxes may be deducted by the Debtors, Reorganized Coram, or the Plan Administrator from any payments or other Distributions made in respect of Allowed Claims.

    9.8    De Minimis Distributions. No cash payment of less than $10.00 shall be made to any holder of an Allowed Claim or Allowed Equity Interest unless such holder so requests in writing to the Debtors. Absent a request, such funds shall be distributed as if they are Distributions of unclaimed property in accordance with the provisions of section 9.6 of the Plan.

    9.9    Fractional Interests. Fractional interests in New Coram Stock shall not be distributed. Notwithstanding any other provision in the Plan, only whole numbers of shares of New Coram Stock shall be issued to holders of Allowed Claims (who are otherwise entitled to receive New Coram Stock). When any distribution on account of an Allowed Claim would result in the issuance of a number of shares of New Coram Stock that is not a whole number, the actual distribution of such New Coram Stock shall be rounded to the next lower whole number. Any fractional interests in New Coram Stock that are allocated for distribution to holders of Allowed Claims shall be deemed contributed to the Reorganized Debtors.

    9.10    Objections to and Estimation of Claims; Prosecution of Disputed Claims. The Debtors, Reorganized Coram and the Plan Administrator reserve the right to object to the allowance of all Claims and Equity Interests, including any Claims listed in the Schedules or filed with the Bankruptcy Court with respect to which they dispute liability in whole or in part and the characterization of a Claim as secured or unsecured; subject to further extension by the Bankruptcy Court with or without notice, all objections to the allowance of Claims shall be filed with the Bankruptcy Court on or before the date

that is sixty (60) days after the Effective Date. All objections shall be litigated to Final Order; provided however, that the Debtors and Reorganized Coram and the Plan Administrator may compromise, settle, withdraw or resolve by other method approved by the Bankruptcy Court, any such objections to Claims provided, however, that only the Debtors and Reorganized Coram shall have the right to compromise, settle, withdraw or resolve objections to Administrative Claims, Priority Non-Tax Claims, Priority Tax Claims and Secured Claims. The Debtors, Reorganized Coram and the Plan Administrator may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any such contingent or unliquidated Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the amount of such Claim or a maximum limitation on the amount of such Claim, as determined by the Bankruptcy Court, to the extent permissible under the Bankruptcy Code. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors, Reorganized Coram or the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate payment or distribution on such Claim.

9.11    Payments and Distribution on Disputed Claims. Notwithstanding any provision in the Plan to the contrary, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until such Claim becomes an Allowed Claim, in whole or in part. On the first Subsequent Distribution Date that is at least ten (10) Business Days after a Disputed Claim (or portion thereof) becomes an Allowed Claim, the holder of such Allowed Claim shall receive all payments and/or distributions to which such holder is then entitled under the Plan.

9.11.1 If Disputed Claims exist in Class CHC 2, the Disbursing Agent or the Plan Administrator shall hold in reserve, for the benefit of each such holder of a Disputed Claim, Cash in an amount equal to the distributions which would have been made to the holder of such Disputed Claim, if it were an Allowed Claim on the Effective Date, in an amount equal to the lesser of (i) the amount of the Claim filed with the Bankruptcy Court or, if no Claim was filed, the amount listed by the Debtors in the Schedules as not disputed, contingent or unliquidated, or (ii) the amount, if any, estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code, provided that in connection with such estimation, the Bankruptcy Court enters a final order setting such estimate as the maximum amount of such Claim for purposes of this Plan. If a Disputed Claim in such a Class becomes an Allowed Claim, on the first Subsequent Distribution Date that is at least ten (10) Business Days after such allowance, the Disbursing Agent shall issue to the holder thereof the amount of Cash to which such holder is entitled under the provisions of this Plan had such Claim been an Allowed Claim as of the Effective Date. If a Disputed Claim in any such Class is disallowed, in whole or in part, pursuant to a final order, on the first Subsequent Distribution Date that is at least ten (10) Business Days after such disallowance, Reorganized Coram shall (a) first, reallocate Cash that had been reserved on account of

27

such disallowed Disputed Claim to the holders of then Allowed and Disputed Claims in such Class, and (b) second, distribute to each holder of an Allowed Claim in each such Class and allocate to the reserves established for remaining Disputed Claims in such Class, Pro Rata, the Cash that has been so reallocated to such Class in accordance with clause (a) of this section.

        9.11.2  In the event that a CHC Equity Reserve is created pursuant to the Plan, and subject to the determination of the Absolute Priority Litigation, if disputed Equity Interests exist in Class CHC 4, the Disbursing Agent or the Plan Administrator shall hold in reserve, for the benefit of each such holder of such disputed Equity Interests, Cash in an amount equal to the distributions which would have been made to the holder of such disputed Equity Interests, if it were an Allowed CHC Equity Interest on the Effective Date, in an amount equal to the amount of the CHC Equity Interest on the Record Date. If a disputed Equity Interest in Class CHC 4 becomes an Allowed CHC Equity Interest, on the first Subsequent Distribution Date that is at least ten (10) Business Days after such allowance, the Disbursing Agent shall issue to the holder thereof the amount of Cash to which such holder is entitled under the provisions of this Plan had such Equity Interest been an Allowed CHC Equity Interest as of the Effective Date. If a disputed Equity Interest in Class CHC 4 is disallowed, in whole or in part, pursuant to a final order, on the first Subsequent Distribution Date that is at least ten (10) Business Days after such disallowance, Reorganized Coram shall (a) first, reallocate Cash that had been reserved on account of such disallowed disputed Equity Interest to the holders of then Allowed and disputed CHC Equity Interests, and (b) second, distribute to each holder of an Allowed CHC Equity Interest and allocate to the reserves established for remaining disputed Equity Interests in Class CHC 4, Pro Rata, the Cash that has been so reallocated to Class CHC 4 in accordance with clause (a) of this section.

        9.12  <u>Disallowance of Reimbursement or Contribution Claims</u>.  Except for Claims of the type described in Section 10.4 hereof, effective as of the Effective Date, in accordance with section 502(e)(1) of the Bankruptcy Code, all Claims or Administrative Claims for reimbursement or contribution of an entity that is liable with a Debtor shall be disallowed against that Debtor to the extent such Claim or Administrative Claim, as the case may be, is contingent as of the Effective Date.

        9.13  <u>Allocations of Distributions to Allowed Claims</u>.  Any distributions received by a holder of an Allowed Claim shall be allocated first to the principal portion of such Claim (as determined for federal income tax purposes) to the extent thereof, and thereafter to the remaining portion of such Claim, if any.

## ARTICLE X
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

    10.1    <u>Assumption and Assignment of Executory Contracts and Unexpired Leases</u>. Except as otherwise provided in the Plan, on the Effective Date, in accordance with the provisions of sections 365 and 1123 of the Bankruptcy Code, any executory contracts or unexpired leases (including the Executive Employment Agreement, which on the Effective Date shall be assumed by Reorganized Coram in its totality subject to the Executive Compensation Waiver) that have not expired by their own terms on or prior to the Effective Date, that have not been assumed, assumed and assigned or rejected with the approval of the Bankruptcy Court, or that are not the subject of a motion to reject the same pending as of the Effective Date or set forth on the Rejection List shall be deemed assumed by the Debtors on the Effective Date and in the case of CHC, assigned to Reorganized Coram, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and/or assignments pursuant to sections 365(a) and 1123 of the Bankruptcy Code. An order of the Bankruptcy Court entered on or prior to the Confirmation Date will specify the procedures for providing notice to each party whose executory contract or lease is being assumed or assumed and assigned pursuant to the Plan of: (a) the contract or lease being assumed or assumed and assigned; (b) the Cure Claim, if any, that the Debtors believe it would be obligated to pay in connection with such assumption; and (c) the procedures for such party to object to the assumption or the assumption and assignment of the applicable contract or lease and the amount of the proposed Cure Claim.

    10.2    <u>Cure of Defaults for Assumed Executory Contracts and Unexpired Leases</u>. Any monetary amounts required as cure payments on each executory contract and unexpired lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by Reorganized Coram's payment of the cure amount in Cash on the Effective Date or upon such other terms and on such dates as the parties to such executory contracts or unexpired leases otherwise may agree. In the event of a dispute regarding (a) the amount of any cure payment, or (b) the ability of Reorganized Coram to provide "adequate assurance of future performance" (within the meaning of section 365(b)(1) of the Bankruptcy Code), to the extent necessary, shall be made following the entry of a Final Order resolving such dispute.

    10.3    <u>Rejection of Executory Contracts or Unexpired Leases</u>. No later than ten (10) days prior to the Confirmation Date, the Debtors shall file with the Bankruptcy Court the Rejection List, and the executory contracts and unexpired leases listed thereon shall be deemed rejected as of the Effective Date. If the rejection of an executory contract or unexpired lease by the Debtors results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or their properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors on or before the date that is thirty (30) days after the later of (a) the Confirmation Date and (b) the date of entry of an order by the Bankruptcy Court authorizing rejection of a particular executory contract or lease. Unless otherwise ordered by

Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim are timely filed will be treated as General Unsecured Claims subject to the provisions of the Plan. Nothing herein shall obligate any of the Debtors to file any list of assumed or rejected executory contracts or unexpired leases.

       10.4    <u>Indemnification Obligations</u>. Notwithstanding section 9.12 hereof, for purposes of the Plan, the obligations of the Debtors to indemnify their respective present and former directors or officers, and employees in such capacity or as plan administrators or trustees to any employee benefit plan, or any person serving at the request of any of the Debtors as a director, officer of any other entity pursuant to the Debtors' certificates of incorporation or by-laws or pursuant to applicable state law or specific agreement, or any combination of the foregoing, shall be deemed to be executory contracts, shall be assumed by the Debtors or Reorganized Coram, effective as of the Effective Date, in accordance with the provisions of sections 365 and 1123 of the Bankruptcy Code and shall survive confirmation of the Plan, remain unaffected thereby, shall not be discharged, and shall pass unaltered to Reorganized Coram irrespective of whether such indemnification is owed in connection with an event occurring before, on, or after the Petition Date.

       10.5    <u>Compensation and Benefit Programs</u>. All employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors, in effect as of the Confirmation Date and applicable generally to the respective active officers and/or employees of the Debtors, including, without limitation, all then-effective retirement plans, health care plans, disability plans, severance benefit plans, incentive plans, compensative plans, employment contracts and life, accidental death, and dismemberment insurance plans are deemed to be executory contracts under the Plan and, as of and on the Effective Date, shall be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, unless previously (i) terminated, modified or rejected in accordance with the Bankruptcy Code (and, in the case of CHC, assumed and assigned to Reorganized Coram), (ii) subject to a pending motion or application before the Bankruptcy Court to terminate, modify or reject, (iii) identified to be rejected on the Rejection List, or (iv) assumed and subject to the Executive Compensation Waiver.

       10.5.1  Certain Key Employee Retention Program Payments

Upon entry of the Confirmation Order, the Debtors shall be authorized to pay all outstanding obligations incurred pursuant to those certain key employee retention agreements previously authorized and approved by the KERP Order (i) in accordance with the terms of the KERP Order and (ii) so long as such key employee retention agreements have not expired under their own terms or by order of the Court.

## ARTICLE XI
## IMPLEMENTATION AND MEANS OF CONSUMMATING THE PLAN

11.1    Cancellation of Existing Securities and Agreements.  On the Effective Date, except as otherwise provided in the Plan, all securities, instruments, instruments of indebtedness, guarantees and agreements governing any claims and interests impaired hereby, including the Notes, the Preferred Stock, and CHC Equity Interests, shall be deemed canceled and terminated and the obligations of the Debtors and each of their subsidiaries, affiliates, and agents relating to, arising under, in respect of, or in connection with such securities, instruments or agreements shall be discharged.  The holder of any such documents canceled pursuant to this provision shall have no rights against the Debtors or Reorganized Coram arising from or relating to such documents, except the right to receive distributions, if any, provided for in the Plan.

11.2    Surrender of Instruments.  Each holder of an instrument evidencing a Claim or Equity Interest shall surrender such instrument to the Debtors as a condition to the receipt of any distribution under the Plan to such holder on account thereof.  Unless otherwise agreed by the Debtors, no distribution under the Plan shall be made to or on behalf of any holder of such Claim or Equity Interest unless and until such instrument is received or the unavailability of such instrument is reasonably established to the satisfaction of the Debtors.  In accordance with section 1143 of the Bankruptcy Code, any holder of a Claim or Equity Interest that (i) fails to surrender or cause to be surrendered such instrument or (ii) fails to execute and to deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Debtors and furnish a bond in form, substance and amount reasonably satisfactory to the Debtors, in each case within two (2) years after the Effective Date, shall be deemed to have forfeited forever all rights, claims, and interests in respect of said distribution and shall not thereafter have any right to participate in any distribution under the Plan.

11.3    Dissolution.  On the Effective Date or as soon thereafter as is practicable, CHC shall dissolve as a corporation, pursuant to the laws of the State of Delaware.

11.4    Cancellation of Capital Stock and Equity Interests.  As of the Effective Date, by virtue of the Plan and in all events without any action on the part of the holders thereof, all CHC Equity Interests, whether issued and outstanding or held in treasury, shall be deemed canceled and extinguished.

11.5    Charter.  On the Effective Date, the certificate of incorporation and the by-laws of Reorganized Coram will be substantially in the form of the Amended and Restated Certificate of Incorporation of Reorganized Coram and Amended By-laws of Reorganized Coram included in the Plan Supplement.  On the Effective Date, or as soon thereafter as practicable, Reorganized Coram shall file its Amended and Restated Certificate of Incorporation of Reorganized Coram.  Among other things, the Amended and Restated Certificate of Incorporation of Reorganized Coram shall: (a) prohibit the issuance of non-voting equity securities to the extent required by section 1123(a) of the Bankruptcy

31

Code; (b) provide for the authorization of the New Coram Stock in amounts not less that the amounts necessary to permit distributions thereof required or contemplated by the Plan; and (c) shall comply with section 1123(a)(6) of the Bankruptcy Code. After the Effective Date, Reorganized Coram may amend and restate its certificates of incorporation or by-laws as permitted by the Delaware General Corporation Law, subject to the terms and conditions of such documents.

11.6   Management of Reorganized Coram. On the Effective Date, the operation of Reorganized Coram shall become the general responsibility of the Reorganized Coram Board of Directors, which shall, thereafter, continue to have the responsibility for the management, control, and operation of Reorganized Coram. The Reorganized Coram Board of Directors shall be comprised of the persons identified in the Plan Supplement. The officers of Reorganized Coram shall consist of those individuals set forth in the Disclosure Statement and in the Plan Supplement. All existing directors and officers who become officers or directors of Reorganized Coram shall be deemed re-elected, and all other directors and officers shall be deemed newly elected pursuant to the Confirmation Order. Those officers and directors not continuing in office, if any, shall be deemed removed therefrom (without cause) pursuant to the Confirmation Order.

11.7   Issuance of New Coram Stock. On the Effective Date, in accordance with the Plan, the Amended and Restated Certificate of Incorporation of Reorganized Coram, and the Amended By-laws of Reorganized Coram, Reorganized Coram shall issue the New Coram Stock in amounts necessary to permit distributions thereof required or contemplated by the Plan.

11.8   Issuance of New Secured Notes. On the Effective Date, in accordance with the Plan, Reorganized Coram shall issue the New Secured Notes and cause the distribution thereof required by the Plan, subject to the provisions of section 9.4 of the Plan.

11.9   Corporate Action. On the Effective Date, authorization of the New Coram Stock, the election of directors and officers, the adoption of the Amended and Restated Certificate of Incorporation of Reorganized Coram, the Amended By-laws of Reorganized Coram, and any and all other matters provided for under the Plan involving the corporate structure of Reorganized Coram, or involving corporate action by the directors and/or stockholders of Reorganized Coram, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to section 303 of the Delaware General Corporation Law, section 422A of the Tax Code, the rules and regulations issued thereunder, section 16 of the 34 Act, the rules and regulations issued thereunder and any other applicable law, without any requirement of further action by the stockholders and/or directors of the Debtors or Reorganized Coram. On the Effective Date, all agreements entered into pursuant to the Plan shall be valid, binding and in full force and effect.

11.10   Exit Financing Facility. On the Effective Date, Reorganized Coram is authorized to execute and deliver those documents necessary or appropriate to obtain the Exit Financing Facility. All