10.     On March 7, 2002, Hon. Arlin M. Adams was appointed as chapter 11 trustee (the "Chapter 11 Trustee") to oversee the Debtors' operations and facilitate the reorganization process.

11.     On December 19, 2002, the Equity Committee filed a Joint Plan of Reorganization for the Debtors (the "Equity Committee Plan") and the related Disclosure Statement with the Bankruptcy Court.

12.     On May 2, 2003, the Chapter 11 Trustee filed a Joint Plan of Reorganization for the Debtors (the "Chapter 11 Trustee's Plan") and the related Disclosure Statement with the Bankruptcy Court.

13.     On June 26, 2003, the Bankruptcy Court approved the Disclosure Statements filed by the Equity Committee and the Chapter 11 Trustee and scheduled a confirmation hearing (the "Confirmation Hearing") on the Equity Committee Plan and the Chapter 11 Trustee's Plan to begin on September 5, 2003.  The confirmation hearing has been continued to November 3, 2003.

## RETENTION OF UBS

14.     The Committee selected UBS as its financial advisor in connection with the Bankruptcy Cases, effective as of November 21, 2000.

15.     On November 29, 2000 the Committee filed an application (the "Retention Application") seeking authority, pursuant to section 1103 of the Bankruptcy Code, to retain and employ UBS as its financial advisor for the purpose of providing valuation services to the Committee.  The Application was supported by, among other things, the Affidavit of Robert D. Dishner, an Associate Director of UBS, sworn to on the 27th day of November, 2000 (the "Dishner Affidavit").

16.     By order dated December 1, 2000 (the "Retention Order"), the Bankruptcy Court approved the retention and employment of UBS as the Committee's financial advisor pursuant to the terms of that certain letter agreement between the Committee and UBS, dated as of November 21, 2000 (the "Letter Agreement").  A copy of the Retention Order, which includes copies of the Dishner Affidavit and the Letter Agreement as exhibits, is attached as Exhibit "A."

17.     As the Committee's financial advisor, UBS agreed to perform the following services as necessary and appropriate: (i) performing in connection with the

B-118

Bankruptcy Cases of the Debtors a valuation of the Debtors; (ii) communicating the results of the same in writing and/or orally to the Committee; (iii) providing expert testimony, if necessary, in any proceedings before the Bankruptcy Court.

18.    Pursuant to the Retention Order, and in accordance with the Letter Agreement, a valuation fee of $700,000 (the "Valuation Fee") is payable to UBS upon the effective date of the Debtors' plan of reorganization.  In addition, a fee of $50,000 per month (each a "Monthly Fee") is payable for each month beginning after March 20, 2001 in which UBS is required to perform services under the Retention Order.  The Letter Agreement also provides for the reimbursement of the documented out-of-pocket expenses reasonably incurred by UBS in performing services pursuant to the Retention Order.

19.    Pursuant to the letter agreement between the Debtors and UBS, dated November 21, 2000 (the "Coram Letter"), the Debtors have agreed that certain provisions of the Letter Agreement, including those provisions pertaining to the payment of the fees and expenses of UBS, are binding upon the Debtors.  The Coram Letter is attached as an exhibit to the Retention Order.

### SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

20.    By this application UBS requests final allowance of $1,150,000 as compensation for professional services rendered and $47,085.85 as reimbursement for actual and necessary expenses incurred by UBS.  The fees and expenses sought by UBS include: (i) $700,000 Valuation Fee during the Compensation Period; (ii) $450,000 for Monthly Fees during the Compensation Period; and (iii) payment of $47,085.85 for expenses incurred pursuant to the Letter Agreement.  Pursuant to this Application, UBS requests payment of $497,085.85 of fees and expenses upon the approval of this Application and $700,000 upon the effective date of a plan of reorganization for the Debtors.

4

The preceding information is outlined in the table below:

| | |
|---|---:|
| Valuation Fee | $700,000.00 |
| Monthly Fees (November 21, 2000 – March 20, 2001) | None |
| Monthly Fees (March 21, 2001 – December 20, 2001) | $450,000.00 |
| Total Fees | $1,150,000.00 |
| Expenses | $47,085.85[2] |
| | |
| **Total Amount Due Upon Approval of Application** | **$497,085.85** |
| **Total Amount Due Upon Effective Date of Plan** | **$700,000.00** |
| **Total Amount Due and Requested** | **$1,197,085.85** |

21.    Pursuant to the Letter Agreement, the Valuation Fee is payable upon the effective date of the Debtors' plan of reorganization. The Valuation Fee will thus become payable upon the effective date of either the confirmed Equity Committee Plan or the confirmed Chapter 11 Trustee's Plan.

22.    Pursuant to the Letter Agreement, Monthly Fees and expenses are reimbursable and due as incurred.

23.    During the Compensation Period UBS received no payment and no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered in this Application.

24.    The amount of fees and expenses sought in the Application and the fee structure of UBS is consistent with both bankruptcy and nonbankruptcy market practices, and is consistent with the terms of the Retention Order and the Letter Agreement. UBS generally does not maintain detailed time records of the work performed by its professionals for its clients. In these Bankruptcy Cases, however, as set forth in the Dishner Affidavit, the primary professionals rendering services on behalf of the Committee have kept time records in one-hour increments. Attached hereto as Exhibit B are the time records kept by the primary UBS professionals who provided professional services for the Committee during the Compensation Period. In addition to the professionals whose time is recorded on Exhibit B, other professionals whose time is not

_____

[2] UBS anticipates that certain expenses (including certain professional fees related to the preparation of this Application) incurred during the Compensation Period have not yet been processed by UBS' accounting system. When such expenses are processed by UBS' accounting system, UBS will seek reimbursement of such expenses pursuant to the terms of the Letter Agreement. Further, to the extent that UBS incurs expenses which are payable pursuant to the terms of the Letter Agreement after the Compensation Period, UBS reserves the right to seek reimbursement of those expenses.

noted on Exhibit B may have worked on an ad hoc and as needed basis on behalf of the Committee.

      25.    Attached hereto as Exhibit C is a schedule setting forth the actual and necessary expenses that UBS incurred during the Compensation Period in connection with the provision of professional services, and for which UBS seeks reimbursement. Included in Exhibit C are expenses UBS incurred on behalf of the Committee pursuant to the Letter Agreement, including the legal fees and disbursements of Covington & Burling, which is legal counsel to UBS.

      26.    To the best of the undersigned's knowledge, except as set forth herein, this Application complies with section 328 of the Bankruptcy Code, the applicable Bankruptcy Rules, the Guidelines adopted by the Executive Order of the United States Trustee Applications for Compensation and Reimbursement of Expenses (the "Trustee Guidelines") and this Court's orders.

## SUMMARY OF SERVICES

      27.    During the Compensation Period UBS was required to render a substantial amount of professional services, in some instances under severe time constraints.

      28.    UBS was able to provide the Committee with a valuation analysis in respect of the Debtors' First Plan on a very demanding schedule; UBS was retained less than one month before the confirmation hearing on the Debtor's First Plan. In preparation of the valuation analysis, UBS was required to conduct extensive due diligence on the Debtors, including reviews of the Debtors' operations, interviews with management, and a review of the Debtors' business plan. With the information that it obtained through the due diligence process, UBS was able to calculate the enterprise valuation of the Debtors according to three generally accepted valuation methods: comparable public company market analysis, comparable company transaction analysis, and discounted cash flow analysis.

      29.    UBS provided expert testimony on behalf of the Committee in support of the Debtors' First Plan at the confirmation hearing held before this Court on December 18, 2000. UBS also provided advice that assisted counsel for the Committee in its preparation for the cross examination of expert witnesses at the confirmation hearing on the Debtors' First Plan.

30.    Following the Bankruptcy Court's denial of confirmation of the Debtor's First Plan and the appointment of Goldin, UBS employees were required to respond to inquiries from Goldin in relation to the preparation of the Goldin report regarding the valuation analysis prepared by UBS in respect of the Debtors' First Plan.

31.    UBS then provided a second valuation analysis to the Committee in respect of the Debtors' Second Plan. In performing the second valuation analysis, UBS was required to supplement its due diligence of the Debtors and to substantially revise its evaluation of information obtained from the Debtors regarding their business.

32.    UBS provided expert testimony on behalf of the Committee in support of the Debtors' Second Plan at the confirmation hearing held before this Court on November 27, 2001.    UBS again provided advice that assisted counsel for the Committee in its preparation for the cross examination of expert witnesses at the confirmation hearing on the Debtor's Second Plan.

33.    The foregoing professional services performed by UBS were necessary and appropriate to the administration of the Debtors' chapter 11 cases. The professional services performed by UBS were in the best interest of the Debtors, their creditors and all parties in interest and were crucial to the Committee's ability to fulfill its fiduciary responsibilities. Compensation for the foregoing services as requested is consistent with the terms of the Letter Agreement and Retention Order and is commensurate with the complexity, importance and nature of the problems, issues, and tasks involved.

34.    The financial services set forth above were performed primarily by: William McGahan, Managing Director in UBS' Healthcare Group; Soren Reynertson, Executive Director in UBS' Restructuring Group; Robert Dishner, Associate Director in UBS' Restructuring Group; Abraham Han, Associate Director in UBS' Restructuring Group; Phillip Pucciarelli, Associate Director in UBS' Healthcare Group; Michael Sullivan, Associate Director in UBS' Restructuring Group; James Brodsky, Financial Analyst in UBS' Healthcare Group; and Michael Farah, Financial Analyst in UBS' Healthcare Group and other professionals of UBS, on an "as needed" basis. The resumes of each of the primary UBS professionals are provided in Exhibit D.

## ACTUAL AND NECESSARY DISBURSEMENTS OF UBS

35.    Attached hereto as Exhibit C is a schedule of the actual and necessary expenses incurred by UBS in connection with the services rendered to the Committee during the Compensation Period.  As set forth in Exhibit C, UBS requests allowance of actual and necessary expenses incurred by UBS pursuant to the Letter Agreement in the amount of $47,085.85.

36.    The research and library costs set forth on Exhibit C were incurred in connection with the services described above.  UBS maintains its research and library section as a cost center and does not realize a profit from the expenses detailed on Exhibit C.

37.    In connection with the travel and entertainment expenses listed on Exhibit C, the internal policy of UBS limits the cost of working dinners that may be charged to a client to no more than $30 per person.  The cost of working lunches and breakfasts is limited to no more than $15 per person.

38.    Included in Exhibit C are invoices from Covington & Burling, which provided legal services to UBS in connection with its engagement by the Committee and with respect to whose fees and expenses UBS seeks reimbursement under the terms of the Letter Agreement.

39.    It should be noted that UBS has absorbed certain expenses customarily charged by professionals in bankruptcy cases.  For example, UBS does not allocate office telephone charges by client, and thus those costs are absorbed by UBS as overhead and not charged to the Debtors' estates.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

40.    The Letter Agreement, whose terms and conditions were approved by the Retention Order, provides that the terms and conditions of the Letter Agreement, including the fee arrangements contained therein, are subject to approval pursuant to section 328(a) of the Bankruptcy Code.

41.    Section 328(a) of the Bankruptcy Code provides that "the trustee ... with the court's approval, may employ or authorize employment of a professional under section 327 ... on any reasonable terms and conditions of employment."  11 U.S.C. §328(a).  Section 328(a) further provides that "notwithstanding such terms and

8

conditions, the court may allow compensation different from compensation provided under such terms and conditions … if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of fixing of such terms and conditions." 11 U.S.C. §328(a).

42.    UBS respectfully submits that the Monthly Fees and Valuation Fee sought herein are reasonably based upon customary compensation charged by UBS in comparable non-bankruptcy cases, and that no developments not capable of being anticipated have occurred which could render UBS' Monthly Fees or Valuation Fee improvident.

43.    In the instant case, UBS respectfully submits that the professional services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were, at the time rendered, believed to be and were necessary and beneficial to the Debtors' rehabilitation and reorganization effort and were necessary in order to enable the Committee to fulfill its duties in the Bankruptcy Cases. Such services and expenditures were similarly necessary to and in the best interest of the Debtors' estates and creditors. In light of the complexity and importance of the tasks performed by UBS on behalf of the Committee, and in light of the time constraints under which such services were performed, UBS respectfully submits that the payment of the Monthly Fees and the Valuation Fee, as well as the reimbursement of expenses sought herein, is eminently fair and reasonable.

## CONCLUSION

44.    WHEREFORE, UBS respectfully requests that the Court enter an order: (i) allowing the compensation for professional services rendered by UBS during the Compensation Period in the amount of $1,150,000.00, and the reimbursement of actual and necessary expenses incurred by UBS pursuant to the Retention Order and the Letter Agreement in the amount of $47,085.85; (ii) directing the Debtors to pay immediately to UBS the outstanding amounts due for Monthly Fees and expense reimbursements; (iii) directing the Debtors to pay to UBS the Valuation Fee upon the effective date of the Debtors' plan of reorganization; (iv) providing that the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to the right of UBS to seek payment of future fees and reimbursement of expenses pursuant to the terms of the Letter Agreement but which are not yet reflected in UBS' accounting system; and (v) granting such other and further relief as is just.

Dated:        New York, New York          UBS SECURITIES LLC
              October 31, 2003


                                          By:  _____
                                               J. Soren Reynertson
                                               Executive Director


10

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

```
------------------------------------------------x
In re                                  :        Chapter 11 Case Nos.
                                       :
CORAM HEALTHCARE CORP.                 :        00-3299 (MFW) through
And CORAM, INC.,                       :        00-3300 (MFW)
                                       :        (Jointly Administered)
        Debtors.                       :
                                       :
------------------------------------------------x
```

### AFFIDAVIT OF SOREN REYNERTSON

STATE OF NEW YORK      )
                       )     ss:
COUNTY OF NEW YORK  )

      J. Soren Reynertson, after being duly sworn according to law, deposes and says:

      (a)      I am an Executive Director of the applicant firm, UBS Securities LLC.

      (b)      I have personally performed many of the financial advisory and investment banking services rendered by UBS Securities LLC as financial advisors and investment bankers to the Committee and am thoroughly familiar with the other work performed on behalf of the Committee by UBS Securities LLC.

      (c)      I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed Del. Bankr. L.R. 2016-2, and submit that the Application substantially complies with such rule except as set forth in the foregoing Application.

      (d)      The compensation charged by UBS Securities LLC for the services rendered in these chapter 11 cases is similar to the compensation charged by UBS Securities LLC for similar services rendered in comparable nonbankruptcy related

matters. Such compensation is reasonably based upon the customary compensation sought by comparably skilled practitioners in comparable nonbankruptcy cases in a competitive market.

_____
J. Soren Reynertson

I HEREBY CERTIFY, that on this _31_ day of October, 2003, before me the undersigned, a Notary Public of the State of New York, personally appeared Soren Reynertson who acknowledged himself to be an Executive Director of UBS Securities LLC, a Delaware limited liability company, known to be the person whose name is subscribed to the instrument, and acknowledged that he executed the same for the purposes herein contained as a duly authorized Executive Director of UBS Securities LLC.

AS WITNESS my hand and Notarial Seal.

PATRICIA L. NEWTON
Notary Public, State of New York
No. 01NE6071384
Qualified in Queens County
Commission Expires March 18, 2006

My Commission Expires:

_____
Notary Public

2

B-127

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **CORAM HEALTHCARE CORP.** | : | **Case Nos. 00-3299 (MFW)** |
| **and CORAM, INC.,** | : | **Through 00-3300 (MFW)** |
| | : | |
| | : | **(Jointly Administered)** |
| | : | |
| Debtors. | : | Objection Deadline: 11/24/2003 at 4:00 p.m. |

NOTICE OF MONTHLY FEE APPLICATION
OF UBS SECURITIES LLC

PLEASE TAKE NOTICE that on November 3, 2003, Richards, Layton & Finger, P.A.

filed and served the attached **First and Final Application of UBS Securities LLC, as Financial**

**Advisor to the Official Unsecured Creditors' Committee, for Final Allowance of**

**Compensation for Professional Services Rendered and Reimbursement of Actual and**

**Necessary Expenses Incurred for the Period From November 21, 2000 through October 27,**

**2003** (the "Application").

PLEASE TAKE FURTHER NOTICE that any response or objection to the

Application shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and

the Local Rules and orders of the Bankruptcy Court, and shall be filed with the Clerk of the

United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Fifth

Floor, Wilmington, Delaware 19801, and be served upon and received by: (i) the Debtors:

Coram Healthcare Corporation, 1125 Seventeenth Street, Suite 2100, Denver, CO 80202, Attn:

Allen Marabito; (ii) the Debtors' Counsel: Kasowitz, Benson, Torres & Friedman LLP, 1301

Avenue of the Americas, New York, NY 10019-6022, Attn: David M. Friedman, Esq., and

Pachulski, Stang, Ziehl, Young & Jones, P.C., 919 N. Market Street, 16th Floor, Wilmington,

DE 19899, Attn: Laura Davis Jones, Esq.; (iii) Counsel to the Official Committee of Unsecured

Creditors: Richards, Layton & Finger, P.A.,One Rodney Square, P.O. Box 551, Wilmington, DE

19899, Attn: Mark D. Collins, Esq., and Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street,

New York, NY 10019-6150, Attn: Theodore Gewertz, Esq; (iv) counsel for the senior

noteholders: Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Alan

B. Miller, Esq.; (v) counsel for the DIP Lenders: Schulte Roth & Zabel, LLP, 900 Third

Avenue, New York, NY 10022, Attn: Carol Morrison, Esq.; (vi) counsel to the Official

Committee of Equity Security Holders: Saul, Ewing LLP, 222 Delaware Avenue, Suite 1200,

P.O. Box 1266, Wilmington, DE 19899, Attn: Mark Minuti, Esq. and Altheimer & Gray, 10

South Wacker Drive, Suite 4000, Chicago, IL 60606, Attn: Theodore J. Low, Esq.; and (vii) the

Office of the United States Trustee, 844 King Street, U.S. Courthouse, Room 2313, Lockbox 35,

Wilmington, Delaware 19801-3519, no later than **November 24, 2003 at 4:00 p.m.** (the

"Objection Deadline").

        PLEASE TAKE FURTHER NOTICE that if no objections to the Application are

received prior to the objection deadline set forth above, the undersigned counsel shall file a

certificate of no objection with the Court. A copy of the certificate of no objection shall be

served upon the Debtors. At that time, the Debtors are authorized to pay this professional in

accordance with the "Amended Administrative Order, Pursuant to Sections 105(a) and 331 of the

Bankruptcy Code, Establishing Procedures for Interim Compensation and Reimbursement of

Expenses of Professionals" (the "Administrative Order"). If an objection is properly filed and

served and such objection is not otherwise resolved, or the Court determines that a hearing

should be held in respect of the Application, a hearing will be scheduled at a time convenient to

the Court. Only those objections made in writing and timely filed, served and received in

accordance with the procedures described herein will be considered by the Court.

Dated: November 3, 2003
      Wilmington, Delaware

                                     _____

                                     Mark D. Collins (No. 2981)
                                     Etta R. Wolfe (No. 4164)
                                     RICHARDS, LAYTON & FINGER, P.A.
                                     One Rodney Square
                                     P.O. Box 551
                                     Wilmington, Delaware 19899
                                     (302) 651-7700

                                     Co-Attorneys for Official Committee of
                                     Unsecured Creditors

**EXHIBIT A**

Hearing Date: December 1, 2000 at 9:00 a.m.
Objection Deadline: At the Hearing

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
------------------------------------------------------x
In re                                :    Chapter 11 Case Nos.
                                     :
CORAM HEALTHCARE CORP.               :    00-3299 (MFW) through
and CORAM, INC., et al.,             :    00-3300 (MFW)
                                     :    (jointly administered)
        Debtors.                     :
                                     :
------------------------------------------------------x
```

## NOTICE OF APPLICATION AND HEARING

PLEASE TAKE NOTICE that the Official Unsecured Creditors' Committee in the

above-captioned chapter 11 cases (the "Committee") has today filed the attached **Application of**

**the Official Unsecured Creditors' Committee For an Order Authorizing the Retention and**

**Employment of UBS Warburg LLC To Serve as Its Financial Advisor** (the "Application")

with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 5th

Floor, Wilmington, Delaware 19801 (the "Court").

PLEASE TAKE FURTHER NOTICE that a hearing (the "Hearing") on the

Application has been scheduled for December 1, 2000 at 9:00 a.m. before the Honorable Mary F.

Walrath, United States Bankruptcy Judge for the District of Delaware, 824 Market Street, 6th

Floor, Wilmington, Delaware 19801.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the relief

requested in the Application shall be presented at the Hearing.

RLF1-2236469-1

B-132

Dated: November 29, 2000
     Wilmington, Delaware

                               Mark D. Collins (I.D. No. 2981)
                               John H. Knight (I.D. No. 3848)
                               RICHARDS, LAYTON & FINGER, P.A.
                               One Rodney Square
                               P.O. Box 551
                               Wilmington, DE  19899
                               (302) 658-6541

                                  -and-

                               WACHTELL, LIPTON, ROSEN & KATZ
                               Theodore Gewertz
                               Chaim J. Fortgang
                               51 West 52nd Street
                               New York, New York  10019
                               (212) 403-1000

                               Attorneys for the Official Committee of Unsecured
                               Creditors

- 2 -

Hearing Date: December 1, 2000 at 9:00 a.m.
Objection Deadline: At the Hearing

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
----------------------------------------------x
In re                              :        Chapter 11 Case Nos.
                                   :
CORAM HEALTHCARE CORP.             :        00-3299 (MFW) through
and CORAM, INC., et al.,           :        00-3300 (MFW)
                                   :        (jointly administered)
        Debtors.                   :
                                   :
----------------------------------------------x
```

**APPLICATION OF THE OFFICIAL UNSECURED CREDITORS' COMMITTEE FOR
AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
UBS WARBURG LLC TO SERVE AS ITS FINANCIAL ADVISOR**

The Official Unsecured Creditors' Committee in the above-captioned chapter 11 cases

(the "Committee"), through its counsel, hereby moves this Court for entry of an order authorizing

the retention of UBS Warburg LLC ("UBSW") as its financial advisor (the "Application"), and

respectfully represents as follows:

**Jurisdiction**

1.    This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157

and 1334. The subject matter of this Application is a core proceeding pursuant to 28 U.S.C.

§ 157(b). No previous request for the relief sought herein has been made to this Court or any

other court.

RLF1-2234581-3

## Background

2.    On August 8, 2000 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (the "Debtors") commenced these cases (the "Bankruptcy Cases") by filing voluntary petitions for relief under chapter 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.    The Debtors' Bankruptcy Cases have been consolidated for procedural purposes only and are being jointly administered.

4.    On August 22, 2000 (the "Committee Appointment Date"), the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee pursuant to section 1102 of the Bankruptcy Code. The Committee consists of three (3) voting members, Foothill Capital Corporation ("Foothill"), Goldman Sachs Credit Partners L.P. ("Goldman") and Aetna U.S. Healthcare, Inc. ("Aetna").

## Retention of UBS Warburg LLC

5.    Subject to approval of this Court, the Committee has selected UBSW as its financial advisor in connection with the Bankruptcy Cases, effective as of November 21, 2000.

6.    The Committee seeks to retain UBSW as its financial advisor for the purpose of providing valuation services to the Committee in accordance with the terms of the engagement agreement between UBSW and the Committee, dated November 21, 2000, a copy of which is attached hereto as Exhibit "A" (the "Letter Agreement").

7.    As the Committee's financial advisor, UBSW has agreed to perform the following services as necessary and appropriate: (i) performing in connection with the Bankruptcy Cases of the Debtors a valuation of the Debtors; (ii) communicating the results of the same in writing and/or orally to the Committee; and (iii) providing expert testimony, if necessary, in any proceedings before the Bankruptcy Court regarding the valuation.

8.    The Committee has determined that the rapidly approaching confirmation hearing on the Debtors' plan of reorganization requires it to employ experienced advisors to provide these financial advisory services.

9.    The Committee has selected UBSW as its financial advisor because of UBSW's extensive and diverse experience, knowledge and reputation in the restructuring, mergers and acquisitions, corporate finance and healthcare fields, understanding of the issues involved in these cases, and because the Committee believes that UBSW possesses the requisite resources and is well qualified to provide the financial advisory services that will be required. UBSW and its predecessor firms have served as financial advisor in some of the largest bankruptcy cases in the United States.

10.    UBSW has stated its desire and willingness to act in these Bankruptcy Cases and render the necessary professional services as financial advisors to the Committee.

11.    In accordance with the Letter Agreement, the valuation fee of $700,000 is to be paid to UBSW at the time of the effective date the Debtors' plan of reorganization (the "Valuation Fee"). In addition, in the event that UBSW is required to perform services hereunder beyond the date which is four (4) months from November 21, 2000, the Committee shall cause the Debtors to

pay UBSW a fee (each, a "Monthly Fee") of fifty thousand dollars ($50,000) per month for each

month subsequent to such fourth month. Each such Monthly Fee shall be payable in advance on

the 21st day of each month for which a Monthly Fee is payable, or, if such day is not a business

day, on the business day immediately preceding such date.

12.    As set forth in Exhibit A to the Letter Agreement, the Debtors have agreed to

indemnify UBSW and certain related parties from and against any losses, claims, damages,

expenses and liabilities related to or arising out of or in connection with its activities as financial

advisor to the Committee, other than losses, damages, claims, expenses and liabilities that are the

result of UBSW 's or such related party's gross negligence or willful misconduct.

13.    The Committee has supplied UBSW with a list of parties in interest for purposes of

conducting its conflicts review. Based on this list, UBSW has informed the Committee that,

except as otherwise stated in the Affidavit of Robert D. Dishner (the "Dishner Affidavit"),

annexed hereto as Exhibit "B," UBSW has no connection with the Debtors or the Committee in

the matters upon which UBSW is to be employed in the Bankruptcy Cases. Upon information

and belief, UBSW does not have any connection with or any interest adverse to the Debtors, the

Debtors' top twenty unsecured creditors, the board of directors of the Debtors and significant

shareholders of the Debtors (the "Potential Parties in Interest"), except as set forth herein or in

the Dishner Affidavit.

14.    The Committee has requested the retention of UBSW as of November 21, 2000 as

it was necessary for UBSW to commence work immediately due to the upcoming confirmation

hearing on the Debtors' plan of reorganization.

RLF1-2234581-3                          -4-

B-137

<u>Notice</u>

16.    No trustee or examiner has been appointed in the Bankruptcy Cases.  Notice of this

Application has been given to (i) the United States Trustee for the District of Delaware, (ii) the

Debtors, and (iii) all parties who have filed a notice of appearance in the Bankruptcy Cases

pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the

Committee submits that no other or further notice need be given.

<u>Waiver of Memorandum of Law</u>

17.    Pursuant to Local District Court Rule 7.1.2.(a), incorporated by reference into the

Local Rules of the Bankruptcy Court by General Order 9D, and because there are no novel issues

of law presented in this Application, the Committee waives its right to file a brief in support of

this Application.

B-138

WHEREFORE, the Committee respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: November 29, 2000
       Wilmington, Delaware

*(signature)*

Mark D. Collins (I.D. No. 2981)
John H. Knight (I.D. No. 3848)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
(302) 658-6541

    -and-

WACHTELL,  LIPTON,  ROSEN  &  KATZ

Theodore Gewertz
Chaim J. Fortgang
51 West 52nd Street
New York, New York  10019
(212) 403-1000

Attorneys for the Official Committee of
 Unsecured Creditors

Rcvd 12/06 02:42PM (06:56) on RightFax line 01 for CRTG          WORKSRV1 printed TC03A2E521B308A on 12/06/2000 02:52PM * Pg 2/24

FROM RICHARDS, LAYTON &    FINGER #10          (WED)12. 6'00 14:44/ST. 14:38/NO. 4864083265 P  2

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

——————————————————x
In re                                :       Chapter 11 Case Nos.
                                     :
CORAM HEALTHCARE CORP.               :       00-3299 (MFW) through
and CORAM, INC., et al.,             :       00-3300 (MFW)
                                     :       (Jointly administered)
         Debtors.                    :
                                     :
——————————————————x

### ORDER AUTHORIZING THE RETENTION OF UBS WARBURG LLC TO SERVE AS FINANCIAL ADVISOR TO THE OFFICIAL UNSECURED CREDITORS' COMMITTEE

Upon consideration of the application (the "Application") by the Official

Committee of Unsecured Creditors (the "Committee"), seeking an order pursuant to section 1103

of title 11 of the United States Code (the "Bankruptcy Code") authorizing and approving the

employment and retention of UBS Warburg LLC ("UBSW") as its financial advisor as is more

fully set forth in the Application; and upon the affidavit of Robert D. Dishner in support of the

Application (the "Dishner Affidavit"); and the Court being satisfied, based upon the

representations made in the Application and the Dishner Affidavit, that UBSW represents or holds

no interest adverse to the Debtors or the Committee with respect to the matters upon which it is to

be engaged and is disinterested as that term is defined under section 101(14) of the Bankruptcy

Code, and that the employment of UBSW is necessary and would be in the best interests of the

Committee; and it appearing that due notice of the Application has been given to the Office of the

United States Trustee for the District of Delaware, and those persons who have filed notices of

appearance in these cases, and that no other or further notice need be given; and sufficient cause

appearing therefor, it is hereby

ORDERED that, in accordance with section 1103 of the Bankruptcy Code, the

Committee is hereby authorized to employ and retain UBSW as its financial advisor for the

RLF1-2234579-2

B-140

Rcvd 12/06 02:42PM (06:56) on RightFax Line 01 for CRTG        WORKSRV1 printed TC03A2E521B30BA on 12/06/2000 02:52PM * Pg 3/24

FROM RICHARDS, LAYTON &    FINGER #10        (WED)12. 6'00 14:45/ST. 14:38/NO. 4864083265 P  3

purpose of providing valuation services to the Committee in accordance with, and upon the terms and conditions contained in, the letter agreement between UBSW and the Committee, dated November 21, 2000 (the "Letter Agreement"), a copy of which is attached to the Application as Exhibit "A", effective as of November 21, 2000.

ORDERED that, in accordance with the Letter Agreement, the valuation fee of $700,000 is to be paid to UBSW at the time of the effective date the Debtors' plan of reorganization (the "Valuation Fee"). In addition, in the event that UBSW is required to perform services hereunder beyond the date which is four (4) months from November 21, 2000, the above-captioned debtors (the "Debtors") shall pay UBSW a fee (each, a "Monthly Fee") of fifty thousand dollars ($50,000) per month for each month subsequent to such fourth month. Each such Monthly Fee shall be payable in advance on the 21st day of each month for which a Monthly Fee is payable, or, if such day is not a business day, on the business day immediately preceding such date.

ORDERED that, in accordance with Exhibit A to the Letter Agreement, the Debtors shall indemnify UBSW and certain related parties from and against any losses, claims, damages, expenses and liabilities related to or arising out of or in connection with its activities as financial advisor to the Committee, other than losses, damages, claims, expenses and liabilities that are the result of UBSW's or such related party's gross negligence or willful misconduct.

Dated: December 1, 2000
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

Movant to send copies to all
parties and file certificate
of service with the court.
RLF1-2234579-2

2

10/4/00

B-141

# EXHIBIT A

12/01/00    16:10    WACHTELL LIPTON → 212 821 3008                    NO.400    D13

Rcvd 11/30 02:15PM (08:36) on RightFax line 23 for CRCJF        WORKSRV1 printed TC03AZ6630506AA on 11/30/2000 02:27PM * Pg 13/37

FROM RICHARDS, LAYTON & FINGER #8           (THU)11. 30'00 14:18/ST. 14:15/NO. 4862636'76 P 13

 **UBS Warburg**

UBS Warburg LLC
299 Park Avenue
New York, NY 10171-0026
Telephone 212 821-4000
www.ubswarburg.com

November 21, 2000

Official Committee of Unsecured Creditors of Coram Healthcare, Inc.
c/o Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019

Attention: Chaim Fortgang, Esq.

Ladies and Gentlemen:

        This letter confirms the agreement of the Official Committee of Unsecured Creditors of Coram Healthcare, Inc. (the "Committee") to engage UBS Warburg LLC ("UBSW") as the Committee's financial advisor in connection with the chapter 11 case of Coram Healthcare, Inc. and its affiliates (collectively, the "Company") now pending in the United States Bankruptcy Court for The District of Delaware (the "Bankruptcy Court") from the date hereof until the completion of the financial restructuring or the earlier termination of the engagement entered into under this Agreement (the "Term"). It is understood that the retention of UBSW and the effectiveness of this Agreement are subject to the approval of the terms hereof by the Bankruptcy Court pursuant to sections 327(a) and 328(a) of the federal Bankruptcy Code.

    1.    As the Committee's financial advisor, UBSW agrees to perform the following services as necessary and appropriate: (i) performing in connection with the chapter 11 case of the Company a valuation of the Company; (ii) communicating the results of the same in writing and/or orally to the Committee; and (iii) providing expert testimony, if necessary, in any proceedings before the Bankruptcy Court regarding the valuation.

    2.    As soon as is reasonably practicable after the Execution of this Agreement, the Committee shall obtain an Order of the Bankruptcy Court authorizing the Committee's retention of UBSW upon the terms and conditions set forth herein (the "Retention Order"). The Retention Order shall require the Company's entry into the Indemnification Agreement attached hereto as Exhibit A (the "Indemnification Agreement"). The Indemnification Agreement shall be attached as an exhibit to the Retention Order.

    3.a)    **Fees:**  For UBSW's services hereunder, the Committee, subject to the approval of the Bankruptcy Court pursuant to the Retention Order or otherwise, shall cause the Company to pay to UBSW on the effective date of the Company's plan of reorganization seven hundred thousand dollars ($700,000.00). ("the Valuation Fee"). The Company's obligation to pay the Valuation Fee shall arise upon execution of this Agreement, and shall survive the termination of this Agreement by the Committee.

    (b)    **Monthly Fee:**  In the event that UBSW is required to perform services hereunder beyond the date which is four (4) months from the date hereof, the Committee shall cause the Company to pay UBSW a fee (each, a "Monthly Fee") of fifty thousand dollars ($50,000) per month for each month subsequent to such fourth month. Each such Monthly Fee shall be payable in advance on the 21st day of each month for which a Monthly Fee is payable, or, if such day is not a business day, on the business day immediately preceding such date.

UBS Warburg LLC is a subsidiary of UBS AG.
UBS Warburg is a financial services group of UBS AG.

Member SIPC
Member New York Stock Exchange
and other Principal Exchanges

#7656 P.002                      UBS WARBURG                      NOV.22'2000 11:09 212 821 3008

212 821 3008        DEC.01'2000 15:53 RECEIVED FROM:        2124032000        #7643-013

12/01/00    16:10    WACHTELL LIPTON → 212 821 3008                           NO.400    U14

Rcvd 11/30 02:15PM (08:36) on RightFax Line 23 for CRCJF        WORKSRV1 printed TC03A26630506AA on 11/30/2000 02:27PM * Pg 14/32

FROM RICHARDS, LAYTON & FINGER #6                   (THU)11.30'00 14:19/ST.14:15/NO.4862636176 P 14

# ☸ UBS Warburg

UBS Warburg LLC
299 Park Avenue
New York, NY 10171-0026
Telephone 212 821-4000
www.ubswarburg.com

4.     The Committee, subject to the approval of the Bankruptcy Court shall cause the Company to reimburse UBSW, upon UBSW's request from time to time, for the documented out of pocket expenses reasonably incurred by UBSW in performing services pursuant to this Agreement (including the reasonable fees and disbursement of UBSW's counsel, if any, and provided that retention of counsel by UBSW and the scope of work of such counsel are approved in advance by the Bankruptcy Court).

5.     It is understood and agreed that the services to be provided by UBSW hereunder are in connection with UBSW's valuation of the Company in the context of the Company's chapter 11 case and that any financial advisory or investment banking services requested to be provided by UBSW in respect of the structuring or execution of any other specific transaction or proposed transaction (including asset appraisals, fairness opinions and discrete transactions related to Company's overall financial restructuring, such as divestitures of business lines or assets, refinancings and investments involving new money, and the like) or which require significant additional time and effort on the part of UBSW, will be the subject of a separate engagement letter or letters, to be entered into at the time UBSW is requested to perform such services, pursuant to which UBSW will be retained on terms to be agreed with respect to each such transaction or proposed transaction.

6.     To the extent feasible and appropriate, the Committee will furnish or cause the Company to furnish to UBSW all such information as is available and appropriate to enable UBSW to render the services hereunder. To the extent feasible and appropriate, the Committee will arrange access for UBSW to the management of the Company and to the Company's advisors. The Committee understands that in rendering services hereunder UBSW will be relying, without independent verification, on the accuracy and completeness of all information that is or will be furnished to UBSW by or on behalf of the Committee, the Company, their advisors or any other party or potential party to any transaction, or which is obtained from generally recognized public sources, and UBSW will not in any respect be responsible for the accuracy, completeness or reasonableness thereof.

7.     The Committee agrees not to assert any claim for losses, damages, liabilities or expenses of any kind against UBSW in connection with any matter in any way relating to or referred to in this Agreement or arising out of the matters contemplated by this Agreement and to refrain from encouraging or cooperating with any third party seeking to assert such a claim against UBSW except to the extent otherwise required by law and except to the extent any claim for losses, damages, liabilities or expenses are finally judicially determined to have resulted primarily from UBSW's gross negligence or, willful misconduct. The Committee agrees that UBSW shall not have any liability (whether direct or indirect, in contract, tort or otherwise) to the Committee or any of its members for or in connection with advice or services rendered or to be rendered by UBSW pursuant to this Agreement, any transactions contemplated hereby or any financial restructurings or any of UBSW's actions or inactions in connection with any such advice, services, transactions or restructurings, except for liabilities in connection with any such advice, actions, inactions or services (including any related expenses) which are finally judicially determined to have resulted primarily from UBSW's gross negligence, willful misconduct or bad faith. In no event shall UBSW have any liability under or in connection with this Agreement for any punitive, consequential or exemplary damages.

8.     UBSW's services hereunder may be terminated by the Committee or UBSW upon 30 days prior written notice without liability or continuing obligation of the Company, the Committee or UBSW, except that UBSW shall be entitled to payment in full of the Valuation Fee, and shall be entitled to receive from the Company any fees payable pursuant to Section 3b hereof to the date of termination and except that expenses incurred by UBSW as a result of services

UBS Warburg LLC is a subsidiary of UBS AG.
UBS Warburg is a financial services group of UBS AG.

2

Member SIPC
Member New York Stock Exchange
and other Principal Exchanges

NOV.22.2000 11:09 212 821 3008              UBS WARBURG              #7155 P.003

212 821 3008          DEC.01'2000 15:53 RECEIVED FROM:          2124032000          #7643-014

12/01/00    16:10    WACHTELL LIPTON → 212 821 3008    NO.400    Ø15

Rcvd 11/30 02:15PM (08:36) on RightFax line Z3 for CRCJF    WORKSRV1 printed TC03A26630506AA on 11/30/2000 02:27PM * Pg 15/32

FROM RICHARDS, LAYTON & FINGER #8    (THU)11.30'00 14:19/ST. 14:15/NO. 4862636176 P 15

# ❄ UBS Warburg

rendered prior to the date of the termination shall become immediately payable in full by the Company, and provided that Section 7 hereof and the indemnification agreement substantially in the form of Exhibit A hereof shall remain operative and in full force and effect regardless of any termination. Failure to receive fees and expenses on a timely basis pursuant to Sections 3a and b and 4, above, or failure of the Committee to obtain entry of the Retention Order, shall be deemed to constitute cause for UBSW to terminate the Agreement. No interpretation of this letter should be made to infer that the mention of one particular cause for termination herein implies that other causes may not also exist.

9.    UBSW hereby discloses that in the ordinary course of its business, UBSW may trade the securities of the Company and/or potential purchasers or joint venture partners for its own account and for the accounts of customers, and it may at any time hold a long or short position in such securities. UBSW agrees that, except as otherwise required by law, judicial or administrative process or regulatory request or demand or other body having jurisdiction over UBSW, or as contemplated by its engagement hereunder, the non-public information obtained by UBSW in connection with this engagement shall be held by UBSW as confidential and shall be used by UBSW only in connection with the performance of its services for the Committee under this engagement except to the extent (a) such information is disclosed by UBSW to its counsel or to its employees or agents on a need-to-know basis and such persons are advised of the confidential nature thereof, or (b) such information is otherwise publicly available or becomes publicly available through no fault of UBSW. It is contemplated by the engagement hereunder that UBSW, in the course of the performance of its services for the Committee, will disclose confidential information to members of the Committee and to other creditors and potentially other stakeholders or constituents of the Company.

10.    The Committee acknowledges that all advice given pursuant to this Agreement by UBSW in connection with its engagement hereunder is intended solely for the benefit and use of the Committee in considering the matters to which such advice relates and, except as may be required by applicable law, the Committee agrees that except as set forth in this Agreement no such advice shall be used for any purpose or be disclosed, reproduced, disseminated, quoted, or referred to at any time or in any manner or for any purpose, nor shall any public references to UBSW be made by or on behalf of the Committee, in each case without UBSW's prior written consent, which shall not be unreasonably withheld. UBSW shall be given prompt notice of any disclosure of its advice by the Committee required by applicable law, unless the Committee is legally prohibited from providing such notice to UBSW.

11.    The Committee acknowledges and agrees that UBSW has been retained solely to perform a valuation of the Company, and not to act as an advisor to or agent of the Company or any other person, and that the Committee's engagement of UBSW is not intended to confer rights upon any person not a party hereto (including the Company, its shareholders, employees and Directors) as against UBSW or its affiliates, or their respective directors, officers, employees or agents. UBSW shall act as an independent contractor under this Agreement, and any duties arising out of its engagement shall be owed solely to the Committee.

12.    UBSW understands and agrees that, notwithstanding anything which may be contained in this Agreement to the contrary or in any other previous agreement (express or implied) between UBSW and any of the members of the Committee and /or the Company, neither the Committee nor any member thereof (present or future) shall have any liability or responsibility whatsoever for any fees, expenses or other compensation payable to UBSW under this Agreement, and UBSW shall not seek at any time to impose any such liability or responsibility on the Committee or any member thereof.

UBS Warburg LLC

3

212 821 3008    DEC.01'2000 15:54 RECEIVED FROM:    2124032000    #7643-015

12/01/00    16:10    WACHTELL LIPTON → 212 821 3008    NO.400    P18

Rcvd 11/30 02:15PM (08:36) on RightFax line 23 for CRCJF    WORKSRV1 printed TC03A26630506AA on 11/30/2000 02:27PM • Pg 16/32

FROM RICHARDS, LAYTON & FINGER #8    (THU)11.30'00 14:2G/ST. 14:15/NO. 4862636176 P 16

INNFAX SERVICE    P. 5

## ❄ UBS Warburg

13.    This Agreement and any claim, counterclaim or dispute of any kind or nature whatsoever arising out of or in any way relating to this Agreement, directly or indirectly, shall be governed by and construed in accordance with the laws of the State of New York. Each of UBSW and the Committee waives all rights to trial by jury in any proceeding (whether based upon contract, tort or otherwise) in any way arising out of or relating to this Agreement.

14.    UBS Warburg may, at its own expense, place customary tombstone announcements or advertisements in financial newspapers and journals describing its services hereunder.

15.    Without limiting UBSW's rights under Section 8 hereof (which provides among other things, for UBSW's right to fees beyond the Term of this Agreement) and without affecting the timing of payments provided for hereunder, UBSW shall file appropriate applications for allowance of interim and final compensation and reimbursement of expenses in accordance with section 330 and 331 of the United States Bankruptcy Code at such times as directed by the Bankruptcy Court or established by local rules or administrative order, provided however, that UBSW shall seek permission to maintain time records in one hour increments.

16.    This Agreement shall be binding upon UBSW and the Committee. This Agreement may not be waived, amended, modified or assigned, in any way in whole or in part, including by operation of law, without the prior written consent of the parties hereto.

If the foregoing correctly sets forth our understanding, please indicate your acceptance thereof in the space provided below, whereupon this letter and your acceptance shall constitute a binding agreement between us.

Very truly yours,

UBS WARBURG LLC

William C. McGahan
Managing Director

L Thomas Sperry
Managing Director

Accepted and agreed to as of the date first above written:

Name: Edward Stearns
Title: Chairman of the Official Committee of Unsecured Creditors

212 821 3008    DEC.01'2000 15:54 RECEIVED FROM:    2124032000    #7643-016

B-146

**UBS Warburg**

UBS Warburg LLC
299 Park Avenue
New York, NY 10171-0026
Telephone 212 821-4000
www.ubswarburg.com

November 21, 2000

Coram Healthcare, Inc.
1125 Seventeenth Street
Suite 2100
Denver, CO 80202

Ladies and Gentlemen:

In connection with the chapter 11 case of Coram Healthcare, Inc. (the "Company") now pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") the United States Trustee has appointed an unsecured creditors' committee known as the Official Committee of Unsecured Creditors of Coram Healthcare, Inc. (the "Committee"). In connection with UBS Warburg LLC ("UBSW") having been named as financial advisor to the Committee, the Company agrees that Sections 3, 4, 6 and 7 of the engagement letter dated November 21, 2000 (the "Retention Agreement") by and among the Committee and UBSW (a copy of which is attached hereto) are incorporated by means of reference herein and binding on the Company. It is further agreed that the Company shall:

(a)  indemnify, defend and hold harmless UBS Warburg LLC ("UBSW") and its affiliates, the respective present and former directors, officers, employees and agents of UBSW and its affiliates, and each other person, if any, controlling UBSW or any of its affiliates (UBSW and each of the aforementioned parties being an "Indemnified Party"), to the fullest extent permitted by law, from and against, and (b) that no Indemnified Party shall have any liability (whether direct or indirect, in contract, tort or otherwise) to you, your creditors or any other person or entity for, in each case, any losses, claims, damages, liabilities (joint or several) and expenses of any kind or nature whatsoever (and any action or proceeding in respect thereof, including without limitation any shareholder or derivative action or arbitration proceeding) to which such Indemnified Party may become subject to under any applicable foreign, federal or state law or otherwise, and in any way related to or arising out of any transaction or matter contemplated by this letter agreement or the Agreement or the engagement of UBSW pursuant to, and the performance by UBSW of the services contemplated by, this letter agreement or the Agreement, except to the extent that it shall be determined by a court of competent jurisdiction in a judgment that has become final in that it is no longer subject to appeal or other review, that such losses, claims, damages, liabilities or expenses resulted solely out of such Indemnified Party's gross negligence or willful misconduct.

In addition, in the event that UBSW or any other Indemnified Party becomes involved in any capacity (whether or not as a party) in any action, proceeding or investigation or any kind or nature whatsoever (including without limitation any shareholder or derivative action or arbitration proceeding) in any way related to or arising out of any transaction or matter contemplated by this letter agreement or the Agreement or the engagement of UBSW pursuant to and the performance by UBSW of the services contemplated by, this letter agreement or the Agreement, the Company will promptly reimburse each such Indemnified Party for all reasonable fees and expenses (including reasonable counsel fees and expenses, and including the reasonable costs of any investigation and preparation conducted by or on behalf of such Indemnified Party) as and when they are incurred in connection therewith, except to the extent that it shall be determined by a court of competent jurisdiction in a judgment that has become final in that it is no

UBS Warburg LLC is a subsidiary of UBS AG.
UBS Warburg is a financial services group of UBS AG.

Member SIPC
Member New York Stock Exchange
and other Principal Exchanges

B-147