# ✲ UBS Warburg

longer subject to appeal or other review, that any such action, proceeding or investigation resulted solely out of such Indemnified Party's gross negligence or willful misconduct. The Company will also promptly reimburse each Indemnified Party for any legal and other expenses incurred in enforcing this letter agreement, except to the extent that it shall be determined by a court of competent jurisdiction in a judgment that has become final in that it is no longer subject to appeal or other review, that the liability for which indemnification is sought hereunder resulted solely out of such Indemnified Party's gross negligence or willful misconduct.

If for any reason the indemnification provided for in this letter agreement is unavailable to any Indemnified Party or insufficient to hold such Indemnified Party harmless, the Company shall contribute to the losses, damages, liabilities, expenses and claims for which such indemnification is unavailable (i) in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by the Company, on the one hand, and the party entitled to contribution, on the other hand, in the matters contemplated by the Agreement or (ii) if (but only if and to the extent) that the allocation provided for in clause (i) is for any reason held unenforceable, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of the Company, on the one hand, and the party entitled to contribution, on the other hand, as well as any other relevant equitable considerations. The Company agrees that for the purposes of this paragraph the relative benefits received, or sought to be received, by the Company, on the one hand, and the party entitled to contribution, on the other hand, in connection with the matters contemplated by the Agreement shall be deemed to be in the same proportion that the total amount of liabilities of the Company bears to the fees paid or to be paid to UBSW under the Agreement; provided, however, that, to the extent permitted by applicable law, in no event shall the Indemnified Parties (or any one or more thereof) be required to contribute an aggregate amount in excess of the aggregate fees actually paid to UBSW under the Agreement. Relative fault shall be determined by reference to; among other things, whether any allegedly untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or its employees or agents), on the one hand, or by UBSW on the other. The Company and UBSW also agree that it would not be just and equitable if contributions were determined by pro rata allocation or any other method which does not take into account the equitable considerations referred to above.

If multiple claims are brought against an Indemnified Party in any action or proceeding (including any arbitration proceeding), with respect to at least one of which indemnification is permitted under applicable law and provided for in this letter agreement, the Company agrees that the full amount of any judgment, order, or award against such Indemnified party shall be conclusively deemed to be based upon claims as to which indemnification is so permitted and provided for, except to the extent that such judgment, order, or award expressly states that it, or any portion or it, is based solely on a claim as to which indemnification is not so permitted and provided for.

Upon receipt of actual notice of a claim, action, proceeding or investigation against any Indemnified Party with respect to which indemnity may be sought hereunder, such Indemnified Party will promptly notify the Company in writing, provided that the failure to so notify the Company will not relieve the Company from any liability that the Company may have on account of this Indemnity or otherwise, except to the extent that the Company shall have been materially prejudiced by such failure. The Company shall, if requested by UBSW, assume the defense of any such claim, action, proceeding or investigation, including the employment of counsel reasonably satisfactory to UBSW.. Any Indemnified Party shall have the right to employ separate counsel in any such claim, action, proceeding or investigation and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party, unless (i) the Company shall have failed promptly to assume the defense thereof and employ counsel as provided

# ❦ UBS Warburg

above or (ii) such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it that are different from or in addition to those available to the Company, provided that the Company shall not in any event be responsible hereunder for the fees and expenses of more than one firm of separate counsel in connection with any claim, action, proceeding or investigation in the same jurisdiction, in addition to any local counsel.

The Company agrees that, without UBSW's prior written consent, it will not settle, compromise or consent to the entry or any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification could be sought under the indemnification provisions of this letter agreement (whether or not UBSW or any other Indemnified Party is an actual or potential party to such claim, action, proceeding or investigation), in whole or in part, unless such settlement, compromise or consent (i) includes an unconditional release of each Indemnified Party from all liability in any way related to or arising out of such claim or action, proceeding or investigation and (ii) does not impose any potential liability upon any Indemnified Party and does not contain any factual or legal admission by or with respect to any Indemnified Party or any adverse statement with respect to the character, professionalism, due care, loyalty, expertise, or reputation of any Indemnified Party or any action or inaction by any Indemnified Party.

In the event that an Indemnified Party is requested to appear as a witness in any claim, action, proceeding or investigation brought by or against the Company in which an Indemnified Party is not named as a defendant, the Company agrees to reimburse such Indemnified party for all reasonable expenses incurred by it in connection with its appearing and preparing to appear as such a witness, including, without limitation, the reasonable fees and disbursements of its legal counsel, as and when incurred.

The Company's indemnity and contribution obligations under this letter agreement shall be in addition to any liability which the Company may otherwise have, and shall be in addition to any rights UBSW or any other Indemnified Party may have at common law or otherwise. This letter agreement may not be waived, amended, modified, or assigned without the prior written consent of both parties hereto.

This letter agreement and any claim or dispute of any kind or nature whatsoever arising out of or in any way relating to this letter agreement, directly or indirectly (including any claim concerning advice provided pursuant to the Agreement), shall be governed by and construed in accordance with the laws of the State of New York. Except as set forth below, no such claim or dispute may be commenced, prosecuted or continued in any court other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, which courts shall have exclusive jurisdiction over the adjudication of such matters, and the Company and UBSW consent to the jurisdiction of such courts and personal service with respect thereto. The Company hereby consents to personal jurisdiction, service and venue in any court in which any Claim arising out of or in any way relating to this letter agreement is brought by any third party against UBSW or any Indemnified Party. Each of UBSW and the Company (on its behalf and, to the extent permitted by applicable law, on behalf of its stockholders and affiliates) waives all right to trial by jury in any proceeding or counterclaim (whether based upon contract, tort or otherwise) in any way arising out of or relating to the engagement of UBSW pursuant to, or the performance by UBSW of the services contemplated by, the Agreement, or otherwise in any way related to or arising out of this letter agreement. The Company agrees that a final judgment in any such proceeding brought in any such court shall be conclusive and binding upon the Company and may be enforced in any other courts to the jurisdiction of which the Company is or may be subject, by suit upon such judgment.

UBS Warburg LLC

# ✤ UBS Warburg

This agreement shall survive the completion of or termination of our engagement, and shall remain in effect indefinitely and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representative of the Company, UBSW and any other Indemnified Party, including by operation of law.

Very truly yours,

UBS WARBURG LLC

By: _L Thomas Sperry_ / cm

L Thomas Sperry
Managing Director

By: _William C. McGahan_

William C. McGahan
Managing Director

Accepted and agreed to as of
the date first above written:

Coram ~~Healthcare,~~ Inc.

By: _Scott Danitz_

Scott Danitz
Coram, Inc.
Vice President & Treasurer

UBS Warburg LLC

#7155 P.009

UBS WARBURG

NOV.22.2000 11:12 212 821 3008
** TOTAL PAGE.05 **

B-150

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x   Chapter 11

In re                                           :
                                                :
CORAM HEALTHCARE CORP. AND CORAM     :   Case No. 00-3299 (MFW)
INC.                                            :   through 00-3300 (MFW)
                                                :
            Debtors.                            :   Jointly Administered
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**AFFIDAVIT OF ROBERT D. DISHNER
IN SUPPORT OF ORDER AUTHORIZING EMPLOYMENT
AND RETENTION OF UBS WARBURG LLC
AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS**

STATE OF NEW YORK      )
                       :  ss
COUNTY OF NEW YORK     )

        Robert D. Dishner, being first duly sworn to oath, deposes and says:

        1.      I am an Associate Director of UBS Warburg LLC ("UBSW") which maintains

offices at 299 Park Avenue, New York, New York 10171, and I am authorized to execute this

affidavit on behalf of UBSW. This affidavit is submitted in support of the application (the

"Application") of the Official Committee of Unsecured Creditors (the "Committee") seeking

authorization to retain and employ UBSW as their financial advisor.

        2.      UBSW is a full-service investment banking firm focused on providing financing

and advisory services to corporations. UBSW is a registered broker-dealer and investment

advisor with the United States Securities and Exchange Commission and is a member of the New

York, American and Chicago Stock Exchanges, the National Association of Securities Dealers

and the SIPC. UBSW is a wholly owned subsidiary of UBS AG.

3.    UBSW is well qualified to serve as the Committee's financial advisor.  UBSW
has extensive experience working with financially troubled companies and their creditors in
complex financial restructurings both out-of-court and in chapter 11 proceedings.  The
employees of UBSW have advised debtors, creditors and equity constituencies in many
reorganizations.  Since 1990, these professionals have been involved in over fifty (50)
restructurings, representing over $50 billion in debtor liabilities.

4.    UBSW has extensive experience working with and analyzing healthcare
companies.  The employees of UBSW have advised over 400 healthcare companies over the last
five years on a variety of corporate finance matters including equity and debt issuance and
merger and acquisition advice.  UBSW has global research capabilities in every major segment
of the healthcare industry.  We believe we have the largest dedicated healthcare research
coverage effort on Wall Street with 37 publishing analysts that have coverage of over 270
companies in all sectors of the healthcare industry.

5.    Since 1999 UBSW has completed 47 equity and equity linked transactions in the
healthcare industry for a total value of $4.5 billion.  In addition, UBSW has completed 63 M&A
transactions in the health care industry with a total value of $36.9 billion.

6.    A search has been made of UBSW's records concerning significant contacts
between UBSW and the Debtors, the Committee and the creditors. A list of the parties searched
is attached hereto as Exhibit A.[1]  To the best of my knowledge, information and belief, insofar as
I have been able to ascertain after such review, neither I nor any other professional employee of
UBSW (i) is related professionally (a) to the Debtors or their creditors , (b) the respective

---

[1] Because of the scope of the Debtor's operations and the possible existence of numerous unidentified parties in interest, if UBSW discovers additional information requiring further disclosure it will supplement this affidavit.

2

attorneys identified to us as representing such parties in this case or (c) any other party in interest

herein, the United States Trustee or anyone employed in the United States Trustee's office, or (ii)

has any connection with or holds or represents any interest adverse to the Committee or to the

Debtors, their estates, their creditors or any other party in interest herein or their respective

attorneys in the matters for which UBSW is proposed to be retained, except as set forth herein.

     7.     As of approximately October 30, 2000, the entities listed on Exhibit B had

business connections with UBSW, including, without limitation, financial advisory,

underwriting, brokerage, custodial and/or vendor relationships, in connection with matters

unrelated to the Debtors and their Chapter 11 case.

     In addition, UBSW may have other business connections with entities listed on Exhibit A

which are of a confidential nature, including advisory relationships involving mergers and

acquisitions, divestiture or strategic advisory services. While the specific nature of these

relationships is confidential, none relate to the Debtors or these Chapter 11 cases. Further, none

of the entities listed in the immediately preceding paragraph or referred to in this paragraph

accounted for more than 0.5% of UBSW's 1999 annual revenue.

     8.     UBSW acts as a broker and custodian, and engages in trading activities on behalf

of customers and for its own account with respect to a variety of securities, including high yield

debt, investment grade debt, convertible debt, preferred equity, and common equity. From time

to time, in connection with these activities, UBSW may engage in securities transactions

unrelated to these cases with some of the Debtor's significant creditors or bondholders listed in

Exhibit A, including the entities listed in the first paragraph of Section 6 above. Customary

barriers exist to prevent the exchange of material, non-public information between the

investment banking department and the departments at UBSW engaged in such activities.

11/27/00 1:44 PM

B-154

9.    From time to time, UBSW and/or affiliates of UBSW may, for their own account or for the accounts of customers, engage in trading transactions involving or maintain custody of securities and/or liabilities issued or guaranteed by one or more of the Debtors or other parties in interest.

10.    At the present time, UBSW does not own any securities of the Debtor. for its own account.

11.    According to UBSW's records,

    (a)    As of October 30, 2000, UBSW owned for its own account debt and/or equity securities of the parties in interest identified on Exhibit C attached hereto;

    (b)    UBSW may currently hold for the accounts of customers debt and/or equity securities of the Debtors and other parties in interest.

These proprietary and customer holdings are unrelated to the Chapter 11 cases and are trading positions that may change from day to day. Customary barriers exist to prevent the exchange of material, non-public information between the investment banking department and the departments at UBSW engaged in such activities. Accordingly, UBSW undertakes no duty to update the foregoing information.

12.    Benjamin D. Lorello and William C. McGahan, currently employed by UBSW, were previously employed by Salomon Smith Barney, Inc. ("SSB"), the firm that acted from time to time as investment banker for predecessor companies to the Debtors. Mr. Lorello and Mr. McGahan were involved in mergers and acquisition advisory work involving predecessor companies to the Debtors while at SSB and, therefore, are each a "disinterested person" as

4.

defined in section (101) (14) (D) of the Bankruptcy Code. Because of their familiarity with the Debtors, they will assist in the performance of this engagement.

13.    UBSW currently represents other debtors and other creditor committees in various bankruptcy cases unrelated to these Chapter 11 cases. some members of which may now or in the future be among the entities listed on Exhibit A hereto. UBSW will attempt to identify any such entities to the Court should the Court deem it necessary for UBSW to do so.

14.    UBSW has in excess of 14,500 employees. It is possible that certain of these individuals hold interests, directly or through mutual funds or other investment vehicles, in debt or equity securities in the Debtors or other parties in interest. UBSW has not undertaken to determine whether its employees hold any such investments.

15.    UBSW is affiliated with a large international commercial bank and other entities engaged in financial services businesses. Because of their size and the scope of their operations, UBS AG and such other UBSW affiliates undoubtedly have business connections, including lending relationships and trading activities, with parties listed on the attached Exhibit A and other parties in interest. None of these affiliated entities will participate in the engagement by the Committee of UBSW and UBSW has not undertaken to determine the existence, nature or scope of any such affiliate's business relationships or activities.

16.    Certain of the creditors and other parties-in-interest in these chapter 11 cases may be themselves, or through their respective affiliates, asset management clients of UBSW or affiliates of UBSW, or may be limited partners and/or investors in certain investment funds for which UBSW or an affiliate of UBSW serves as general partner and/or investment manager. For example, as of June 30, 2000, UBS AG (Private Bank), UBS Brinson (Institutional Asset Management), UBS Capital (Private Equity) and UBS AG (Private and Corporate Clients)

5

managed approximately $1.0 trillion in assets for institutions and individuals around the world and served as advisor to several mutual fund families. Creditors and other parties-in-interest in these Chapter 11 cases have no influence or control over the investment policies or management of such activities. In addition, such activities are wholly unrelated to these Chapter 11 cases or UBSW's financial advisory services for the Committee.

17.    None of the above described engagements, relationships or securities positions involving parties-in-interest in these Chapter 11 cases are material to the financial condition of UBSW. UBSW does not believe that any such engagement, relationship or securities position creates a conflict of interest in respect of the Committee, the Debtors or these Chapter 11 cases or raises an issue of UBSW as a "disinterested person" as defined in section (101) (14) of the Bankruptcy Code

18.    To the best of my knowledge, UBSW has not been retained to assist any entity or person other than the Committee on matters relating to, or in connection with, these Chapter 11 cases. If this Court approves the proposed employment of UBSW by the Committee, UBSW will not accept any engagement or perform any service for any entity or person other than the Committee in these cases. UBSW will, however, continue to provide professional services to entities or persons that may be creditors of the Debtors or parties in interest in these Chapter 11 cases; provided, however, that such services do not relate to, or have any direct connection with, these Chapter 11 cases.

19.    To the best of my knowledge, information and belief, UBSW does not have or represent any interest adverse to the interests of the Debtors, the Committee or of any class of creditors or equity security holders of the Debtors, by reason of any direct or indirect relationship

6

to, connection with, or interest in the Debtors or any investment banker for any securities of the Debtor, or for any other reason except as noted above.

20.    In connection with these Chapter 11 cases, UBSW and the Committee entered into that certain engagement letter (the "Agreement"), a copy of which is annexed to the Application as Exhibit D.  UBSW will perform the services described in the Application and more fully described in such Agreement.

23.    As more fully described in the Agreement, the fees for the services rendered in these cases are:  (a) a $700,000 Valuation Fee , plus reasonable out-of-pocket expenses, and (b) a monthly fee of $50,000 per month beginning the fourth month after the beginning of the assignment.  The Agreement also provides that the Debtors will indemnify UBSW and certain related persons under certain circumstances.

24.    In accordance with the Agreement, the Valuation fee is to be paid to UBSW on the effective date of the Company's plan of reorganization; provided, however, that: (a) such fees and the other fees and expenses payable to UBSW during these chapter 11 cases will be subject to subsequent allowance by the Court upon a proper application by UBSW in accordance with sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, and local rules of the Court; and (b) any such fees or expenses paid to UBSW that are subsequently disallowed by the Court will be promptly returned by UBSW to the Debtors.

25.    UBSW will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.  Specifically, UBSW will maintain records of the time spent by its professionals and provide a description of the efforts devoted by them in rendering services.  UBSW has, however, requested the Court to authorize it to maintain records of its time in hourly increments for purposes of these proceedings.

11/27/001:44 PM

B-158

26.    UBSW has not shared or agreed to share any of its compensation from the

Debtors with any other person, other than a partner, principal or employee of UBSW as

permitted by section 504 of the Bankruptcy Code.  The proposed engagement of UBSW is not

prohibited by Bankruptcy Rule 5002.

Dated:        New York, New York
              November 27, 2000

                                        UBS WARBURG LLC

                                        By: _____
                                            Robert D. Dishner
                                            Associate Director

    Sworn to and subscribed before me, a notary public for the State of New York, County of
New York, this 27th day of November 2000.

_____
        Notary Public

            LISSETTE MATEO
     Notary Public, State of New York
           No. 01MA5055753
        Qualified in Kings County
    Commission Expires Feb. 20, 2002

11/27/00 1:44 PM

B-159

# EXHIBIT A

*Debtors*
Coram Healthcare Corporation
Coram, Inc.

*20 Largest Unsecured Claims*
Cerberus Partners, L.P.
Goldman Sachs Credit Partners, L.P.
Foothill Capital Corporation
Cardinal Health
Aetna U.S. Healthcare
Baxter Healthcare Corporation
Tbob Enterprises, Inc.
Medical Specialties Co., Inc.
Farmers Insurance Group of Companies
Baxter/Sabratek
Richard M. Smith
B. Braun Medical/McGaw, Inc.
Thomas Nash, et al.
Joseph Smith
Genetics Institute, Inc.
McGaw - Los Angeles
Federal Express
Resource Realty of Northern New Jersey
Novo Nordisk Pharmaceuticals
The Metrix Company
Aventis Behring LLC
Life Insurance Company of North America
Bowne of Dallas
Mediq/PRN
Prudential Insurance Company
Great West
Safeco Life Insurance Co.
United Healthcare
US Office Products
United Parcel Service
AT&T
Employment Leders, Inc.
U.S. Healthcare
Stephen Brand Productions
Sabratek Corporation
Infusion Solutions, Inc.
Twelve Oaks Corporate Housing
CDW Computer Centers, Inc.

*Professionals*
Weil, Gotshal & Manges
Wachtell, Lipton, Rosen & Katz
Kasowitz, Benson, Torres & Friedman
Richards, Layton & Finger
Altheimer & Gray
Chanin Capital Partners
Ernst & Young LLP

11/27/00 1:44 PM

B-160

# EXHIBIT B

Baxter Healthcare Corporation
Prudential
Cerberus Partners, L.P.
Goldman Sachs Credit Partners, L.P.
Cardinal Health
Aetna U.S. Healthcare
Baxter Healthcare Corporation
Baxter/Sabratek
Federal Express
Life Insurance Company of North America
Bowne of Dallas
Prudential Insurance Company
Safeco Life Insurance Co.
United Healthcare
US Office Products
United Parcel Service
AT&T
U.S. Healthcare
CDW Computer Centers, Inc.
Weil, Gotshal & Manges
Wachtell Lipton Rosen & Katz
Kasowitz Benson Torres Friedman
Richards Layton & Finger
Altheimer & Gray
Chanin Capital Partners
Ernst & Young LLP

11/27/001:44 PM

# EXHIBIT C

Cardinal Health
Aetna U.S. Healthcare
Baxter Healthcare Corporation
B. Braun Medical
Federal Express
Novo Nordisk Pharmaceuticals
Aventis
Prudential
Safeco Life Insurance Co.
United Parcel Service
AT&T
Twelve Oaks Corporate Housing
CDW Computer Centers, Inc.

11/27/001:44 PM

B-162

# Exhibit B - Time Sheets

 UBS Investment Bank

CORAM UBS EXHIBITS B-C V.6.DOC

# Time Sheet

| Date | Bill McGahan | Description |
|---|---|---|
| 12/10/2000 | 1.0 | Valuation Analysis |
| 12/13/2000 | 1.0 | Valuation Analysis |
| 12/14/2000 | 2.0 | Valuation Analysis |
| 12/15/2000 | 4.0 | Valuation Analysis |
| 12/16/2000 | 1.0 | Valuation Analysis |
| 12/17/2000 | 6.0 | Valuation Analysis |
| 12/18/2000 | 8.0 | Valuation Analysis |
| 10/25/2001 | 1.0 | Valuation Analysis |
| 11/05/2001 | 1.0 | Valuation Analysis |
| 11/07/2001 | 1.0 | Valuation Analysis |
| 11/08/2001 | 1.0 | Valuation Analysis |
| 11/18/2001 | 4.0 | Valuation Analysis |
| 11/19/2001 | 5.0 | Valuation Analysis |
| 11/27/2001 | 5.0 | Valuation Analysis |
| **Total Hours** | **41.0** | |

| Date | Soren Reynertson | Description |
|---|---|---|
| 10/16/2001 | 2.0 | Valuation Analysis |
| 10/17/2001 | 2.0 | Valuation Analysis |
| 10/30/2001 | 4.0 | Valuation Analysis |
| 10/31/2001 | 4.0 | Valuation Analysis |
| 11/01/2001 | 6.0 | Valuation Analysis |
| 11/02/2001 | 8.0 | Valuation Analysis |
| 11/03/2001 | 5.0 | Valuation Analysis |
| 11/05/2001 | 5.0 | Valuation Analysis |
| 11/06/2001 | 4.0 | Valuation Analysis |
| 11/07/2001 | 6.0 | Valuation Analysis |
| 11/08/2001 | 3.0 | Valuation Analysis |
| 11/09/2001 | 4.0 | Valuation Analysis |
| 11/14/2001 | 3.0 | Valuation Analysis |
| 11/18/2001 | 4.0 | Valuation Analysis |
| 11/19/2001 | 5.0 | Valuation Analysis |
| 11/22/2001 | 2.0 | Valuation Analysis |
| 11/26/2001 | 3.0 | Valuation Analysis |
| 11/27/2001 | 8.0 | Valuation Analysis |
| 11/28/2001 | 1.0 | Valuation Analysis |
| 11/30/2001 | 1.0 | Valuation Analysis |
| 12/04/2001 | 4.0 | Valuation Analysis |
| 12/06/2001 | 2.0 | Valuation Analysis |
| 12/07/2001 | 2.0 | Valuation Analysis |
| 12/12/2001 | 1.0 | Valuation Analysis |
| 12/13/2001 | 1.0 | Valuation Analysis |
| **Total Hours** | **90.0** | |



B-164

# Time Sheet (continued)

| Date | Abe Han | Description | Date | Michael Sullivan | Description |
|------|---------|-------------|------|------------------|-------------|
| 10/08/2001 | 1.0 | Valuation Analysis | 10/08/2001 | 5.0 | Valuation Analysis |
| 10/10/2001 | 5.0 | Valuation Analysis | 10/09/2001 | 15.0 | Valuation Analysis |
| 10/11/2001 | 1.0 | Valuation Analysis | 10/10/2001 | 7.0 | Valuation Analysis |
| 10/12/2001 | 1.0 | Valuation Analysis | 10/11/2001 | 6.0 | Valuation Analysis |
| 10/15/2001 | 4.0 | Valuation Analysis | 10/12/2001 | 6.0 | Valuation Analysis |
| 10/16/2001 | 4.0 | Valuation Analysis | 10/15/2001 | 4.0 | Valuation Analysis |
| 10/22/2001 | 3.0 | Valuation Analysis | 10/16/2001 | 4.0 | Valuation Analysis |
| 10/23/2001 | 18.0 | Valuation Analysis | 10/22/2001 | 4.0 | Valuation Analysis |
| 10/24/2001 | 4.0 | Valuation Analysis | 10/23/2001 | 18.0 | Valuation Analysis |
| 10/25/2001 | 3.0 | Valuation Analysis | 10/24/2001 | 5.0 | Valuation Analysis |
| 10/29/2001 | 12.0 | Valuation Analysis | 10/25/2001 | 3.0 | Valuation Analysis |
| 10/30/2001 | 12.0 | Valuation Analysis | 10/29/2001 | 14.0 | Valuation Analysis |
| 10/31/2001 | 10.0 | Valuation Analysis | 10/30/2001 | 12.0 | Valuation Analysis |
| 11/01/2001 | 12.0 | Valuation Analysis | 10/31/2001 | 14.0 | Valuation Analysis |
| 11/02/2001 | 5.0 | Valuation Analysis | 11/01/2001 | 16.0 | Valuation Analysis |
| 11/05/2001 | 5.0 | Valuation Analysis | 11/02/2001 | 5.0 | Valuation Analysis |
| 11/06/2001 | 10.0 | Valuation Analysis | 11/05/2001 | 8.0 | Valuation Analysis |
| 11/07/2001 | 10.0 | Valuation Analysis | 11/06/2001 | 12.0 | Valuation Analysis |
| 11/08/2001 | 10.0 | Valuation Analysis | 11/07/2001 | 10.0 | Valuation Analysis |
| 11/09/2001 | 7.0 | Valuation Analysis | 11/08/2001 | 12.0 | Valuation Analysis |
| 11/12/2001 | 7.0 | Valuation Analysis | 11/09/2001 | 8.0 | Valuation Analysis |
| 11/13/2001 | 10.0 | Valuation Analysis | 11/12/2001 | 7.0 | Valuation Analysis |
| 11/18/2001 | 2.0 | Valuation Analysis | 11/13/2001 | 15.0 | Valuation Analysis |
| 11/19/2001 | 4.0 | Valuation Analysis | 11/18/2001 | 2.0 | Valuation Analysis |
| 11/20/2001 | 2.0 | Valuation Analysis | 11/19/2001 | 5.0 | Valuation Analysis |
| 11/26/2001 | 6.0 | Valuation Analysis | 11/20/2001 | 3.0 | Valuation Analysis |
| 11/27/2001 | 12.0 | Valuation Analysis | 11/26/2001 | 6.0 | Valuation Analysis |
| 12/02/2001 | 2.0 | Valuation Analysis | 11/27/2001 | 12.0 | Valuation Analysis |
| 12/03/2001 | 2.0 | Valuation Analysis | 12/02/2001 | 2.0 | Valuation Analysis |
| 12/04/2001 | 2.0 | Valuation Analysis | 12/03/2001 | 2.0 | Valuation Analysis |
| 12/05/2001 | 4.0 | Valuation Analysis | 12/04/2001 | 2.0 | Valuation Analysis |
| 12/06/2001 | 4.0 | Valuation Analysis | 12/05/2001 | 4.0 | Valuation Analysis |
| **Total Hours** | **194.0** | | 12/06/2001 | 4.0 | Valuation Analysis |
| | | | **Total Hours** | **252.0** | |



CORAM UBS EXHIBITS B-C V.6.DOC

# Time Sheet (continued)

| Date | Robert Dishner | Description |
|------|------|------|
| 11/21/2000 | 5.0 | Valuation Analysis |
| 11/22/2000 | 5.0 | Valuation Analysis |
| 11/23/2000 | 0.0 | Valuation Analysis |
| 11/24/2000 | 3.0 | Valuation Analysis |
| 11/25/2000 | 0.0 | Valuation Analysis |
| 11/26/2000 | 7.0 | Valuation Analysis |
| 11/27/2000 | 14.0 | Valuation Analysis |
| 11/28/2000 | 19.0 | Valuation Analysis |
| 11/29/2000 | 11.0 | Valuation Analysis |
| 11/30/2000 | 15.0 | Valuation Analysis |
| 12/01/2000 | 13.0 | Valuation Analysis |
| 12/02/2000 | 13.0 | Valuation Analysis |
| 12/03/2000 | 18.0 | Valuation Analysis |
| 12/04/2000 | 20.0 | Valuation Analysis |
| 12/05/2000 | 17.0 | Valuation Analysis |
| 12/06/2000 | 22.0 | Valuation Analysis |
| 12/07/2000 | 10.0 | Valuation Analysis |
| 12/08/2000 | 8.0 | Valuation Analysis |
| 12/10/2000 | 2.0 | Valuation Analysis |
| 12/11/2000 | 6.0 | Valuation Analysis |
| 12/12/2000 | 6.0 | Valuation Analysis |
| 12/13/2000 | 10.0 | Valuation Analysis |
| 12/14/2000 | 12.0 | Valuation Analysis |
| 12/15/2000 | 5.0 | Valuation Analysis |
| 12/16/2000 | 7.0 | Valuation Analysis |
| 12/17/2000 | 3.0 | Valuation Analysis |
| 12/18/2000 | 6.0 | Valuation Analysis |
| **Total Hours** | **257.0** | |

| Date | Phil Pucciarelli | Description |
|------|------|------|
| 11/21/2000 | 5.0 | Valuation Analysis |
| 11/22/2000 | 5.0 | Valuation Analysis |
| 11/24/2000 | 3.0 | Valuation Analysis |
| 11/26/2000 | 7.0 | Valuation Analysis |
| 11/27/2000 | 14.0 | Valuation Analysis |
| 11/28/2000 | 19.0 | Valuation Analysis |
| 11/29/2000 | 11.0 | Valuation Analysis |
| 11/30/2000 | 15.0 | Valuation Analysis |
| 12/01/2000 | 13.0 | Valuation Analysis |
| 12/02/2000 | 13.0 | Valuation Analysis |
| 12/03/2000 | 18.0 | Valuation Analysis |
| 12/04/2000 | 20.0 | Valuation Analysis |
| 12/05/2000 | 17.0 | Valuation Analysis |
| 12/06/2000 | 22.0 | Valuation Analysis |
| 12/07/2000 | 10.0 | Valuation Analysis |
| 12/08/2000 | 8.0 | Valuation Analysis |
| 12/10/2000 | 2.0 | Valuation Analysis |
| 12/11/2000 | 6.0 | Valuation Analysis |
| 12/12/2000 | 6.0 | Valuation Analysis |
| 12/13/2000 | 6.0 | Valuation Analysis |
| 12/14/2000 | 5.0 | Valuation Analysis |
| 12/15/2000 | 5.0 | Valuation Analysis |
| 12/17/2000 | 8.0 | Valuation Analysis |
| 10/23/2001 | 12.0 | Valuation Analysis |
| 10/24/2001 | 8.0 | Valuation Analysis |
| 10/25/2001 | 6.0 | Valuation Analysis |
| 10/26/2001 | 6.0 | Valuation Analysis |
| 10/27/2001 | 5.0 | Valuation Analysis |
| 10/28/2001 | 3.0 | Valuation Analysis |
| 10/29/2001 | 3.0 | Valuation Analysis |
| 10/30/2001 | 2.0 | Valuation Analysis |
| 10/31/2001 | 3.0 | Valuation Analysis |
| 11/01/2001 | 3.0 | Valuation Analysis |
| 11/06/2001 | 2.0 | Valuation Analysis |
| 11/07/2001 | 2.0 | Valuation Analysis |
| 11/08/2001 | 2.0 | Valuation Analysis |
| 11/18/2001 | 2.0 | Valuation Analysis |
| **Total Hours** | **297.0** | |

 UBS Investment Bank

B-166

CORAM UBS EXHIBITS B-C V.6.DOC

# Time Sheet (continued)

| Date | Jamie Brodsky | Description |
|---|---|---|
| 11/21/2000 | 5.0 | Valuation Analysis |
| 11/22/2000 | 4.0 | Valuation Analysis |
| 11/24/2000 | 2.0 | Valuation Analysis |
| 11/26/2000 | 9.0 | Valuation Analysis |
| 11/27/2000 | 12.0 | Valuation Analysis |
| 11/28/2000 | 10.0 | Valuation Analysis |
| 11/29/2000 | 5.0 | Valuation Analysis |
| 11/30/2000 | 8.0 | Valuation Analysis |
| 12/01/2000 | 5.0 | Valuation Analysis |
| 12/04/2000 | 2.0 | Valuation Analysis |
| 12/05/2000 | 1.0 | Valuation Analysis |
| 12/06/2000 | 13.0 | Valuation Analysis |
| 12/07/2000 | 10.0 | Valuation Analysis |
| 12/08/2000 | 3.0 | Valuation Analysis |
| 12/10/2000 | 2.0 | Valuation Analysis |
| 10/23/2001 | 12.0 | Valuation Analysis |
| 10/24/2001 | 10.0 | Valuation Analysis |
| 10/25/2001 | 10.0 | Valuation Analysis |
| 10/26/2001 | 6.0 | Valuation Analysis |
| 10/27/2001 | 7.0 | Valuation Analysis |
| 10/28/2001 | 4.0 | Valuation Analysis |
| 10/29/2001 | 4.0 | Valuation Analysis |
| 10/30/2001 | 5.0 | Valuation Analysis |
| 10/31/2001 | 10.0 | Valuation Analysis |
| 11/01/2001 | 9.0 | Valuation Analysis |
| 11/04/2001 | 2.0 | Valuation Analysis |
| 11/06/2001 | 2.0 | Valuation Analysis |
| 11/07/2001 | 2.0 | Valuation Analysis |
| 11/08/2001 | 2.0 | Valuation Analysis |
| 11/18/2001 | 3.0 | Valuation Analysis |
| **Total Hours** | **179.0** | |

| Date | Michael Farah | Description |
|---|---|---|
| 10/29/2001 | 4.0 | Valuation Analysis |
| 10/30/2001 | 5.0 | Valuation Analysis |
| 10/31/2001 | 10.0 | Valuation Analysis |
| 11/01/2001 | 9.0 | Valuation Analysis |
| 11/04/2001 | 2.0 | Valuation Analysis |
| 11/06/2001 | 2.0 | Valuation Analysis |
| 11/07/2001 | 2.0 | Valuation Analysis |
| 11/08/2001 | 2.0 | Valuation Analysis |
| 11/18/2001 | 3.0 | Valuation Analysis |
| **Total Hours** | **39.0** | |


UBS Investment Bank

B-167

# Exhibit C - Expenses



CORAM UBS EXHIBITS B-C V.6.DOC

# Expense Break-Out

| Expense Type | Amount | Expense Date | Executive Name |
|---|---|---|---|
| Legal | $3,606.38 | 13-Nov-00 | |
| Legal | 7,047.27 | 18-Dec-00 | |
| Legal | 4,684.90 | 12-Jan-01 | |
| Legal | 55.00 | 13-Mar-01 | |
| Legal | 15,152.15 | 27-Oct-03 | |
| **Legal Total** | **$30,545.70** | | |
| Library Research | $437.50 | 24-Apr-01 | |
| Library Research | 132.57 | 29-May-01 | |
| Library Research | 29.11 | 29-May-01 | |
| Library Research | 407.85 | 2-Jun-02 | |
| Library Research | 187.59 | 2-Jun-02 | |
| Library Research | 178.51 | 2-Jun-02 | |
| Library Research | 175.00 | 2-Jun-02 | |
| Library Research | 125.00 | 2-Jun-02 | |
| Library Research | 62.50 | 2-Jun-02 | |
| Library Research | 62.50 | 2-Jun-02 | |
| Library Research | 59.53 | 2-Jun-02 | |
| Library Research | 56.12 | 2-Jun-02 | |
| Library Research | 50.23 | 2-Jun-02 | |
| Library Research | 38.86 | 2-Jun-02 | |
| Library Research | 29.55 | 2-Jun-02 | |
| Library Research | 25.97 | 2-Jun-02 | |
| Library Research | 25.00 | 2-Jun-02 | |
| Library Research | 22.42 | 2-Jun-02 | |
| Library Research | 17.20 | 2-Jun-02 | |
| Library Research | 11.91 | 2-Jun-02 | |
| **Research Total** | **$2,134.83** | | |
| Presentations & Document Production | $1,235.00 | 2-Jun-02 | |
| **Presentations & Document Production Total** | **$1,235.00** | | |
| Other Costs | $50.00 | 21-Dec-00 | |
| Other Costs | 183.01 | 29-Jan-01 | Philip Pucciarelli |
| Other Costs | 65.79 | 29-Jan-01 | Philip Pucciarelli |
| Home Telephone | 1.34 | 1-May-01 | |
| Publications | 1.25 | 23-Jan-02 | |
| Other Costs | 80.66 | 2-Jun-02 | |
| Mobile phones - Usage | 48.17 | 2-Jun-02 | |
| Mobile phones - Usage | 39.50 | 2-Jun-02 | |
| Home Telephone | 14.85 | 2-Jun-02 | |
| Home Telephone | 2.64 | 2-Jun-02 | |
| **Communications & Other Total** | **$487.21** | | |
| Taxi Costs | $57.00 | 1-Jan-01 | Philip Pucciarelli |
| Meals | 27.34 | 1-Jan-01 | |
| Taxi Costs | 109.34 | 4-Jan-01 | Soren Reynertson |
| Taxi Costs | 108.00 | 10-Jan-01 | Philip Pucciarelli |
| Train Fare Wilmington | 264.00 | 11-Jan-01 | Philip Pucciarelli |
| Taxi Costs | 105.30 | 6-Feb-01 | William McGahan |
| Hotels | 383.80 | 14-Feb-01 | Jamie Brodsky |
| Taxi Costs | 283.25 | 14-Feb-01 | Jamie Brodsky |
| Meals | 516.55 | 14-Feb-01 | |
| Taxi Costs | 47.00 | 1-Mar-01 | Philip Pucciarelli |
| Hotels | 12.45 | 1-Mar-01 | Philip Pucciarelli |
| Taxi Costs | 364.84 | 3-Jul-01 | Robert Dean Dishner |
| Hotels | 330.25 | 3-Jul-01 | Robert Dean Dishner |
| Taxi Costs | 191.90 | 3-Jul-01 | Robert Dean Dishner |
| Airfare Denver | 2,565.61 | 12-Nov-01 | Jamie Brodsky |
| Client Dining | 89.40 | 7-Dec-01 | |
| Taxi Costs | 86.40 | 7-Dec-01 | William McGahan |
| Fares - Project | 161.00 | 9-Jan-02 | William McGahan |
| Meals | 8.50 | 23-Jan-02 | William McGahan |
| Entertainment Project | 62.10 | 1-Feb-02 | William McGahan |
| Entertainment - Staff | 21.32 | 2-Jun-02 | Soren Reynertson |
| Airfare Denver | 2,565.00 | 2-Jun-02 | Michael T. Sullivan |
| Airfare Denver | 2,565.00 | 2-Jun-02 | Abraham Han |
| Entertainment Project | 93.33 | 2-Jun-02 | Soren Reynertson |
| Entertainment Project | 90.27 | 2-Jun-02 | Soren Reynertson |
| Meals | 29.10 | 2-Jun-02 | Abraham Han |
| Meals | 28.51 | 2-Jun-02 | Sudhir Rani |
| Meals | 26.96 | 2-Jun-02 | Abraham Han |
| Meals | 26.88 | 2-Jun-02 | Abraham Han |
| Meals | 26.25 | 2-Jun-02 | Abraham Han |
| Meals | 26.10 | 2-Jun-02 | Abraham Han |
| Meals | 25.55 | 2-Jun-02 | Sudhir Rani |
| Meals | 25.00 | 2-Jun-02 | Michael T. Sullivan |
| Entertainment Project | 13.26 | 2-Jun-02 | Alexander DeFelice |
| Taxi Costs | 8.00 | 2-Jun-02 | Michael T. Sullivan |
| Taxi Costs | 7.00 | 2-Jun-02 | Soren Reynertson |
| Meals | 4.75 | 2-Jun-02 | Michael T. Sullivan |
| Taxi Costs | 632.99 | 3-Jun-02 | Soren Reynertson |
| Train Fare Wilmington | 286.00 | 3-Jun-02 | Michael T. Sullivan |
| Taxi Costs | 195.33 | 3-Jun-02 | Jamie Brodsky |
| Meals | 72.55 | 3-Jun-02 | Soren Reynertson |
| Taxi Costs | 65.79 | 3-Jun-02 | Michael T. Sullivan |
| Meals | 31.22 | 3-Jun-02 | Jamie Brodsky |
| Taxi Costs | 30.60 | 3-Jun-02 | Jamie Brodsky |
| Meals | 12.32 | 3-Jun-02 | Jamie Brodsky |
| **Travel, Meals & Entertainment Total** | **$12,683.11** | | |
| **Grand Total** | **$47,085.85** | | |



# COVINGTON & BURLING

| | | |
|---|---|---|
| 1330 AVENUE OF THE AMERICAS<br>NEW YORK, NY 10019<br>TEL 212.841.1000<br>FAX 212.841.1010<br>WWW.COV.COM | NEW YORK<br>WASHINGTON, DC<br>LONDON<br>BRUSSELS<br>SAN FRANCISCO | INVOICE NUMBER<br>60317298<br>ACCOUNT NUMBER<br>700253.00054<br>DATE<br>October 27, 2003 |

UBS Securities LLC
535 Madison Avenue
New York, NY 10022


Reference:  Coram Healthcare Inc.
Cost Center:
UBS Lawyer:

For professional services rendered through October 23, 2003:

| | |
|---|---|
| Fees: | $ 15,138.50 |
| Disbursements: | 13.65 |
| Amount Due: | $ 15,152.15 |

UBS Securities LLC
Account No.: 700253.00054
Invoice No.: 60317298

| Date | Description | Hours | Timekeeper |
|------|-------------|-------|------------|
| 09/29/03 | Reviewing UBS fee application and supporting documents; telephone conference with C. Jeanfreau; e-mails to client. | 1.50 | Martin Beeler |
| 09/30/03 | Review draft fee application; conference with M. Beeler regarding same. | 1.00 | Charles H. Jeanfreau |
| 10/01/03 | Telephone calls with M. Beeler and M. Hopkins regarding equity committee. | 1.20 | Charles H. Jeanfreau |
| 10/01/03 | Reviewing docket, plan of reorganization; conferences with C. Jeanfreau. | 5.00 | Martin Beeler |
| 10/01/03 | Telephone conference with C. Jeanfreau regarding background, status and application for payment of financial advisory. | 0.50 | Michael B. Hopkins |
| 10/02/03 | Telephone conference with M. Beeler and M. Sullivan; review order regarding first plan and Goldin report; review revised draft. | 1.50 | Charles H. Jeanfreau |
| 10/02/03 | Drafting fee application and supporting documents; confer with C. Jeanfreau. | 7.80 | Martin Beeler |
| 10/03/03 | Review and edit draft fee application. | 1.30 | Charles H. Jeanfreau |
| 10/03/03 | Revising fee application. | 1.00 | Martin Beeler |
| 10/06/03 | Review changes to application; e-mail M. Hopkins. | 0.30 | Charles H. Jeanfreau |
| 10/06/03 | Revising fee application; confer with C. Jeanfreau; e-mail to M. Hopkins. | 1.80 | Martin Beeler |
| 10/07/03 | Telephone call with M. Beeler; review cover memo. | 0.20 | Charles H. Jeanfreau |
| 10/07/03 | Revising fee application; drafting supplemental affidavit; reviewing pleadings; docket research; confer with C. Jeanfreau. | 5.00 | Martin Beeler |
| 10/07/03 | Review draft final fee application; conference with M. Beeler regarding same. | 1.30 | Michael B. Hopkins |
| 10/13/03 | Telephone calls with C. Macias regarding invoices. | 0.20 | Charles H. Jeanfreau |
| 10/14/03 | E-mails to M. Sullivan regarding fee estimates. | 0.30 | Charles H. Jeanfreau |
| 10/15/03 | Revise and edit fee application. | 0.70 | Charles H. Jeanfreau |
| 10/16/03 | Review and edit fee application. | 1.30 | Charles H. Jeanfreau |
| 10/17/03 | Telephone call with T. Gewertz. | 0.10 | Charles H. Jeanfreau |
| 10/20/03 | Revise and edit fee application. | 0.60 | Charles H. Jeanfreau |
| 10/20/03 | Review drafting changes to UBS fee application. | 0.30 | Michael B. Hopkins |
| 10/21/03 | Telephone calls with T. Gewertz and M. Beeler. | 0.50 | Charles H. Jeanfreau |
| 10/21/03 | Revise fee application; confer with Charles Jeanfreau regarding revisions. | 0.90 | Martin Beeler |
| 10/22/03 | Review revised application. | 0.30 | Charles H. Jeanfreau |
| 10/22/03 | Reviewing C&B October fee estimate. | 0.30 | Martin Beeler |

UBS Securities LLC
Account No.: 700253.00054
Invoice No.: 60317298

| Date | Description | Hours | Timekeeper |
|------|-------------|-------|------------|
| 10/23/03 | Revise and edit fee application and exhibits thereto; telephone call with E. Wolff. | 2.80 | Charles H. Jeanfreau |

Fees:     $ 15,138.50

**Disbursements:**

| | |
|---|---|
| Scanning | 4.95 |
| Duplicating | 8.70 |

Total Disbursements:     13.65

Total Due:     $ 15,152.15

EMPLOYER IDENTIFICATION NUMBER: 53-0188411

UBS Securities LLC
Account No.: 700253.00054
Invoice No.: 60317298

## **Timekeeper Summary**

| Timekeeper | Title | Rate | Hours | Amount |
|---|---|---|---|---|
| Michael B. Hopkins | Partner | $690.00 | 2.10 | $1,449.00 |
| Charles H. Jeanfreau | Associate | $415.00 | 11.30 | $4,689.50 |
| Charles H. Jeanfreau | Associate | $375.00 | 1.00 | $375.00 |
| Martin Beeler | Associate | $375.00 | 21.80 | $8,175.00 |
| Martin Beeler | Associate | $300.00 | 1.50 | $450.00 |
| Total | | | 37.70 | $15,138.50 |

UBS Securities LLC
Account No.: 700253.00054
Invoice No.: 60317298

## Open Accounts at Covington & Burling

EMPLOYER IDENTIFICATION NUMBER: 53-0188411

B-174

UBS Securities LLC
Account No.: 700253.00054
Invoice No.: 60317298

# Remittance Page

Please Submit Remittance to:
    Covington & Burling
    1330 Avenue of the Americas
    New York, New York  10019

    Fed. Id. No.   53-0188411
    (212) 841-1000

**Wire Instructions**
Citibank FSB
1775 Pennsylvania Avenue, N.W.

    ABA: 2540-7011-6
    Account: 3700-1876
    Account Name: Covington & Burling
    *Please include invoice number with remittance*

|  |  |
|---|---|
| Client Name: | UBS Securities LLC |
| Matter Name: | Coram Healthcare Inc. |
| | |
| Account No. | 700253.00054 |
| Invoice No. | 60317298 |
| Invoice Date: | October 27, 2003 |
| Invoice Total: | $ 15,152.15 |

*PLEASE RETURN THIS PAGE WITH PAYMENT*

B-175

# COVINGTON & BURLING

1330 AVENUE OF THE AMERICAS
NEW YORK, NY 10019
TEL 212.841.1000
FAX 212.841.1010
WWW.COV.COM

NEW YORK
WASHINGTON, DC
LONDON
BRUSSELS
SAN FRANCISCO

INVOICE NUMBER
60122180
ACCOUNT NUMBER
700253.00054
DATE
December 18, 2000

UBS Warburg
535 Madison Avenue
New York, NY 10022

Reference:  Coram Healthcare Inc.

For professional services rendered through November 30, 2000:

| | |
|---|---:|
| Fees: | $ 7,040.00 |
| Disbursements: | 7.27 |
| Amount Due: | 7,047.27 |
| Previously Outstanding: | 3,606.38 |
| Total Due: | $ 10,653.65 |

UBS Warburg
Account No.: 700253.00054
Invoice No.: 60122180

| Date | Description | Hours | Timekeeper |
|------|-------------|-------|------------|
| 11/14/00 | Draft creditor's committee engagement letter; conferences with R. Dishner and MBH regarding same. | 1.50 | Charles H. Jeanfreau |
| 11/15/00 | Conference with R. Dishner regarding engagement letter; revise and edit engagement letter; telephone conference with P. Franklin. | 1.60 | Charles H. Jeanfreau |
| 11/20/00 | Revise Coram engagement letter; conference with R. Dishner regarding same. | 1.20 | Charles H. Jeanfreau |
| 11/21/00 | Review draft engagement letter and indemnification; telephone conference with CHJ regarding certain changes and issues; telephone conference with R. Dishner and CHJ regarding "disinterestedness" and timing of retention. | 2.20 | Michael B. Hopkins |
| 11/22/00 | Telephone conference with R. Dishner and S. Reynertson regarding retention process; review draft Sperry affidavit; telephone conference with C. Fortgang regarding retention status and process; voice mails to S. Reynertson and R. Dishner regarding Fortgang; telephone conference with S. Reynertson, R. Dishner and D. Bernstein (Davis Polk & Wardwell) regarding "disinterestedness" issues; review draft Dishner affidavit. | 4.70 | Michael B. Hopkins |
| 11/24/00 | Telephone conference with R. Dishner regarding "disinterestedness" requirement; review draft affidavit and give comments to R. Dishner. | 1.20 | Michael B. Hopkins |
| 11/27/00 | Review draft Dishner affidavit; telephone conference with R. Dishner regarding affidavit and "disinterestedness". | 1.40 | Michael B. Hopkins |
| 11/27/00 | Draft alternate Coram indemnification letter. | 0.90 | Charles H. Jeanfreau |
| 11/28/00 | Telephone conference with S. Reynertson regarding engagement letter issue. | 0.10 | Michael B. Hopkins |
| 11/30/00 | Review "talking points" regarding engagement testimony; telephone conference with R. Dishner regarding engagement testimony. | 0.60 | Michael B. Hopkins |

Fees:                          $ 7,040.00

**Disbursements:**
Duplicating                         5.25
Long Distance Calls                 2.02

Total Disbursements:                7.27

Total Due:                     $ 7,047.27

EMPLOYER IDENTIFICATION NUMBER: 53-0188411

UBS Warburg
Account No.: 700253.00054
Invoice No.: 60122180

## Timekeeper Summary

| Timekeeper | Title | Rate | Hours | Amount |
|---|---|---|---|---|
| Michael B. Hopkins | Partner | $550.00 | 10.20 | $5,610.00 |
| Charles H. Jeanfreau | Associate | $275.00 | 5.20 | $1,430.00 |
| Total | | | 15.40 | $7,040.00 |

EMPLOYER IDENTIFICATION NUMBER: 53-0188411

B-178

UBS.Warburg
Account No.: 700253.00054
Invoice No.: 60122180

## Open Accounts at Covington & Burling

| Date | Invoice No. | Fee | Charges | Total | Credits | Balance |
|------|-------------|-----|---------|-------|---------|---------|
| 11/13/00 | 60118659 | $3,580.00 | $26.38 | $3,606.38 | $0.00 | $3,606.38 |

UBS Warburg
Account No.: 700253.00054
Invoice No.: 60122180

# Remittance Page

Please Submit Remittance to:
    Covington & Burling
    1330 Avenue of the Americas
    New York, New York  10019

    Fed. Id. No.  53-0188411
    (212) 841-1000

    **<u>Wire Instructions</u>**
    Citibank FSB
    1775 Pennsylvania Avenue, N.W.

    ABA: 2540-7011-6
    Account: 3700-1876
    Account Name: Covington & Burling
    *Please include invoice number with remittance*

| | |
|---|---|
| Client Name: | UBS Warburg |
| Matter Name: | Coram Healthcare Inc. |
| | |
| Account No. | 700253.00054 |
| Invoice No. | 60122180 |
| Invoice Total: | $ 7,047.27 |

*PLEASE RETURN THIS PAGE WITH PAYMENT*

B-180

# COVINGTON & BURLING

1330 AVENUE OF THE AMERICAS
NEW YORK, NY 10019
TEL 212.841.1000
FAX 212.841.1010
WWW.COV.COM

NEW YORK
WASHINGTON, DC
LONDON
BRUSSELS
SAN FRANCISCO

INVOICE NUMBER
60123940
ACCOUNT NUMBER
700253.00054
DATE
January 12, 2001

UBS Warburg
535 Madison Avenue
New York, NY 10022

Reference:  Coram Healthcare Inc.

For professional services rendered through December 31, 2000:

| | |
|---|---|
| Fees: | $ 4,675.00 |
| Disbursements: | 9.90 |
| Amount Due: | 4,684.90 |
| Previously Outstanding: | 10,653.65 |
| Total Due: | $ 15,338.55 |

UBS Warburg
Account No.: 700253.00054
Invoice No.: 60123940

| Date | Description | Hours | Timekeeper |
|------|-------------|-------|------------|
| 12/07/00 | Telephone conference with R. Dishner regarding valuation; review valuation analysis. | 2.30 | Michael B. Hopkins |
| 12/08/00 | Review draft valuation analysis; telephone conference with R. Dishner and P. Pucciarelli regarding draft valuation analysis; telephone conferences with T. Gewirtz (Wachtell Lipton) and UBS Warburg in-house counsel regarding transmission of draft valuation report; review court order. | 6.00 | Michael B. Hopkins |
| 12/12/00 | Telephone conference with R. Dishner regarding aspects of valuation report. | 0.20 | Michael B. Hopkins |

Fees:                    $ 4,675.00

**Disbursements:**
Duplicating                    9.90

Total Disbursements:        9.90

Total Due:              $ 4,684.90

EMPLOYER IDENTIFICATION NUMBER: 53-0188411

UBS Warburg
Account No.: 700253.00054
Invoice No.: 60123940

## Timekeeper Summary

| Timekeeper | Title | Rate | Hours | Amount |
|---|---|---|---|---|
| Michael B. Hopkins | Partner | $550.00 | 8.50 | $4,675.00 |
| Total | | | 8.50 | $4,675.00 |

EMPLOYER IDENTIFICATION NUMBER: 53-0188411

B-183

UBS Warburg
Account No.: 700253.00054
Invoice No.: 60123940

## Open Accounts at Covington & Burling

| Date | Invoice No. | Fee | Charges | Total | Credits | Balance |
|------|-------------|-----|---------|-------|---------|---------|
| 11/13/00 | 60118659 | $3,580.00 | $26.38 | $3,606.38 | $0.00 | $3,606.38 |
| 12/18/00 | 60122180 | $7,040.00 | $7.27 | $7,047.27 | $0.00 | $7,047.27 |

UBS Warburg
Account No.: 700253.00054
Invoice No.: 60123940

## Remittance Page

Please Submit Remittance to:
Covington & Burling
1330 Avenue of the Americas
New York, New York  10019

Fed. Id. No.  53-0188411
(212) 841-1000

**Wire Instructions**
Citibank FSB
1775 Pennsylvania Avenue, N.W.

ABA: 2540-7011-6
Account: 3700-1876
Account Name: Covington & Burling
*Please include invoice number with remittance*

|  |  |
|---|---|
| Client Name: | UBS Warburg |
| Matter Name: | Coram Healthcare Inc. |
| Account No. | 700253.00054 |
| Invoice No. | 60123940 |
| Invoice Total: | $ 4,684.90 |

*PLEASE RETURN THIS PAGE WITH PAYMENT*

B-185

# COVINGTON & BURLING

1330 AVENUE OF THE AMERICAS
NEW YORK, NY 10019
TEL 212.841.1000
FAX 212.841.1010
WWW.COV.COM

NEW YORK
WASHINGTON, DC
LONDON
BRUSSELS
SAN FRANCISCO

INVOICE NUMBER
60129268
ACCOUNT NUMBER
700253.00054
DATE
March 13, 2001

UBS Warburg
535 Madison Avenue
New York, NY 10022

Reference:  Coram Healthcare Inc.

For professional services rendered through February 28, 2001:

| | |
|---|---:|
| Fees: | $ 55.00 |
| Disbursements: | 0.00 |
| Amount Due: | 55.00 |
| Previously Outstanding: | 15,338.55 |
| Total Due: | $ 15,393.55 |

UBS Warburg
Account No.: 700253.00054
Invoice No.: 60129268

| Date | Description | Hours | Timekeeper |
|------|-------------|-------|------------|
| 01/05/01 | Telephone conference with R. Dishner regarding status. | 0.10 | Michael B. Hopkins |

|  | Fees: | $ 55.00 |
|--|-------|---------|
|  | Total Due: | $ 55.00 |

UBS Warburg
Account No.: 700253.00054
Invoice No.: 60129268

## Timekeeper Summary

| Timekeeper | Title | Rate | Hours | Amount |
|---|---|---|---|---|
| Michael B. Hopkins | Partner | $550.00 | 0.10 | $55.00 |
| Total | | | 0.10 | $55.00 |

UBS Warburg
Account No.: 700253.00054
Invoice No.: 60129268

## Open Accounts at Covington & Burling

| Date | Invoice No. | Fee | Charges | Total | Credits | Balance |
|---|---|---|---|---|---|---|
| 01/12/01 | 60123940 | $4,675.00 | $9.90 | $4,684.90 | $0.00 | $4,684.90 |
| 11/13/00 | 60118659 | $3,580.00 | $26.38 | $3,606.38 | $0.00 | $3,606.38 |
| 12/18/00 | 60122180 | $7,040.00 | $7.27 | $7,047.27 | $0.00 | $7,047.27 |

UBS Warburg
Account No.: 700253.00054
Invoice No.: 60129268

# Remittance Page

Please Submit Remittance to:
    Covington & Burling
    1330 Avenue of the Americas
    New York, New York  10019

    Fed. Id. No.  53-0188411
    (212) 841-1000

    **Wire Instructions**
    Citibank FSB
    1775 Pennsylvania Avenue, N.W.

    ABA: 2540-7011-6
    Account: 3700-1876
    Account Name: Covington & Burling
    *Please include invoice number with remittance*

| | |
|---|---|
| Client Name: | UBS Warburg |
| Matter Name: | Coram Healthcare Inc. |
| | |
| Account No. | 700253.00054 |
| Invoice No. | 60129268 |
| Invoice Total: | $ 55.00 |

*PLEASE RETURN THIS PAGE WITH PAYMENT*

# Exhibit D - Biographies



CORAM UBS EXHIBITS B-C V.6.DOC

# Biographies

**WILLIAM C. MCGAHAN**

William C. McGahan joined UBS in March, 1999 as Managing Director and Deputy Global Head. Prior to joining UBS, Mr. McGahan was employed by Salomon Smith Barney from 1988 in the Healthcare Group.  Mr. McGahan graduated from the Colgate Darden Graduate School of Business in 1988 with an M.B.A., where he received the Faculty Award for Academic Excellence.  He received a B.S. degree in Economics from Southern Methodist University.

**J. SOREN REYNERTSON**

Soren Reynertson is an Executive Director in UBS's Restructuring Group in New York.  Prior to joining UBS, Mr. Reynertson was a crisis manager for Jay Alix & Associates where he focused on stabilizing companies in financial distress and managing them to generate cash. From 1994 to 1996, Mr. Reynertson worked with Price Waterhouse's Corporate Recovery Group in New York.  Mr. Reynertson holds an MBA from Columbia Business School and a BA in Economics from Emory University.

**ABRAHAM T. HAN**

Abe Han is an Associate Director in UBS's Restructuring Group in New York.  Prior to joining the Restructuring Group, he worked with the Financial Sponsors coverage group and High Yield Origination group.  Prior to joining UBS, Mr. Han was the Steel Division Manager for Hyundai Corporation (USA) where he directed the sales and operations of metal imports into the United States.  Mr. Han holds an MBA in Finance and Accounting from the Kellogg Graduate School of Management at Northwestern University and a BA from Rutgers University.

**MICHAEL T. SULLIVAN**

Michael Sullivan is an Associate Director in UBS's Restructuring Group in New York.  Prior to joining UBS, Mr. Sullivan worked as a senior credit analyst with Hypo Bank AG in New York where he had responsibility for a portfolio of asset-backed securitization, structured trade, and international project finance transactions in North and South America in sectors including telecom, power, oil and gas, mining, and aircraft.  Mr. Sullivan holds an MBA from the Tuck School of Business at Dartmouth College, an MALD from the Fletcher School of Law and Diplomacy at Tufts University and an AB from Bowdoin College.



UBS Investment Bank

## CERTIFICATE OF SERVICE

I, Etta R. Wolfe, do hereby certify that on November 3, 2003 a copy of the foregoing

**First and Final Application of UBS Securities LLC, as Financial Advisor to the Official**

**Unsecured Creditors' Committee, for Final Allowance of Compensation for Professional**

**Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred for the**

**Period From November 21, 2000 through October 27, 2003** was served on the parties on the

attached list and in the manner indicated thereon.

Etta R. Wolfe (Bar No. 4164)

## CORAM HEALTHCARE CORP. and CORAM, INC.
### SERVICE LIST

**Via Hand Delivery**

Don A. Beskrone, Esquire
Office of the U.S. Trustee
J. Caleb Boggs Federal Building
844 King Street, Lockbox 35
Wilmington, DE  19801

*(Counsel to the Debtors)*
Pachulski Stang Ziehl Young & Jones
Laura Davis Jones, Esquire
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE  19899-8705

*(Counsel to Coram Resources Network, Inc., Coram Independent Practice Association, Inc.)*
Richard H. Morse, Esquire
Edwin J. Harron, Esquire
Edmon L. Morton, Esquire
Pauline K. Morgan, Esquire
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19899-0391

*(Counsel to Official Committee of Equity Security Holders)*
Mark Minuti, Esquire
Saul, Ewing, Remick & Saul, LLP
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE  19899

**Via First Class Mail:**

*(Debtor)*
Allen Marabito
Coram Healthcare, Inc.
1125 Seventeenth Street  Suite 2100
Denver, CO. 80202

*(Counsel to Debtors)*
David M. Friedman, Esquire
Athena Foley, Esquire
Adam L. Shiff, Esquire
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway, 22nd Floor
New York, NY  10019

*(Counsel to Senior Noteholders)*
Alan B. Miller, Esquire
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153

*(DIP Lender)*
Carol Morrison, Esquire
Schulte Roth & Zabel, LLP
900 Third Avenue
New York, NY  10022

*(Counsel to Equity Committee)*
Richard F. Levy, Esquire
Theodore J. Low, Esquire
Benjamin D. Schwartz, Esquire
Brandy A. Sargent, Esquire
Altheimer & Gray
10 South Wacker Drive, Suite 4000
Chicago, IL  60606

RLF1-2424035-1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CORAM HEALTHCARE CORP. and | : | Case No. 00-3299 (MFW) |
| CORAM, INC., | : | (Jointly Administered) |
| | : | |
| Debtors. | : | **Docket Reference No. 3249** |
| | : | |

---

**OBJECTION OF THE CHAPTER 11 TRUSTEE TO [DOCKET NO. 3249]
THE FIRST AND FINAL FEE APPLICATION OF UBS SECURITIES
LLC, AS FINANCIAL ADVISOR TO THE OFFICIAL UNSECURED
CREDITORS' COMMITTEE, FOR FINAL ALLOWANCE OF
COMPENSATION FOR PROFESSIONAL SERVICES RENDERED
AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES
INCURRED FOR THE PERIOD
NOVEMBER 21, 2000 THROUGH OCTOBER 27, 2003**

---

Arlin M. Adams, the Chapter 11 Trustee (the "Trustee") of the bankruptcy estates

of Coram Healthcare Corp. and Coram, Inc. (collectively, the "Debtors"), by and through his

undersigned counsel, hereby objects to the First and Final Fee Application of UBS Securities

LLC, as Financial Advisors to the Official Unsecured Creditors' Committee, for Final Allowance

of Compensation for Professional Services Rendered and Reimbursement of Actual and

Necessary Expenses for the Period November 21, 2000 Through October 27, 2003 (the "Fee

Application"). In support thereof, the Trustee states as follows:

### INTRODUCTION

1.      On August 22, 2000, the United States Trustee appointed the Official Committee

of Unsecured Creditors (the "Creditors' Committee") pursuant to Section 1102 of Chapter 11 of

Title 11 of the United States Code §§ 101, *et seq.* (the "Bankruptcy Code").

2.       On December 1, 2000, the Court entered an Order (the "Retention Order") authorizing the Creditors' Committee to retain and employ UBS Securities LLC (formally known as UBS Warburg LLC) ("UBS"), effective as of November 21, 2000, as its financial advisor.  A true and correct copy of the Retention Order is attached as Exhibit A to the Fee Application and is incorporated herein by reference in its entirety.

3.       UBS was also retained pursuant to the terms of that certain letter agreement between the Creditors' Committee and UBS, a true and correct copy of which is attached as Exhibit A to the Fee Application and incorporated herein by reference in its entirety (the "Letter Agreement").

4.       In its Fee Application, UBS requested allowance of professionals fees and reimbursement of expenses as follows: (i) $700,000 for a valuation fee wholly contingent upon the confirmation of a plan of reorganization proposed by the Debtors (the "Valuation Fee"); (ii) $47,085.85 for expenses incurred (the "Expense Reimbursement"); and (iii) $450,000.00 for monthly fees of $50,000.00 per month for a total of nine months (the "Monthly Fees").

5.       For the reasons stated below, the objects to the allowance of the fees and expenses sought by UBS.

**A.       THE COURT SHOULD NOT ALLOW THE VALUATION FEE.**

6.       UBS also seeks allowance of a contingent valuation fee of $700,000 (the "Valuation Fee").  This should be denied because as the Retention Order and the Letter Agreement make clear, payment of such fee was contingent upon confirmation of a plan of reorganization proposed by the Debtors.

2

B-196

7.    According to Retention Order, "the valuation fee of $700,000 is to be paid to [UBS] at the time of the effective date of the Debtors' plan of reorganization." (Retention Order, p. 2.)  Similarly, the Letter Agreement provides as follows:

> Fees:  For [UBS's] services hereunder, the Committee, subject to the approval of the Bankruptcy Court pursuant to the Retention Order or otherwise, shall cause the Company to pay to [UBS] on the effective date of the Company's plan of reorganization seven hundred thousand dollars ($700,000.00).[1]

(Letter Agreement, ¶ 3(a)).

8.    As this Court is aware, the Court denied confirmation of the Debtors' first and second proposed plans of reorganization.  Indeed, the only proposed plans of reorganization *sub judice* are those proposed by the Trustee and the Official Committee of Equity Security Holders of Coram Healthcare Corp.

9.    UBS did not earn the Valuation Fee because the condition precedent – confirmation of a plan proposed by the Debtors – did not occur.  Accordingly, the Court should not allow UBS's contingent Valuation Fee of $700,000.00 as such fee is unreasonable.

**B.    THE COURT SHOULD NOT ALLOW REIMBURSEMENT FOR SERVICES RENDERED BY COVINGTON & BURLING**

10.    The Court should not allow the reimbursement of $30,545.70 for monies paid by UBS to Convington & Burling, UBS's counsel, because the retention and scope of such services were not approved in advance by the Bankruptcy Court as required by the Letter Agreement.

11.    The Letter Agreement provides in part:

> The Committee, subject to the approval of the Bankruptcy Court, shall cause the Company to reimburse [UBS], upon [UBS's] request from time to time, for the documented out of pocket expenses reasonably incurred by [UBS] in performing services

---

[1] The Letter Agreement defines "Company" as Coram Healthcare, Inc. and its affiliates. (*See* Letter Agreement, p. 1.)

3