> pursuant to this Agreement (including reasonable fees and disbursement of [UBS's] counsel, if any, and provided that retention of counsel by [UBS] and the scope of work of such counsel are approved in advance by the Bankruptcy Court).

(Letter Agreement, ¶ 4.)

12.     The Court neither approved in advance the retention of counsel by UBS nor the scope of such counsel's work.

## C.     THE COURT SHOULD NOT ALLOW MONTHLY FEES FOR MONTHS DURING WHICH UBS DID NOT PERFORM ANY WORK.

13.     UBS requests the allowance of fees of $50,000.00 per month over the nine month period beginning March 21, 2001 through December 20, 2001.

14.     As reflected by UBS's time diaries, UBS did not perform any services for the Creditors' Committee during six of those nine months.

15.     Compensation of $50,000.00 per month is unreasonable for months during which UBS did not perform any services for the Creditors' Committee.  Therefore, the Trustee objects to the allowance of $300,000.00 of the $450,000.00 in Monthly Fees sought by UBS.

## D.     RESERVATION OF RIGHTS

16.     UBS did not serve the Trustee with the Fee Application.  As a result, the Trustee reserves the right to amend or supplement his objections to the Fee Applications prior to the hearing on the Fee Application.

**[THIS SPACE INTENTIONALLY BLANK]**

4

WHEREFORE, the Trustee respectfully requests that the Court (i) deny allowance of the

Valuation Fee ($700,000.00); (ii) deny UBS reimbursement of monies paid to Covington &

Burling ($30,545.70); (iii) deny allowance of the Monthly Fees for the months where UBS did

not perform any services to the Creditors' Committee ($300,000.00); and (iv) grant such other

and further relief that this Court deems just and proper under the circumstances.


                                    WEIR & PARTNERS LLP

Dated:   November 24, 2003          By:   /s/ Kenneth E. Aaron
                                          Kenneth E. Aaron (#4043)
                                          Salene R. Mazur
                                          824 Market Street Mall, Suite 1001
                                          P.O. Box 708
                                          Wilmington, Delaware 19899
                                          (302) 652-8181 (telephone)
                                          (302) 652-8909 (facsimile)

                                          -and-

                                          SCHNADER HARRISON SEGAL
                                          & LEWIS LLP
                                          Barry E. Bressler
                                          Richard A. Barkasy
                                          Michael J. Barrie
                                          1600 Market Street, Suite 3600
                                          Philadelphia, Pennsylvania 19103-7286
                                          (215) 751-2000 (telephone)
                                          (215) 751-2205 (facsimile)

                                          Co-Counsel to Arlin M. Adams,
                                              Chapter 11 Trustee for Coram Healthcare
                                              Corp. and Coram, Inc.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CORAM HEALTHCARE CORP. and | : | Case No. 00-3299 (MFW) |
| CORAM, INC., | : | (Jointly Administered) |
| | : | |
| Debtors. | : | **Docket Reference No. _____, 3249** |
| | : | |

---

**ORDER SUSTAINING [DOCKET NO. _____] OBJECTION OF
THE CHAPTER 11 TRUSTEE TO [DOCKET NO. 3249] THE FIRST
AND FINAL FEE APPLICATION OF UBS SECURITIES LLC, AS
FINANCIAL ADVISOR TO THE OFFICIAL UNSECURED
CREDITORS' COMMITTEE, FOR FINAL ALLOWANCE OF
COMPENSATION FOR PROFESSIONAL SERVICES RENDERED
AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES
INCURRED FOR THE PERIOD
NOVEMBER 21, 2000 THROUGH OCTOBER 27, 2003**

---

AND NOW, this _____ day of _____, 2003, upon

consideration of the First and Final Fee Application of UBS Securities LLC, as Financial

Advisors to the Official Unsecured Creditors' Committee, for Final Allowance of Compensation

for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses for

the Period November 21, 2000 Through October 27, 2003 (the "Fee Application"); and upon

further consideration of the Trustee's[1] objections thereto (the "Objection"); and the Court finding

that: (a) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meanings ascribed to them in the
Objection.

*Docket Reference No. 3249*
*Filed on November 3, 2003*

PHDATA 1159459_1

core proceeding pursuant to 28 U.S.C. §§ 157(b)(2), (c) a condition precedent to payment of the

Valuation Fee was confirmation of a plan of reorganization proposed by the Debtors, (d) the

Court has not confirmed any plan of reorganization proposed by the Debtors, (e) the Letter

Agreement required UBS to seek and receive advanced approval from the Bankruptcy Court for

the retention of counsel in these bankruptcy cases, (f) the Court never approved the retention of

counsel by UBS, and (g) payment of the Monthly Fees during the months where UBS did not

render services to the Creditors' Committee is unreasonable; and after due deliberation thereon

and sufficient cause appearing therefore, it is hereby

   ORDERED, that the Objection is **SUSTAINED** and the Fee Application is

**OVERRULED** to the extent provided herein; and it is further

   ORDERED, that the Valuation Fee is **DISALLOWED** in its entirety; and it is

further

   ORDERED, that the reimbursement of expenses incurred to the extent such

expenses were for payment to counsel for UBS is **DISALLOWED** in its entirety; and it is

further

   ORDERED, that the Monthly Fees are **ALLOWED** in the amount $150,000.

           ———————————————

           Mary F. Walrath, U.S.B.J.

PHDATA 1159459_1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CORAM HEALTHCARE CORP. and | : | Case No. 00-3299 (MFW) |
| CORAM, INC., | : | (Jointly Administered) |
| | : | |
| Debtors. | : | **Docket Reference No. 3249** |
| | : | |

## CERTIFICATE OF SERVICE

I, Salene R. Mazur, hereby certify that on this 24th day of November, 2003, I did cause a true and correct copy of the following

- **OBJECTION OF THE CHAPTER 11 TRUSTEE TO [DOCKET NO. 3249] THE FIRST AND FINAL FEE APPLICATION OF UBS SECURITIES LLC, AS FINANCIAL ADVISOR TO THE OFFICIAL UNSECURED CREDITORS' COMMITTEE, FOR FINAL ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE PERIOD NOVEMBER 21, 2000 THROUGH OCTOBER 27, 2003**

to be served via first class mail and/or e-mail upon the following parties on the attached Service Lists.

WEIR & PARTNERS LLP

By:  /s/ Salene R. Mazur
Kenneth E. Aaron (#4043)
Salene R. Mazur
(302) 652-8181 (telephone)
(302) 652-8909 (facsimile)
E-Mail: SMazur@weirpartners.com
*Co-Counsel to Arlin M. Adams,*
*Chapter 11 Trustee*

B-202

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          .    Chapter 11
                                .
CORAM HEALTHCARE CORP., and     .    Case Nos. 00-3299 and
CORAM, INC.,                    .    00-3300(MFW)
                                .
          Debtors.              .    Oct. 18, 2004 (11:30 a.m.)
                                .    (Wilmington)

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY COURT JUDGE

FILED
2004 NOV 18 PM 10: 23
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

B-203

5

1    THE COURT:  Thank you.

2    MR. BARKASY:  Thank you, Your Honor.

3    MR. LEVY (TELEPHONIC):  Your Honor, Richard Levy

4    for the Equity Committee.  May I be heard briefly?

5    THE COURT:  Yes, you may.

6    MR. LEVY (TELEPHONIC):  Thank you.  First, the

7    Equity Committee did join in the Trustee's objection.  I will

8    not repeat any of that.  I would just add to what Mr. Barkasy

9    said that here we have an agreement drawn by extremely

10    competent counsel who are now attempting to put in parol

11    evidence of what was intended in the form of an affidavit

12    from Mr. Rinardson (phonetical).  This is a large amount, all

13    of which will be paid by the stockholders.  We agree with Mr.

14    Barkasy that it should not be granted in this form but rather

15    be heard at a later date as he requested.  Thank you.

16    THE COURT:  All right.  I'll hear a reply.

17    MR. HALLER:  If I may reply briefly?

18    THE COURT:  Yes.

19    MR. HALLER:  Thank you.  On the $700,000 fee --

20    MR. LEVY (TELEPHONIC):  I'm sorry, a little louder

21    please.

22    MR. HALLER:  Yes, certainly.  On the $700,000 fee I

23    think Your Honor understands the issue there.  Any of the

24    plans of reorganization proposed by the various parties were

25    going to be the company's plan of reorganization.  The

6

1    question is who proposed it and the agreement certainly

2    doesn't provide that the fee would be due and payable

3    dependent on who proposed a particular plan of

4    reorganization.

5        THE COURT:  Well, is it that clear from the -- Is

6    it that clear?  The company's plan of reorganization?

7        MR. HALLER:  I do think it is clear, Your Honor,

8    for a variety of reasons, and I'm also prepared and Mr.

9    Rinardson is in the courtroom and could testify, and I can

10   make a proffer as to what his testimony would be, but I think

11   that there's no question in anybody's mind that the date on

12   which the fee would become payable was simply a question of

13   timing as to not requiring the company to fund the fee until

14   the plan of reorganization went effective.  It was never a

15   question of making the fee contingent on whose plan won, and

16   I think it's important, Your Honor, that, you know, that we

17   also take note of the fact that UBS's valuation work was

18   consistent with the valuation work that Your Honor ultimately

19   credited and exactly contrary to the valuation work that the

20   Lloyd & Touche proposed.  So that the work was done.  It was

21   important work for the Committee.  The Committee needed that

22   work done, and I think it would be an incredibly unfair

23   reading to suggest that this agreement says whether or not

24   they get paid depends on who proposed the plan, and it would

25   also --

LEXSEE

**EDWARD T. HANLEY, et al., Plaintiffs, -against- SEVILLA RESTAURANT & BAR d/b/a SEVILLA RESTAURANT, Defendant.**

**96 Civ. 3193 (LAK)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**1997 U.S. Dist. LEXIS 652**

**January 23, 1997, Decided**
**January 24, 1997, FILED**

**DISPOSITION:** [*1] Judgment entered declaring that plaintiffs have no right to audit defendant's books and records or to collect or seek to collect any additional contributions for the period July 1, 1993 through March 31, 1995. Complaint dismissed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff trustees sought a declaration that they were entitled to a payroll audit of the books and records of defendant company for the period July 1, 1993 through December 31, 1994, and recovery of any deficiencies determined to be due and owing pursuant to the audit.

**OVERVIEW:** The company operated a restaurant and was a signatory to collective bargaining agreements with the union. Pursuant to those agreements, the company was bound to the terms of a trust creating the funds. The trust agreement empowered the trustees to audit contributing employers. After such an audit, unpaid contributions were discovered. When litigation began, the trustees faxed to the company a delinquency sheet for June 1989 through March 1995. An attached schedule indicated that the figures from July 1993 to March 1995 were estimated. Following the execution of a Memorandum of Agreement, the matter was dismissed with prejudice. The trustee claimed that they preserved their right to audit and seek deficiencies with respect to the period of July 1993 through March 1995. The court disagreed, holding that the settlement agreement was intended to and did settle all of the trustees' claims for contributions. The court found that any discussion of future audits was in very general terms and the trustees' parol evidence to the contrary was unpersuasive.

**OUTCOME:** The complaint was dismissed and judgment was entered against the trustees in their action to audit the company's books and records and collect any additional contributions owing for the period July 1, 1993 through March 31, 1995.

**CORE TERMS:** audit, parol evidence, settlement, subjective, estimated, settle, sheet, settlement agreement, parol evidence rule, declaration, negotiated, ambiguous, pretrial, liquidated damages, unpersuasive, delinquency, reserved, audited

**LexisNexis(R) Headnotes**

*Contracts Law > Contract Interpretation > Parol Evidence Rule*
[HN1] The parol evidence rule prohibits consideration of extrinsic evidence to vary, contradict, add to or explain the terms of a completely integrated written instrument. If such an instrument is ambiguous, however, parol evidence is admissible to help explain the ambiguity. Moreover, the court assumes that the parol evidence rule does not preclude consideration of the circumstances in which an agreement is executed to the extent that the circumstances shed light upon its meaning.

*Contracts Law > Contract Interpretation > Interpretation Generally*
[HN2] In determining the intention of the parties, it is the objective manifestations of their intent to one another that count, not their unexpressed subjective views. A contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties. A contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent.

**COUNSEL:** Appearances:

For Plaintiffs: Vincent T. Pitta, Annmarie P. Venuti, RICHARDS & O'NEIL.

For Defendant: Joel B. Mayer.

**JUDGES:** Lewis A. Kaplan, United States District Judge

**OPINIONBY:** Lewis A. Kaplan

**OPINION:**

### MEMORANDUM OPINION

LEWIS A. KAPLAN, *District Judge.*

This is an action by the trustees of the Hotel Employees and Restaurant Employees International Union Pension and Welfare Fund and the Hotel Employees and Restaurant Employees International Union Pension Fund (the "Funds"), Taft-Hartley multi-employer welfare and pension funds, for (a) a declaration that they are entitled to a payroll audit of the books and records of the defendant for the period July 1, 1993 through December 31, 1994 pursuant to the Employee Retirement Income Security Act of 1974, as amended, <u>29 U.S.C. § 1461</u>, and Section 301 of the Labor-Management Relations Act, <u>29 U.S.C. § 185</u>, and (b) recovery of any deficiencies determined to be due and owing pursuant to said audit, [*2] plus interest, audit costs, and attorneys' fees. The nub of the dispute is the defendant's contention that the Funds are precluded from seeking such relief by a settlement agreement pursuant to which an earlier, similar litigation was settled. The case was tried to the Court on a stipulated record consisting of the pretrial order, exhibits, and affidavits of the two attorneys who negotiated the previous settlement agreement.

*Facts*

The defendant, a New York corporation, operates a restaurant located on Charles Street in Manhattan and has been signatory to successive collective bargaining agreements with Local 100, Hotel Employees & Restaurant Employees, AFL-CIO, covering the periods July 1989 to May 1992 and June 1992 through May 1995. Pursuant to those agreements, defendant was obliged to make contributions to and was bound to the terms of the Fourth Amended and Restated Agreement and Declaration of Trust creating the Funds. The trust agreement empowered the Funds to audit the books and records of contributing employers in order to ensure that the contractually required contributions were made.

The Funds performed an audit (the "1993 Audit") of defendants books and records for [*3] the period January 1, 1989 through June 30, 1993. On April 12, 1995,

they sued defendant in this Court (No. 95 Civ. 2288 (RPP)) to recover (a) monies due pursuant to the findings of the 1993 Audit, and (b) unpaid contributions for the period up to and including January 1995. (Pretrial Order ("PTO"), § III, P 7; PX 3, prayer for relief).

After the commencement of litigation, the parties' attorneys began discussing settlement. (Mayer Aff. PP 3-8) On May 2, 1995, the Funds faxed defendant's counsel a "delinquency fact sheet" as of that date indicating that $ 47,572.78 was due for the period June 1989 through March 1995, including interest, liquidated damages, late charges and audit costs. (*Id.* P 5 & Ex. A) The schedule attached to the fact sheet indicated that the figures for the period July 1993 through March 1995 reflected in the fact sheet were estimated rather than audited numbers. (*Id.* Ex. A, at 2)

On May 10, 1995, the Funds' counsel transmitted to Joel Mayer, defendant's counsel, a draft Memorandum of Agreement which, with minor changes not relevant to the issues here, was duly executed a short time later. (*Id.* PP 6-9; PTO § III, P 8) The operative parts of the agreement [*4] were as follows:

> "1. The HEREIU Funds have determined, subject to the provisions in paragraph '8' of the Memorandum of Agreement . . . , that the Employer's liability to the Funds for past due contributions and interest . . . *for the period from June 1, 1989, up to and including March 31, 1995, totals $ 47,572.78, inclusive of interest, liquidated damages, late fees, and audit costs, which have accrued through April 27, 1995*. However, the parties have agreed to settle this matter for the sum of $ 40,411.08.

> "2. The HEREIU Funds have determined that to accept such a proposal will facilitate recovery of their claim without the need for further proceedings and is in the best interests of the Participants and Beneficiaries of the HEREIU Funds.

> * * *

> "13. The HEREIU Funds reserve the right to audit the books and records of the Employer for periods subsequent to the audit periods herein, upon seven (7) days' notice . . ." (PX 4) (emphasis added)

Following the execution of the Memorandum of Agreement, Judge Patterson dismissed the action with prejudice. (DX 1)

*Discussion*

The Funds claim that they preserved their right to audit and seek deficiencies with respect to [*5] the period July 1993 through March 1995 when they settled the prior action. The only evidence offered in support of their position is the affidavit of Denise M. Clark, the attorney who negotiated the settlement. Clark makes essentially two arguments. She contends first that she had extensive discussions with Mayer before the agreement was signed and that "all parties understood" that the settlement covered only the 1993 audit "and that all periods subsequent to June 30, 1993 would be subject to an audit." (Clark Aff. P 9) Second, she maintains that paragraph 13 of the Memorandum of Agreement reserved the Funds' right to audit for periods outside those covered by the 1993 Audit. (*Id.* PP 10-11) Clark's contentions are unpersuasive.

[HN1] The parol evidence rule prohibits consideration of extrinsic evidence to vary, contradict, add to or explain the terms of a completely integrated written instrument. n1 *Marine Midland Bank-Southern v. Thurlow,* 53 N.Y.2d 381, 387, 442 N.Y.S.2d 417, 419, 425 N.E.2d 805 (1981). If such an instrument is ambiguous, however, parol evidence is admissible to help explain the ambiguity. *Investors Insurance Co. of America v. Dorinco Reinsurance Co.,* 917 F.2d 100, 104 [*6] (2d Cir. 1990). Moreover, the Court assumes that the parol evidence rule does not preclude consideration of the circumstances in which an agreement is executed to the extent that the circumstances shed light upon its meaning. *See Firemen's Fund Insurance Cos. v. Siemens Energy & Automation, Inc.,* 1996 U.S. Dist. LEXIS 19043, No. 93 Civ. 4669 (LAK), 1996 WL 737200, at *6 (S.D.N.Y. Dec. 24, 1996).

n1 The Court finds that the Memorandum of Agreement was a complete integration of the parties' arrangement

Here the record makes plain that the Funds had audited the defendant's books only through June 1993, but had estimated the delinquency for the period July 1993 through March 1995. Notwithstanding Section 1 of the Memorandum of Agreement, which seems so clearly to have settled all claims for contributions through March 1995, that circumstance perhaps lends just enough support to the plaintiffs' reading of Section 13 to render the agreement ambiguous as to whether the Funds retained the right to audit the defendant [*7] for the post-June 1993 period. The Court therefore considers the parol evidence proffered by the plaintiffs. The parol evidence, however, is not particularly helpful to them.

The fundamental issue is whether the parties intended to settle the Funds' claim for the period July 1, 1993 through March 31, 1995, notwithstanding that the Funds were operating on the basis of estimated figures. Clark states that she and Mayer discussed "contiguous [sic] audits that would be performed by the Funds" and argues that the parties understood that the post-June 1993 period would be subject to audit. Of course, there never was any doubt that the Funds would audit the defendant for later periods -- the issue is whether there was agreement that the first open period would commence on July 1, 1993 or on April 1, 1995. (Clark Aff. P 10) This Clark does not claim to have discussed, except to the extent that such a claim may be implicit in her contention as to the parties' understanding. Mayer, for his part, does not deny that the subject of future audits came up, but he too is silent as to whether there was any discussion of the earliest time period that would be open to such a future audit. (Mayer [*8] Aff. P 11)

[HN2] In determining the intention of the parties, it is the objective manifestations of their intent to one another that count, not their unexpressed subjective views. As Judge Learned Hand wrote long ago:

> "A contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties. A contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent." *Hotchkiss v. National City Bank of New York,* 200 F. 287, 293 (S.D.N.Y. 1911), *aff'd,* 201 F. 664 (2d Cir. 1912), *aff'd sub nom. National City Bank v. Hotchkiss,* 231 U.S. 50, 58 L. Ed. 115, 34 S. Ct. 20 (1913). *Accord, Mencher v. Weiss,* 306 N.Y. 1, 7-8, 114 N.E.2d 177 (1953).

Hence, Clark's own subjective intention is quite beside the point, and her contention concerning Mayer's subjective intention must be discarded because she is not competent to testify to it.

This leaves the uncertain statements of Clark and Mayer with respect to the reservation of a right to future audits. Because Clark has every interest in saying that she advised Mayer specifically that Section 13 reserved [*9] the right to audit from July 1, 1993 through March 31, 1995, the Court finds that no such statement was made, either in words or in substance. Rather, the Court finds that any discussion of future audits was in very general terms and did not address the question of the

Funds' right to audit for periods commencing on or after April 1, 1995. Plaintiffs' parol evidence to the contrary is unpersuasive. Taking all of the circumstances together, the Court further finds that the Memorandum of Agreement was intended to and did settle all of the Funds' claims for contributions for the period July 1, 1993 through March 31, 1995.

### Conclusion

For the foregoing reasons, judgment will be entered declaring that the plaintiffs have no right to audit defendant's books and records or to collect or seek to collect any additional contributions for the period July 1, 1993 through March 31, 1995. While the pretrial order seeks a declaration with respect to the period July 1, 1993 through May 30, 1996, it is evident that there is no justiciable controversy with respect to the period April 1, 1995 through May 30, 1996. Accordingly, insofar as the complaint seeks relief with respect to the latter period, [*10] it is dismissed.

The foregoing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a).

SO ORDERED.

Dated: January 23, 1997

Lewis A. Kaplan

United States District Judge

LEXSEE

**In re: ROGER SCHEIDERER, Debtor. ROGER SCHEIDERER, Appellant, v. PRODUCERS CREDIT CORPORATION, Appellee.**

**No. 04-8066**

**UNITED STATES BANKRUPTCY APPELLATE PANEL FOR THE SIXTH CIRCUIT**

**2005 Bankr. LEXIS 861**

**May 4, 2005, Submitted**
**May 19, 2005, Decided**
**May 19, 2005, Filed**

**NOTICE:** [*1] NOT FOR PUBLICATION

**PRIOR HISTORY:** Appeal from the United States Bankruptcy Court for the Southern District of Ohio, Eastern Division. Chapter 7 Case No. 01-65198.

Scheiderer v. Producers Credit Corp. (In re Scheiderer), 326 B.R. 901, 2005 Bankr. LEXIS 1675 (B.A.P. 6th Cir., 2005)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant debtor sought review of an order of the United States Bankruptcy Court for the Southern District of Ohio, Eastern Division, which enforced the debtor's obligations under his confirmed Chapter 11 plan. Appellee creditor had filed a motion to require compliance with the second amended plan of reorganization. After the motion was granted, the debtor filed a motion to consider, which was denied.

**OVERVIEW:** The debtor's amended plan of reorganization provided for a ten year amortization plan on behalf of the creditor. The plan was confirmed by the bankruptcy court. The debtor made a payment but refused to pay interest. The issue before the court was whether the bankruptcy court erred in determining that the debtor's amended plan required him to pay the creditor an annual payment plus interest. The court found that the plan's appendix explicitly provided for annual payments to the creditor plus interest and that there was nothing in the plan or appendix that the interest was to be deferred. Even if the terms of the plan were ambiguous, any ambiguity was interpreted against the debtor who drafted the plan. A reasonable person could agree that the bank-

ruptcy court did not abuse its discretion in its interpretation of the plan.

**OUTCOME:** The court affirmed the bankruptcy court's order granting the creditor's motion.

**CORE TERMS:** annual, abuse of discretion, confirmed, plus interest, appendix, ambiguity, anniversary date, confirmation, refinance, reasonable person, oral argument, enforcing, disclosure statement, need clarification, annual payment, interest rate, solvent, dictate, timing

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Chapter 11 (Reorganization) > Plan Confirmation > Consensual & Nonconsensual Confirmation*
*Bankruptcy Law > Practice & Proceedings > Appeals*
*Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule*
[HN1] An order interpreting and enforcing a Chapter 11 plan constitutes a final order. Such an order being challenged may be appealed as of right. 28 U.S.C.S. § 158(a)(1).

*Bankruptcy Law > Chapter 11 (Reorganization) > Plan Confirmation > Consensual & Nonconsensual Confirmation*
*Bankruptcy Law > Practice & Proceedings > Appeals*
*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
*Contracts Law > Contract Interpretation > Interpretation Generally*
[HN2] A bankruptcy court's interpretation of the provisions of a plan it has confirmed is entitled to "full deference," and its exercise of equitable powers to "breathe

life" into the provisions of a plan is reviewed under an abuse of discretion standard. An abuse of discretion occurs only when the trial court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard. An abuse of discretion is defined as a definite and firm conviction that the court below committed a clear error of judgment. The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion.

*Bankruptcy Law > Chapter 11 (Reorganization) > Plan Confirmation > Consensual & Nonconsensual Confirmation*
*Bankruptcy Law > Creditor Claims & Objections > Claim Estimation*
*Contracts Law > Contract Interpretation > Ambiguities & Contra Proferentem*
[HN3] The debtor as draftsman of the plan has to pay the price if there is any ambiguity about the meaning of the terms of the plan. This comports with the long-standing rule that ambiguous terms of a document are to be interpreted against the party that drafted them.

**COUNSEL:** ON BRIEF: Grady L. Pettigrew, Jr., COX, STEIN & PETTIGREW, Columbus, Ohio, for Appellant.

Robert A. Bell, Jr., VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Appellee.

**JUDGES:** Before: GREGG, PARSONS, and WHIPPLE, Bankruptcy Appellate Panel Judges.

**OPINION:**

PER CURIAM. Roger Scheiderer (the "Debtor") appeals an order enforcing his obligations under his confirmed Chapter 11 plan. Upon examination of the record and the briefs, the Panel unanimously agrees that oral argument is not needed because the decisional process would not be aided by oral argument. *See* Fed. R. Bankr. P. 8012. For the reasons that follow, we conclude that the order on appeal should be **AFFIRMED.**

### I. ISSUE ON APPEAL

The issue presented is whether the bankruptcy court erred in determining that the Debtor's Second Amended Plan of Reorganization requires him to pay to Producers Credit Corporation, then known as Producers Livestock Credit Association ("Producers"), the annual sum of $ 25,000 plus interest.

### II. [*2]  JURISDICTION AND STANDARD OF REVIEW

[HN1] An order interpreting and enforcing a Chapter 11 plan constitutes a final order, *see UNR Indus., Inc. v. Bloomington Factory Workers (In re UNR Indus., Inc.)*, 173 B.R. 149, 154 n.6 (N.D. Ill. 1994), so the order being challenged may be appealed as of right. 28 U.S.C. § 158(a)(1). The United States District Court for the Southern District of Ohio has authorized appeals to the Bankruptcy Appellate Panel, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). Accordingly, the Panel has jurisdiction to decide this appeal.

[HN2] A bankruptcy court's interpretation of the provisions of a plan it has confirmed is entitled to "full deference," and its exercise of equitable powers to "breathe life" into the provisions of a plan is reviewed under an abuse of discretion standard. *In re Terex Corp.*, 984 F.2d 170, 172 (6th Cir. 1993); see *United States v. Graham (In re Monclova Care Ctr., Inc.)*, 59 Fed. Appx. 660, No. 01-3636, 2003 WL 463486, at **2 (6th Cir. Feb. 18, 2003); [*3] *In re Dow Corning Corp.*, 2004 U.S. Dist. LEXIS 27989, No. 01-CV-71843-DT, 2004 WL 764654, at *3 (E.D. Mich. Mar. 31, 2004). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Schmidt v. Boggs (In re Boggs)*, 246 B.R. 265, 267 (B.A.P. 6th Cir. 2000). "An abuse of discretion is defined as a 'definite and firm conviction that the [court below] committed a clear error of judgment.' The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Mayor of Baltimore, Md. v. W. Va. (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002) (citations omitted).

### III. FACTS

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 28, 2001. He filed a proposed Plan of Reorganization and a Disclosure Statement on May 23, 2002, an Amended Plan of Reorganization and a Debtor's Amended Disclosure Statement on September 16, 2002, and [*4] a Second Amended Plan of Reorganization and a Second Amended Disclosure Statement on October 8, 2002. The Second Amended Plan of Reorganization provides that the claim of Producers constitutes Class B-3, and provides the following treatment of that claim:

Producers will be paid an annual payment of $ 25,000.00 on the anniversary date of confirmation. An interest rate of 8% will apply to its claim and a 2% interest rate

will be applied to the solvent estate factor of Producers Livestock's Claim.

Producers will receive upon recovery 50% of the proceeds of the Eagle Capital litigation estimated at $ 100,000, plus the proceeds from sale or refinance of assets. Upon payment to Producers Livestock from recovery from Eagle Capital litigation or refinance of debt or sale of assets, annual payments to Producers Livestock will be adjusted to provide for payment for the allowed secured claim on or before the tenth (10th) anniversary date of the confirmation of the plan.

(Second Amended Plan of Reorganization, art. VIII, at 8, App. at 73.) The plan provides that the bankruptcy court retained jurisdiction "to secure the execution of the provisions of this Plan." (*Id.*, art. [*5] X, § 1, App. at 76.) Appendix D to the plan (App., at 83) states that the annual "Secured Debt Payments by Roger Scheiderer" include payments to Producers of $ 25,000.00 plus interest. The plan specifically incorporates all of the appendices by reference. (Second Amended Plan of Reorganization, art. I, P 8, App. at 68.)

The disclosure statement was approved by an order entered on November 5, 2002, and a confirmation hearing was conducted on December 16, 2002. Following that hearing, the bankruptcy court confirmed the plan - presumably the Second Amended Plan of Reorganization - on February 12, 2003. There is no indication in the record that Producers received any sum from the Eagle Capital litigation or from the proceeds of a sale or refinancing, so there does not appear to be a need for a recomputation of the ten-year amortization of the debt.

On February 19, 2004, the Debtor sent Producers a check for $ 15,000 and, on April 5, 2004, the Debtor paid an additional $ 10,000. The Debtor refused to pay any interest as part of its annual payment, so Producers filed a Motion to Require Compliance with Second Amended Plan of Reorganization on March 18, 2004. The bankruptcy court conducted [*6] a hearing on the motion on June 15, 2004, and granted the motion by an order entered on June 30, 2004. On July 12, 2004, the Debtor filed a motion to reconsider, and that motion was denied on July 28, 2004. The Debtor timely filed a notice of appeal on August 6, 2004.

## IV. DISCUSSION

The only argument made by the Debtor in seeking reversal of the bankruptcy court's order is as follows:

The action of the Bankruptcy Court was erroneous because it was inconsistent with the Plan confirmed and the evidence submitted in support of the Plan. Appellant's Plan included an exhibit of annual Plan payments. In the exhibit, Appellant's payment to Appellee was clear and did not need clarification. Second, Appellant committed in his Plan to pay Appellee's Claim in full before completion of the Plan. The source of payment was Appellant's income, litigation proceeds or proceeds of refinance. Because the estate was solvent, Appellant had a duty to pay the full claim. Appellee had a right under the Plan to receive the full payment but not to dictate the amount and timing of the plan payments.

(Brief of Appellant Roger Scheiderer, at 3.) Article VIII of the plan provides for annual [*7] payments to Producers of $ 25,000 and that the claim would bear interest. If there is any question that the annual payments were to include accrued interest, as well as $ 25,000 principal, that question was resolved by Appendix D to the plan, which the Debtor acknowledges is "clear and did not need clarification." The appendix explicitly provides for annual payments to Producers of $ 25,000 "plus interest," and nothing in the plan or its appendices provides that interest is to be deferred. Moreover, even if Article VIII and Appendix D leave any ambiguity, [HN3] "The debtor as draftsman of the plan has to pay the price if there is any ambiguity about the meaning of the terms of the plan. This comports with the long-standing rule that ambiguous terms of a document are to be interpreted against the party that drafted them." *In re Tucker*, 231 B.R. 284, 287 (Bankr. E.D. Tenn. 1999) (construing Chapter 13 plan against debtor) (quoting *Fawcett v. United States (In re Fawcett)*, 758 F.2d 588, 591 (11th Cir. 1985)); *accord, e.g., Ice Cream Liquidation, Inc. v. Calip Dairies, Inc. (In re Ice Cream Liquidation, Inc.)*, 319 B.R. 324, 333 (Bankr. D. Conn. 2005) [*8] (resolving ambiguities in Chapter 11 plan against debtor as drafter).

It is the plan that "dictates the amount and timing of the plan payments," and the plan provides for Producers to receive annual payments of $ 25,000 plus interest starting on the first anniversary date of confirmation, February 12, 2004. A reasonable person could agree with the bankruptcy court's interpretation of the plan and direction that the Debtor comply therewith, so its order does not constitute an abuse of discretion.

## V. CONCLUSION

2005 Bankr. LEXIS 861, *

For the foregoing reasons, the bankruptcy court's order granting the Motion to Require Compliance with Second Amended Plan of Reorganization filed by Producers is hereby **AFFIRMED**.

LEXSEE 1982 U.S. DIST. LEXIS 15448

**KEITH A DEUTSCH, Plaintiff, against KENSINGTON PUBLISHING CORP., d/b/a/ KENSINGTON PUBLISHING CORP., ZEBRA BOOKS, and THE ARGOSY LIBRARY, Defendants.**

**No. 80 Civ. 7281**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1982 U.S. Dist. LEXIS 15448*

**October 5, 1982**

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1]

Walter A. Lesnevich, Esq., 660 Madison Avenue, New York, N.Y. 10021, for Plaintiff

Goldschmidt, Fredericks & Oshatz, 655 Madison Avenue, New York, N.Y. 10021, Richard A. Waxman, Esq., Of Counsel, for Defendant

**OPINIONBY:**

OWEN

**OPINION:**

OPINION AND ORDER

OWEN, District Judge

This case comes before me on the parties cross-motions for partial summary judgment pursuant to Rule 56. Plaintiff is a free-lance editor, publisher and writer. Defendant is a publishing firm. On February 28, 1980, the parties entered into an agreement memorialized by a contract (the "Agreement") executed on that day.

Pursuant to the terms of the Agreement, plaintiff agreed to contact certain individual authors (or their representatives) whose material had previously been published in ARGOSY Magazine for the purpose of obtaining for defendant re-publication rights to that material and such other material as defendant would in the future wish to acquire. In addition, plaintiff consented to advise defendant regarding what material previously published in ARGOSY would be available for re-publication and who should be contacted in order to negotiate the rights to such material.

Defendant consented a compensate [*2] plaintiff for his efforts in the following manner. First, plaintiff agreed to accept the sum of $3,000 as an advance for his efforts. In addition, defendant agreed to pay plaintiff additional sums "within" thirty (30) days of receipt of a contract signed by the author or author's agent or other such representative, which has been negotiated by [plaintiff]." The parties further agreed that "All contracts with any author shall be subject to [defendant's] prior written approval of the property and the terms under which it is to be acquired."

It is undisputed that plaintiff bent every effort to acquire properties for defendant. Nevertheless, it is equally undisputed that those efforts never resulted in defendant's contracting with any author or author's representative for the acquisition of re-publication rights.

Plaintiff has received the sum of $3,000 from defendant. He now sues on the basis of the Agreement in an effort to obtain further compensation.

Plaintiff's complaint enumerates seven claims for relief. His first and second claims allege a breach of an express contract and seek both compensatory and punitive damages. Plaintiff's fifth claim alleges injury to his [*3] professional reputation. Plaintiff's seventh claim seeks damages on a quantum meruit basis. The parties do not seek summary judgment on claims three, four, and six.

Upon a careful reading of the complaint, I find that plaintiff's fifth claim does not state a cause of action different from the breach of contract claims set forth in claims one and two. In addition, I find that the quantum meruit relief sought by plaintiff in his seventh claim is not available where the terms of compensation are expressly set by contract. *Zipser v. Commercial Bank of*

*North America, 39 Misc. 2d 456, 240 N.Y.S.2d 643 (Sup. Ct. N.Y.Cty. 1963)* aff'd *21 A.D.2d 857, 251 N.Y.S.2d 1014 (1st Dept. 1964); O'Keefe v. Bry, 456 F.Supp. 822 (S.D.N.Y. 1978)*. I therefore grant defendant's motion for summary judgment on those two claims. I will proceed now to a consideration of plaintiff's breach of contract claim.

Plaintiff contends, in essence, that he contracted to perform certain services for defendant and that he was due compensation for those services upon the completion of his efforts and not, as defendant contends, "within thirty (30) days of receipt of a contract signed by the author or author's agent [*4] or other such representative, which has been negotiated by [plaintiff]." He avers that "He never agreed to [this conditional compensation plan], was never advised that it was a requirement of [his] payment being earned and, in fact, would never agree to such a provision." Plaintiff contends that this limitation merely sets a schedule for the payment of vested compensation. Defendant, of course, simply points to the express terms of the contract. Upon reading the Agreement, I am constrained on this point to agree with defendant. The use of the language "within thirty days of receipt" clearly establishes that plaintiff's right to further compensation does not vest except upon the occurrence of the bargained-for-condition. See, e.g. *Amies v. Wesnofske, 255 N.Y. 156, 174 N.E. 436 (1931)*. Absent the performance of the condition precedent, plaintiff is simply not entitled to further pay.

On the other hand, a party to a contract can waive the contractual condition and such a waiver can occur by a party preventing or hindering the fulfillment of the condition. *Amies v. Wesnofske, supra, 255 N.Y. at 163.* Plaintiff, under oath, asserts that this has occurred. Thus, on the breach [*5] of contract claim, there is an issue of fact as to a material matter, and defendant's motion for summary judgment is denied.

Submit order on notice.